FILED
JAMES BONINI
CLERK

10 NOV -5 PM 3: 29

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

PENN, LLC,

and

BIGRESEARCH, LLC,

-vs-

PROSPER BUSINESS DEVELOPMENT
CORPORATION,

and

PROSPER TECHNOLOGIES, LLC

and

PHIL RIST,

and

GARY DRENIK,

and

JAMES E. ARNOLD & ASSOCIATES

and

JAMES E. ARNOLD

     Defendants.

CASE NO.

Judge    2 : 10 cv 0993

JUDGE HOLSCHUH

MAGISTRATE JUDGE KEMP

## **COMPLAINT**

Now come Plaintiffs Penn, LLC ("Penn") and BigResearch, LLC ("BigResearch"), by and through counsel, for their Complaint, and state as follows:

## Nature of the Action

1.      This is an action brought on behalf of Penn, LLC and derivately on behalf of BigResearch for restitution and damages brought under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §1962 (c) and (d) ("RICO"), as well as for conspiracy to engage in a corrupt activity, breach of fiduciary duty, fraud, and unjust enrichment.  This action arises from a fraudulently induced scheme in which business opportunities and revenue of BigResearch (of which Penn is no less than a 47.39% member) were transferred and diverted to Prosper Business Development Corporation ("Prosper") and Prosper Technologies, LLC ("Prosper Technologies"), entities controlled by Defendants Phil Rist ("Rist") and Gary Drenik ("Drenik").  By siphoning business opportunities and revenue to Prosper and Prosper Technologies, Defendants have conspired to deplete the profitability of BigResearch and to exclude Penn, as a member of BigResearch, from any profits arising from such business opportunities and revenue.  After transferring and diverting the business opportunities and revenue of BigResearch to Prosper and Prosper Technologies, Defendants have dissolved BigResearch, are winding up the affairs of BigResearch, making every effort to hide their self-dealing and cover up the damage to Penn and BigResearch resulting from such misdeeds, by refusing to provide Penn access to the documents, records, information and metadata of BigResearch.

2.      **Jursdiction** is invoked under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), since Plaintiffs assert a claim for civil liability arising from a violation of Section 1962 of RICO.  The amount in controversy exceeds the sum of $75,000.

3.      **Venue** is proper in this district under 28 U.S.C. §1391.  Three of the Defendants reside in the Southern District of Ohio, all of the Defendants operate and conduct business in the Southern District of Ohio, and the acts giving rise to Plaintiffs' claims arose in the Southern District of Ohio.

## Background

### Plaintiffs

4.      Plaintiff **Penn** is a Delaware limited liability company with its principal place of business in

2

Tinley Park, Illinois ("Penn").

5.      Plaintiff **BigResearch** is a Delaware corporation with its principal place of business in the Southern District of Ohio.  This action is brought as a derivative action on behalf of BigResearch, and on behalf of Penn.

### Defendants

6.      Defendant **Prosper** is an Ohio corporation with its principal place of business in the Southern District of Ohio.  Prosper is the management company of BigResearch, and along with Rist and Drenik, has exercised exclusive control of BigResearch, to the exclusion of Penn and Penn's designee, who sits on BigResearch's Board of Members.

7.      Defendant **Prosper Technologies** is an Ohio corporation with its principal place of business in the Southern District of Ohio.  Prosper Technologies is controlled by Defendants Rist and Drenik.

7.      Defendant **Rist** is an owner, officer, and/or director of Prosper and Prosper Technologies.  Rist is also on the Board of Members of BigResearch, and resides in the Southern District of Ohio.

8.      Defendant **Drenik** is an owner, officer, and/or director of Prosper and Prosper Technologies.  Drenik is also on the Board of Members of BigResearch, and resides in the Southern District of Ohio.

9.      Defendant **James E. Arnold and Associates, LPA** ("Arnold and Associates") is a law firm retained by Defendants Drenik and Rist under the guise of representing BigResearch, Prosper and Prosper Technologies, all to the detriment of BigResearch and its member Penn.   Arnold and Associates' principal place of business is in the Southern District of Ohio.

10.      Defendant **James E. Arnold** ("Arnold") is a lawyer and managing member of Arnold and Associates.  At the direction and under the control of Arnold, Arnold and Associates has acted pursuant to the instruction of Drenik and Rist, under the guise of representing BigResearch, and to the

detriment of BigResearch and its member Penn.

11.    Prosper and Prosper Technologies are alter egos of Drenik and Rist, under their exclusive management and control.

12.    Defendants have utilized BigResearch as the alter ego of Drenik, Rist and Prosper, to the exclusion of Penn, and to the detriment of BigResearch and its member Penn.

### Operations of BigResearch

13.    Penn and Prosper were the founding, 50%/50%, members of BigResearch.

14.    On October 27, 2000, the BigResearch Operating Agreement ("Operating Agreement") was approved by Penn and Prosper, to govern the activities of BigResearch.  At all times relevant herein, the Operating Agreement remained in effect, creating the rights and obligations of the parties with respect to the affairs of BigResearch.  A true and accurate copy of the Operating Agreement is attached hereto as EXHIBIT A.

15.    According to the Operating Agreement, Big Research is governed by a Board of Members, comprised of Drenik, Rist and Penn's designee (the "Board").

16.    Since BigResearch's inception, Drenik, Rist, and Prosper have acted in concert so as to deny Penn's designee participation in the decision making process and deny Penn access to the documents, records, information and metadata of BigResearch.

17.    Starting in 2003, Drenik, Rist and Prosper also began a concerted campaign to remove Penn from its membership and to remove Penn's designee from the Board of Members of BigResearch.

### Penn Arbitration

18.    In order to preserve its rights with respect to the operations, decision-making and distributions of BigResearch, Penn filed claims in a binding arbitration against Prosper and BigResearch.  Penn's claims were partially resolved by a September 15, 2008 Arbitration Award ("2008 Arbitration Award").  A true and accurate copy of the 2008 Arbitration Award is attached hereto as

4

EXHIBIT B.

19. The Arbitrator clarified certain aspects of the 2008 Arbitration Award and decided others in an Order issued on May 5, 2010 ("2010 Ar bitration Order").  A true and accurate copy of the 2010 Arbitration Order is attached hereto as EXHIBIT C.

20. The 2008 Arbitration Award recognized that, at all times relevant herein, Penn satisfied its obligations pursuant to the Operating Agreement, Penn holds no less than a 47.39% membership interest in BigResearch, and Penn's designee continues to sit on the Board of Members of BigResearch.

21. The 2010 Arbitration Order provided that Prosper, as the management company of BigResearch, failed to pay appropriate distributions of profits to Penn.  The 2010 Arbitration Order therefore awarded Penn damages totaling $1,488,000.

22. The arbitration proceedings remain pending, as does a state court action seeking to vacate, modify or confirm the 2008 Arbitration Award and 2010 Arbitration Order.

<b>Fiduciary Duties</b>

23. At all times relevant herein, Defendants have usurped control over BigResearch, to the exclusion of Penn and to the detriment of BigResearch and Penn.

24. BigResearch has a fiduciary duty to its member, Penn.

25. As officers of BigResearch, Drenik and Rist owe BigResearch and BigReesearch's member, Penn, fiduciary duties.

26. As the management company of BigResearch, Prosper owes BigResearch and BigResearch's member, Penn, fiduciary duties.  As officers of Prosper, Drenik and Rist therefore also owe BigResearch and BigResearch's member, Penn, fiduciary duties.

27. As the law firm representing BigResearch in litigation and directing the lawyers in the lawfirm who represent BigResearch in litigation, Arnold and Associates has fiduciary duties to BigResearch and to BigResearch's member, Penn.

28. As the lawyer representing BigResearch in litigation and directing the lawyers in Arnold

5

and Associates who represent BigResearch in litigation, Arnold has fiduciary duties to BigResearch and to BigResearch's member, Penn.

## Marketstar Arbitration

29.    In April of 2004, BigResearch entered a business relationship with MarketStar Corporation ("MarketStar").

30.    As part of the business relationship between BigResearch and MarketStar, the two entered into a Mutual Confidentiality Agreement dated April 7, 2004 (the "MCA").

31.    The MCA was executed in interstate commerce via facsimile, a/k/a wire, and/or United States mail.

32.    In the MCA, BigResearch and MarketStar each acknowledged that BigResearch possessed valuable knowledge, business plans, trade secrets, contracts and relationships, programs, methods, procedures, list of customers and prospects, and other trade secrets of proprietary information.

33.    BigResearch and MarketStar also entered into a Consumer Intention & Actions Video Briefing Subscription Agreement on July 16, 2004 (the "CIA Agreement").

34.    Simultaneously in July 2004, Prosper, as Manager and on behalf of BigResearch, entered into a Strategic Marketing Alliance Agreement with MarketStar (the "SMAA").

35.    As part of the SMAA, Prosper:

(A)    Authorized MarketStar to offer BigResearch syndicated databases and proprietary panel services for sale to clients and prospects as a "strategic marketing partner".

(B)    Provided MarkerStar without any associated costs to access BigResearch's databases, including:

(1)    BigResearch's Simultaneous Media Usage databases, valued at $500,000 per year;

(2)    BigResearch's Consumer Intentions & Actions databases, valued at $180,000 per

6

year; and

(3)    BigResearch's Retail Ratings Report databases, valued at $120,000 per year.

36.    The CIA and SMAA traveled in interstate commerce via wire and/or United States mail.

37.    Prosper itself neither offered nor received any consideration in the SMAA.

38.    BigResearch was the expected beneficiary of the MCA, the CIA Agreement, and the SMAA.

39.    The relationship between BigResearch and MarkerStar subsequently deteriorated.

40.    On February 2, 2007, Defendants Drenik and Rist – acting on behalf of themselves and through their alter ego Prosper – filed a Notice of Arbitration based on the MCA, and the SMAA.

41.    In the resulting arbitration ("Marketstar Arbitration") Drenik, Rist, Arnold and Associates, and Arnold fraudulently represented that BigResearch and Prosper were one in the same.

42.    In the Marketstar Arbitration, Drenik, Rist, Arnold and Associates, and Arnold fraudulently represented that Prosper and not BigResearch was the beneficiary of the MCA and SMAA.

43.    These fraudulent representations were sent via wire and/or United States mail.

44.    As a result of the fraudulent misrepresentations, Prosper was awarded $4,750,000 on January 23, 2009 (the "MarketStar Award"). This award was confirmed on September 4, 2009 and a judgment entered in favor of Prosper against MarketStar in the amount of $4,750,000.

45.    On information and belief, Drenik, Rist and Prosper diverted the funds of BigResearch to pay Prosper's legal expenses and costs relating to the Marketstar Arbitration.

46.    The business opportunity from which the MarketStar Award and judgment arose belonged to BigResearch, not Prosper.

47.    Drenik, Rist and Prosper fraudulently self-dealt in prosecuting the MarketStar Arbitration on behalf of Prosper, rather than on behalf of BigResearch.

48.    Drenik, Rist, Prosper, Arnold and Associates, and Arnold concealed this businesses opportunity, the Marketstar Arbitration and the MarketStar Award from Penn, Penn's designee on

BigResearch's Board of Members, and from BigResearch's other investors.

49.    As a result, BigResearch suffered damages in the amount of $4,750,000, as well as the legal expenses and costs paid by BigResearch to prosecute and confirm the Marketstar Arbitration. As an owner of no less than 47.39% equity in BigResearch, Penn also suffered damages commensurate with its interest in BigResearch.

**Ownership Interest**

50.    When formed, BigResearch was owned equally by Penn and Prosper, 50%/50%.

51.    After its inception, BigResearch received money from outside investors, such that Penn and Prosper were diluted to each owning 47.39% of BigResearch.

52.    Outside investors held the remaining 5.22% of equity in BigResearch ("Investor Equity").

53.    Shortly after the September 15, 2008 Arbitration Award confirmed that Penn held a 47.39% ownership interest and its seat on the BigResearch Board of Members, Drenik and Rist secretly negotiated the purchase of some or all of the Investor Equity.

54.    The negotiations, transactional instruments, and monies used in the purchase of the Investor Equity traveled in interstate commerce via wire and/or United States mail.

55.    Drenik and Rist's purpose was to secretly acquire a majority of the equity in BigResearch and thereby obtain exclusive control over BigResearch..

56.    Drenik and Rist's efforts, negotiations and ultimate purchase of the Investor Equity were fraudulently concealed from BigResearch's Board of Members, and therefore from Penn.

57.    The option to purchase the Investor Equity in BigResearch first belonged to BigResearch, and should have been shared with Penn, as a member of BigResearch.

58.    Drenik, Rist, and Prosper fraudulently self-dealt with their purchase of the Investor Equity, to the exclusion of Penn and to the detriment of BigResearch and Penn.

59.    BigResearch and its member Penn suffered substantial harm as a direct result of Drenik,

Rist, and Prosper's self-dealing and fraudulent concealment, which denied BigResearch and Prosper the right to bid on and potentially purchase the Investor Equity.

## Embezzlement

60.     Drenik, Rist, and Prosper regularly, systematically, and fraudulently embezzled funds and other assets from BigResearch.

70.     Drenik, Rist and Prosper routinely used funds from BigResearch to fund Prosper and to pay the legal, accounting, consulting, travel and other expenses of Prosper.

71.     Drenik, Rist and Prosper routinely utilized staff, which were paid by BigResearch, and utilized the staff for the benefit of Prosper, rather than BigResearch.

72.     The funds and other assets fraudulently embezzled by Drenik, Rist and Prosper traveled in interstate commerce via wire and/or United States mail.

73.     BigResearch and its member Penn suffered substantial harm as a direct result of Drenik, Rist, and Prosper's embezzlement.

## Trademark

74.     Drenik, Rist, and Prosper fraudulently and secretly obtained for themselves, rather than BigResearch, the registered United States trademark BIGRESEARCH.

75.     BigResearch is the legal and rightful owner of the BIGRESEARCH trademark ("Trademark").

76.     Drenik, Rist and Prosper fraudulently misrepresented that Prosper was the rightful owner of the Trademark.

77.     On information and belief, Drenik, Rist and Prosper fraudulently utilized BigResearch funds to acquire the Trademark for Prosper.

78,     Although BigResearch paid for the BIGRESEARCH tradement, Drenik, Rist and Prosper fraudulently registered the Trademark to Prosper.

79.     The documents used by Drenik, Rist and Prosper to fraudulently register the Trademark

9

traveled in interstate commerce via wire and/or United States mail.

80.     Drenik, Rist and Prosper fraudulently concealed their activities with respect to the Trademark and denied BigResearch the business opportunity of owning its Trademark.

81.     Drenik, Rist, and Prosper engaged in fraudulent self-dealing by having the BIGRESEARCH trademark registered to Prosper.

82.     BigResearch and its member Penn suffered significant harm as a result of Drenik, Rist, and Prosper's fraudulent acquisition of the Trademark.

<strong>Forecast IQ</strong>

83.     Prosper Technologies has one product or one key product called ForecastIQ.

84.     ForecastIQ is a software application that creates a dashboard like interface for viewing underlying database data.

85.     ForecastIQ uses databases created and owned by BigResearch for its underlying data.

86.     On information and belief, ForecastIQ was created by Marvelit, Inc.

87.     On information and belief, Drenik, Rist and Prosper utilized BigResearch funds to develop ForecastIQ.

88.     On information and belief, Drenik, Rist and Prosper fraudulently utilized BigResearch funds to pay Group 11 Consulting, Inc., which provided consultation with respect to the development of ForecastIQ.

89.     After utilizing funds from BigResearch to develop ForecastIQ, Drenik, Rist and Prosper fraudulently transferred and diverted the ForecastIQ product to Prosper, which sells and makes profit from the sale of ForecastIQ.

90.     The business opportunity of ForecastIQ belonged to BigResearch, which paid for the application development and owns the underlying data.

91.     Drenik, Rist, Prosper, and Prosper Technologies have fraudulently usurped BigResearch's business opportunity for themselves.

92.     In doing so, Drenik, Rist and Prosper have engaged in self-dealing.

93.     Prosper Technologies' sells the Forecast IQ product and accepts payment for the product via wire and United States mail.

94.     BigResearch and its member Penn suffered substantial harm as a direct result of Drenik, Rist and Prosper's fraudulent self-dealing, by being denied the business opportunity, benefit and revenue derived from ForecastIQ.

95.     BigResearch and its member Penn suffered further harm as a direct result of Drenik, Rist and Prosper's fraudulent self dealing, by being denied the use of the funds, time, effort and expense used to create ForecastIQ.

**Trade Secrets**

96.     In December of 2009, Drenik, Rist and Prosper purportedly dissolved BigResearch and began winding up its affairs.

97.     Prior to the purported dissolution, BigResearch was a viable entity with over $4,000,000 in annual sales, which was able to continue as a viable entity for the foreseeable future.

98.     Upon moving to dissolve BigResearch, Drenik, Rist, and Prosper began fraudulently transferring the trade secrets, client lists, business opportunities and revenue of BigResearch to Prosper.

99.     As part of this process, Drenik, Rist, and Prosper – bolstered by their holding of the Trademark – repositioned Prosper to function in place of Big BigResearch as a market research company.

100.    On information and belief, Drenik, Rist, and Prosper fraudulently misrepresented to BigResearch's clients that Prosper and BigResearch were one in the same.

101.    On information and belief, Drenik, Rist, and Prosper fraudulently acquired for themselves the confidential and proprietary trade secrets of BigResearch, as well as contract revenue from clients belonging to BigResearch.

102.    Drenik, Rist and Prosper conveyed their fraudulent misrepresentations to clients by wire

11

and United States mail.

103.    BigResearch and its member Penn suffered substantial harm as a direct result of Drenik, Rist, and Prosper's fraudulent misrepresentations and usurpation of BigResearch's clients, contract revenue and business opportunities.

**Dissolution**

104.    After Drenik, Rist, and Prosper moved for the dissolution of BigResearch, they fraudulently misrepresented to Penn and the arbitrator that Drenik, Rist, and Prosper were attempting to sell BigResearch.

105.    On information and belief, Drenik, Rist, and Prosper have made no effort to sell BigResearch.

106.    On information and belief, Drenik, Rist and Prosper instead intend to wind-down the affairs of BigResearch after divert BigResearch's clients, contract revenue, and business opportunities to Prosper.

107.    As directors and officers of BigResearch, the fraudulent misconduct of Drenik and Rist violate their fiduciary duties to BigResearch and its member, Penn.

108.    As the management company of BigResearch, the fraudulent misconduct of Prosper violates Prosper's fiduciary duties to BigResearch and its member, Penn.

109.    On information and belief, the diversion of BigResearch's clients, contract revenue and business opportunities took place by wire and U.S. mail.

110.    BigResearch and its member Penn have suffered substantial harm as a direct result of the diversion of BigResearch's clients, contract revenue and business opportunities to Prosper.

**COUNT ONE**

**(RICO Violation)**

111.    Plaintiffs restate the foregoing as if fully set forth herein.

112.    Plaintiffs are victims of a fraudulent scheme and conspiracy between and among the

Defendants and certain yet to be identified third parties ("Others").  Pursuant to this scheme, Defendants, through Arnold and Associates, Arnold and Others, committed fraud by diverting business opportunities, assets and funds of BigResearch to Prosper

113.   By diverting business opportunities, assets and funds to Prosper, Defendants have nullified the profitability and continued existence of BigResearch, while at the same time using fraud to divest Penn from the rights, distributions and interest granted to Penn pursuant to the Operating Agreement of BigResearch.

114.   By dissolving and winding up the affairs of BigResearch, while opposing all efforts of Penn and its designee on the Board of Members to obtain documents, records, information and metadata regarding the operation of BigResearch, Defendants have fraudulently concealed evidence of the scheme and conspiracy.

115.   In furtherance of the scheme, Defendants and Others would make false representations of facts, which Plaintiffs, various arbitrators and/or certain Courts justifiably relied upon, including:

    a.    Penn was no longer a member of BigResearch.

    b.    Penn no longer held a 47.39% interest in BigResearch.

    c.    Penn's designee no longer held a position on the Board of Members of BigResearch.

    d.    Major financial decisions could be made without the unanimous approval of the Board of Members, including Penn's designee.

    e.    Penn was not entitled to distributions from BigResearch.

    f.    Penn's designee was not entitled to run the business and affairs of BigResearch.

    g.    BigResearch did not owe Penn distributions equal to those provided to Prosper.

    h.    BigResearch did not owe Penn and Penn's designee full access to the documents, records, information and metadata of BigResearch.

    i.    As BigResearch's management company, Prosper did not owe Penn equal access

to documents, records, metadata and information of BigResearch.

j.    As BigResearch's management company, Prosper could exclude Penn from access to the documents, records, metadata and information of BigResearch.

k.    Penn, its officers and corporate counsel are competitors of BigResearch.

l.    Penn, its officers and corporate counsel divulged confidential information of BigResearch to the public and/or to BigResearch's competitors.

m.    Penn, its officers and corporate counsel are not permitted to access the documents, records, metadata and information of BigResearch pursuant to the Operating Agreement.

n.    BigResearch had no duty to pay distributions to Penn.

o.    BigResearch had no fiduciary duty to its member, Penn.

p.    Prosper, as the management company of BigResearch, had no fiduciary duty to BigResearch's member, Penn.

q.    Prosper is the same entity as BigResearch.

r.    Prosper is entitled to the $4,750,000 Marketstar Award.

s.    BigResearch is not entitled to the $4,750,000 Marketstar Award.

t.    Penn is not entitled, as a member of BigResearch, to a portion of the $4,750,000 Marketstar Award.

u.    Drenik, Rist and Prosper are not engaged in self-dealing.

v.    Prosper is the rightful owner of the Investor Equity in BigResearch.

w.    The Trademark is owned by Prosper, rather than BigResearch.

x.    Forecast IQ is a product owned by Prosper, rather than BigResearch.

y.    BigResearch would be insolvent if the Penn Arbitration award of $1,488,000 is confirmed.

z.    Arnold and Associates and Arnold represent the interests of BigResearch.

14

aa.    Prosper dissolved BigResearch and is winding up its affairs.

bb.    Prosper is attempting to sell BigResearch.

116.    Defendants and the Others would also engage in fraudulent artifices and devices, and engage in overt acts in furtherance of the scheme and conspiracy, by fraudulently:

a.    Employing every possible tactic in an attempt to divest Penn of its rights, distibutions and equity interest in BigResearch, vis a vis the Penn Arbitration.

b.    Engaging in misconduct prejudicial to BigResearch and its member Penn, in violation of Defendants' fiduciary duties to them.

c.    Making major financial decisions for BigResearch without unanimous approval of the Board of Members, including Penn's designee, in contravention of the Operating Agreement of BigResearch.

d.    Usurping the business opportunities, assets and revenue of BigResearch and its member Penn, by virtue of the Marketstar Arbitration.

e.    Seizing the equity interest of BigResearch, to the exclusion of Penn and to the detriment of BigResearch and Penn.

f.    Embezzling funds and other assets from BigResearch for the benefit of Prosper, and to the detriment of BigResearch and Penn.

g.    Obtaining the Trademark of BigResearch.

h.    Diverting Forecast IQ as well as its sales and revenues from BigResearch to Prosper, after utilizing the funds of BigResearch to pay for development of the product.

i.    Transferring the confidential trade secrets, clients and business opportunities of BigResearch to Prosper.

j.    Dissolving BigReseach and purporting to wind up its affairs, in an effort to conceal and extinguish all documents, records, metadata and evidence of

Defendants' fraudulent misconduct.

  k. Concealing all of the above from Penn's designee on the Board of Members, and therefore from BigResearch derivatively, as well as from Penn itself.

116. The date when Defendants and Others first engaged in this scheme is not known, but it appears that Defendants and Others have engaged in this scheme since at least 2003.

117. Not satisfied with defrauding BigResearch and Penn, Defendants Drenik, Rist, and Prosper have apparently also defrauded others, including International Culture & Trade Complex, Inc. and Dr. Joe Pilotta. According to the Complaint filed in Franklin County, Ohio, Case 10 CV 002918:

  a. While BigResearch experienced financial success, Drenik, Rist, and Prosper saw an opportunity to divert business and revenues away from BigResearch and to Prosper.

  b. Drenik and Rist diverted business away from Dr. Pilotta's company and to Prosper.

  c. Drenik and Rist fraudulently concealed key facts regarding various Drenik and Rist enterprises in order to wrongfully secure an arbitration award.

  d. Drenik and Rist fraudulently claimed that Dr. Pilotta forfeited ownership interest in one of Drenik and Rist's enterprises in order to deny Dr. Pilotta his share of the arbitration award.

  e. Drenik and Rist engaged in a pattern of self-dealing and diverted major contracts, substantial revenue, and numerous business deals away from BigResearch and to Prosper.

118. Defendants and Others constitute an "enterprise" as defined in 18 U.S.C. § 1964(4) and 1962(d). They constitute a group associated by a definitive structure and hierarchy with a common purpose to commit fraud and engage in self dealing with respect to BigResearch and its member Penn.

119. The structured hierarchy of the enterprise is:

  a. Drenik and Rist functioned as the directors and operations managers, controlling

and directing Prosper, Prosper Technologies, Arnold & Associates and Arnold. Drenik and Rist's goal is to divert the assets and opportunities of BigResearch, in which Penn shares the equity and profit, to Prosper and Prosper Technologies, where the profits and business opportunities benefit only Drenik and Rist. Further, Drenik and Rist utilized the assets of BigResearch to fund this conspiracy and scheme.

b.      Prosper and Prosper Technologies are corporations under the exclusive control of Drenik and Rist, and would carry out the directives of Drenik and Rist. At the behest of Drenik and Rist, Prosper and Prosper Technologies acquired the trade secrets, clients, assets, revenues, and business opportunities of BigResearch. Further, Prosper and Prosper Technologies distribute their revenue to Drenik and Rist, only, rather than sharing the revenue with Penn as required by the Operating Agreement of BigResearch.

c.      Arnold and Associates and Arnold served as the lawyers for Drenik, Rist, Prosper, Prosper Technologies and BigResearch, and operated pursuant to the directives of Drenik and Rist, engaging in litigation tactics and gorging on attorneys' fees to the detriment of BigResearch and its member Penn. At the behest of Drenik and Rist, Arnold and Associates and Arnold asserted claims and defenses detrimental to BigResearch and to its member Penn, operating for the sole benefit of Drenik, Rist and Prosper. Pursuant to the directives of Drenik and Rist, Arnold and Associates and Arnold have also engaged in tactics aimed at concealing and preventing the disclosure of documents, records, information and metadata which would reveal Defendants' conspiracy and fraudulent scheme.

d.      The Others include employees of BigResearch who obeyed the directives of Drenik and Rist, for the profit of Prosper, and to the detriment of BigResearch and its member Penn. Others may also include the owners of the Investor Equity, as well as other agents or employees of Drenik, Rist, Prosper and Prosper Technologies. At the

behest of Drenik and Rist, the Others have also engaged in tactics aimed at concealing and preventing the disclosure of documents, records and metadata which would reveal Defendants' conspiracy and fraudulent scheme.

120. Defendants and Others were persons employed by or associated with the enterprise within the meanings of 18 U.S.C. §1961(3) and 1962(c), in that they associated together to commit fraud and engage in self dealing with respect to BigResearch and its member Penn.

121. Defendants, in conjunction with Others, were or are associated in an enterprise engaged in interstate commerce, within the meaning of 18 U.S.C. § 1962(c) because, in the ordinary course of their business, they used the interstate mail, phone, wire and banking facilities. Further, in the course of their dealings with Plaintiffs and in the various arbitration proceedings, they engaged in interstate transactions.

122. Pursuant to 18 U.S.C. § 1961(5), a pattern of racketeering activity requires two acts of racketeering activity occurring within ten years of each other.

123. Defendants, in conjunction with Others, were and are an associational enterprise which "is engaged in, or the activities of which affect, interstate… commerce", within the meaning of Section 1962(c) of RICO, in that in the ordinary course of their business used interstate mail, phone and banking facilities. Further, and in the course of its dealing with Plaintiffs and the clients of BigResearch, Defendants have engaged in interstate transactions involving the formation of BigResearch as a Delaware Corporation, the operation of BigResearch in Ohio and abroad, the dealings with the owners of the Investor Equity in Illinois, the interaction with Penn, which is a Delaware corporation who operates out of Illinois, the Marketstar Arbitration whose confirmation took place outside in Utah, the distribution of funds from BigResearch to the owners of the Investor Equity, the fraudulent embezzlement of funds from BigResearch, and the sale of Forecast IQ domestically and abroad. Further, during the course of the fraudulent scheme each of the persons associated with such enterprise used interstate mail, phone and/or banking facilities in their dealings with BigResearch,

Penn, the owners of the Investor Equity, and/or the clients of BigResearch.

124.    The definition of "racketeering activity" under Section 1961(1) of RICO includes "any act which is indictable under any of the following provisions of Title 18 United States Code: … section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud)…".  18 U.S.C. §1961(1)

125.    Defendants in conjunction with Others engaged in two or more acts of mail fraud and/or wire fraud as set forth herein.

126.    As a direct result of the aforesaid RICO violations, BigResearch and Penn have been substantially harmed and deprived of funds, business opportunities, trade secrets, assets, and clients.

127.    Plaintiffs have been damaged as a direct result of the actions of Defendants, individually and collectively.

**COUNT II**

**(Fraud/Concealment)**

128.    Plaintiffs restate the foregoing as if fully set forth herein.

129.    As set forth above, Defendants in conjunction with Others made various false representations of fact, including:

      a.   Penn was no longer a member of BigResearch.

      b.   Penn no longer held a 47.39% interest in BigResearch.

      c.   Penn's designee no longer held a position on the Board of Members of BigResearch.

      d.   Major financial decisions could be made without the unanimous approval of the Board of Members, including Penn's designee.

      e.   Penn was not entitled to distributions from BigResearch.

      f.   Penn's designee was not entitled to run the business and affairs of BigResearch.

      g.   BigResearch did not owe Penn distributions equal to those provided to Prosper.

      h.   BigResearch did not owe Penn and Penn's designee full access to the documents, records, metadata and information of BigResearch.

19

i.   As BigResearch's management company, Prosper did not owe Penn equal access to documents, records, metadata and information of BigResearch.

j.   As BigResearch's management company, Prosper could exclude Penn from access to the documents, records, metadata and information of BigResearch.

k.   Penn, its officers and corporate counsel are competitors of BigResearch.

l.   Penn, its officers and corporate counsel divulged confidential information of BigResearch to the public and/or to BigResearch's competitors.

m.  Penn, its officers and corporate counsel are not permitted to access the documents, records, metadata and information of BigResearch pursuant to the Operating Agreement.

n.   BigResearch had no duty to pay distributions to Penn.

o.   BigResearch had no fiduciary duty to its member, Penn.

p.   Prosper had no fiduciary duty to BigResearch's member, Penn.

q.   Prosper is the same entity as BigResearch.

r.   Prosper is entitled to the $4,750,000 Marketstar Award.

s.   BigResearch is not entitled to the $4,750,000 Marketstar Award.

t.   Penn is not entitled, as a member of BigResearch, to a portion of the $4,750,000 Marketstar Award.

u.   Drenik, Rist and Prosper are not engaged in self-dealing.

v.   Prosper is the rightful owner of the Other Investors' equity in BigResearch.

w.  The Trademark is owned by Prosper, rather than BigResearch.

x.   Forecast IQ is a product of Prosper, rather than BigResearch.

y.   BigResearch has been dissolved and is winding up its affairs.

z.   BigResearch would be insolvent if the Penn Arbitration award of $1,488,000 is confirmed.

aa.  Arnold and Associates and Arnold represent the interests of BigResearch.

bb. Prosper is dissolving BigReseach and winding up its affairs.

cc.  Prosper is attempting to sell BigResearch.

130.  Defendants in conjunction with Others made these false representations of fact and concealed information, documentation, records and metadata from Penn and from Penn's designee on BigResearch's Board of Members with knowledge of its falsity or with reckless disregard for the truth.

131.  Defendants in conjunction with Others made these false representations with the present intent to defraud BigResearch and Penn and with the present intent that Plaintiffs would justifiably rely on the false representations of fact.

132.  Plaintiffs justifiably relied upon the false representations and concealment of Defendants and Others working in concert with Defendants.

133.  As a direct result of Defendants and Others' false representations and concealment, Plaintiffs have suffered substantial harm.

134.  The actions of Defendants, individually and collectively, were undertaken willfully and with malice.

## COUNT THREE

### (Conversion/Unjust Enrichment)

135.  Plaintiffs restate the foregoing as if fully set forth herein.

136.  Rist, Drenik and Prosper have exercised and continue to exercise dominion and control over the business opportunities, trade secrets, clients, assets, funds, equity, distributions, documents, records, metadata and information of BigResearch, and have refused to utilize the same for the exclusive benefit of BigResearch.

137.  Arnold and Associates and Arnold have exercised and continue to exercise dominion and control over funds of BigResearch, which have been provided for legal services that have benefitted Defendants, to the detriment of BigResearch.

21

138.    Defendants and Others have acted in concert to deprive BigResearch and thereby its member Penn from benefitting from the business opportunities, trade secrets, clients, assets, funds, documents, records, metadata and information of BigResearch.

139.    Defendants and Others benefitted from these actions, to the detriment of BigResearch and Penn.

140.    As a direct result, Plaintiffs have suffered substantial harm.

141.    The actions of Defendants and Others, individually and collectively, were undertaken willfully and with malice.

**COUNT FOUR**

**(Breach of Fiduciary Duties)**

142.    Plaintiffs restate the foregoing as if set forth herein.

143.    As the management company of BigResearch, Prosper owes fiduciary duties to BigResearch and its member, Penn.

144.    As the officers and principals of Prosper, Drenik and Rist owe fiduciary duties to BigResearch and its member, Penn.

145.    As Members of the Board of BigResearch, Drenik and Rist also owe fiduciary duties to BigResearch and its member, Penn.

146.    BigResearch also owes fiduciary duties to its member, Penn.

147.    As lawyers retained to represent BigResearch, Arnold and Associates and Arnold owe fiduciary duties to Big Research.

148.    In concert with Arnold and Associates, Arnold and/or Others, Drenik, Rist, and Prosper breached their fiduciary duties to Plaintiffs and engaged in self-dealing by willfully and wrongfully:

    a.    Employing every possible tactic in an attempt to divest Penn of its rights, distibutions and equity interest in BigResearch, vis a vis the Penn Arbitration.

    b.    Engaging in misconduct prejudicial to BigResearch and its member Penn, in

22

violation of Defendants' fiduciary duties to them.

c.       Usurping the business opportunities, assets and revenue of BigResearch and its member Penn, by virtue of the Marketstar Arbitration.

d.       Seizing exclusive control of BigResearch, to the exclusion of Penn and to the detriment of BigResearch and Penn.

e.       Embezzling funds and other assets from BigResearch for the benefit of Prosper, and to the detriment of BigResearch and Penn.

f.       Obtaining the Trademark of BigResearch.

g.       Diverting Forecast IQ as well as its sales and revenues from BigResearch to Prosper, after utilizing the funds of BigResearch to pay for development of the product.

h.       Transferring the confidential trade secrets, clients and business opportunities of BigResearch to Prosper.

i.       Concealing all of the above from Penn's designee on the Board of Members, and therefore from BigResearch derivatively, as well as from Penn itself.

j.       Dissolving BigReseach and purporting to wind up its affairs, in an additional effort to conceal and extinguish all documents, records, metadata, information and evidence of Defendants' fraudulent misconduct.

149.    Arnold and Associates and Arnold violated their fiduciary duties to BigResearch by ignoring BigResearch's fiduciary duty to its member Penn, and by acting in furtherance of the directives of Drenik, Rist, and Prosper, to the detriment of BigResearch.

150.    Arnold and Associates and Arnold also violated their fiduciary duties to BigResearch by assisting Drenik, Rist and Prosper in the concealment of their misconduct, to the detriment of BigResearch.

151.    Plaintiffs have been substantially harmed as a direct result of Defendants' breach of fiduciary duties.

WHEREFORE, Plaintiffs BigResearch (as a derivative claim) and Penn, LLC pray that this Court:

  a.  Grant judgment in favor of BigResearch and against Prosper on the RICO claim for three times the Marketstar Award of $4,750,000.  In addition, grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for three times an amount to be proven at trial, in excess of $75,000.

  b.  Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, on the fraud/concealment claim, for an amount to be proven at trial, in excess of $75,000.

  c.  Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, on the conversion/unjust enrichment claim, jointly and severally, for an amount to be proven at trial, in excess of $75,000.

  d.  Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, on the breach of fiduciary duties claim, jointly and severally, for an amount to be proven at trial, in excess of $75,000.

  e.  Grant judgment in favor of Plaintiff and against Defendants, jointly and severally, for punitive damages to be determined at trial.

  f.  Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for Plaintiffs' costs and attorney fees herein expended, as provided under 18 U.S.C. § 1964(c) or other applicable law.

  g.  Such other and further relief, at law or in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ Alvand A. Mokhtari

_____
Amelia A. Bower (No. 0013474)
Alvand A. Mokhtari (No. 0071796)
PLUNKETT COONEY
300 E. Broad St., Suite 590
Columbus, OH 43215
(614) 629-3000
Fax: (614) 629-3019
Email: abower@plunkettcooney.com
Email: amokhtari@plunkettcooney.com
*Counsel for Plaintiffs*

Open.21106.00087.10426246-3