UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PENN, LLC, et al.,

        Plaintiffs,                        **Case No. 2:10-cv-993**
                                            **JUDGE GREGORY L. FROST**
        v.                             **Magistrate Judge Terence P. Kemp**

PROSPER BUSINESS DEVELOPMENT
CORPORATION, et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants James E. Arnold & Associates, LPA and James E. Arnold's ("Law Firm Defendants(')") Motion to Dismiss (ECF No. 7), Defendant Prosper Business Development Corporation's ("Prosper('s)") Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 8), Plaintiffs' Combined Memorandum in Opposition to Defendant Prosper's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Subject Matter Jurisdiction and the Law Firm Defendants' Motion to Dismiss (ECF No. 22), the Law Firm Defendants' Reply in Support of Motion to Dismiss (ECF No. 27), and the Reply Memorandum in Support of Prosper's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 26). For the reasons that follow, the Court **GRANTS** the Law Firm Defendants' Motion to Dismiss and **GRANTS in part and DENIES in part** Prosper's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Subject Matter Jurisdiction.

1

## I. Background

Unless otherwise indicated, the allegations in this section were taken from the complaint and the exhibits attached to or referred to in the complaint.  (ECF No. 2.)

Plaintiff Penn, LLC ("Penn") filed this action on behalf of itself and derivatively on behalf of BigResearch, LLC ("BigResearch") for restitution and damages.  Plaintiff BigResearch is a Delaware limited liability company primarily engaged in the business of market research. Plaintiff Penn and Defendant Prosper created BigResearch.

In October 2000, Penn and Prosper entered into an Operating Agreement that would control the affairs of BigResearch.  The "day to day" management of the business and affairs of BigReseach was delegated to Prosper and the other decisions were delegated to BigResearch's Board of Members ("Board").   (ECF No. 2.1 at 4-5; Operating Agreement §§ 5.01 and 5.02.) That Board consisted of three individuals:  two representatives of Prosper and one representative of Penn.  *Id.*  Prosper's representatives were Gary Drenik and Philip Rist, owners of Prosper and Prosper Technologies, LLC ("Prosper Technologies").

When formed, BigResearch was owned equally by Penn and Prosper.  After its inception, BigResearch sold 5.22% ownership equity to outside investors such that Penn and Prosper were diluted to each owning 47.39% of BigResearch.  At some point, Prosper purchased some of the outside investors' stock, making it currently the holder of 50.71% of BigResearch's stock.  Penn alleges that it should have been permitted to purchase some of the outside investors' stock.  In its briefing, Prosper explains that one outside investor, Robert Kamerschen, remained a 1.9% equity holder.

The relationship between Penn and Prosper deteriorated and in 2004 BigResearch's

Board passed several resolutions, including one that removed Penn as a member and divested Penn of its ownership interest in BigResearch. Penn believed these actions were illegal and on May 6, 2004, Penn submitted a demand for arbitration to BigResearch.

In the month prior to Penn's arbitration demand, April 2004, BigResearch entered into a business relationship with MarketStar Corporation ("MarketStar"). That relationship ultimately deteriorated and on February 2, 2007, Drenik and Rist, acting on their own behalf and through their company Prosper, filed a notice of arbitration based on the contractual relationship with MarketStar. The parties then arbitrated the dispute ("MarketStar Arbitration").

On April 9, 2007, Defendant Prosper engaged the Law Firm Defendants to represent it in connection with the MarketStar Arbitration. During the arbitration, Drenik, Rist, and the Law Firm Defendants allegedly represented that "BigResearch and Prosper were one in the same." (ECF No. 2 ¶ 41.) As a result of the arbitration, Prosper was awarded $4,750,000 on January 23, 2009 ("MarketStar Arbitration Award"). This award was confirmed by the Common Pleas Court of Franklin County, Ohio on September 4, 2009 and a judgment was entered in favor of Prosper against MarketStar in the amount of $4,750,000.

Penn alleges that the business opportunity from which the MarketStar Arbitration Award and judgment arose belonged to BigResearch, not Prosper. Penn avers that Drenik, Rist, Prosper, and the Law Firm Defendants concealed from Penn the business opportunity from which the MarketStar Arbitration Award came. Penn alleges that Drenik, Rist, and Prosper fraudulently self-dealt in prosecuting the MarketStar Arbitration on behalf of Prosper, rather than on behalf of BigResearch. Penn further alleges that Drenik, Rist, and Prosper paid their legal expenses incurred in pursuing the MarketStar Arbitration from BigResearch.

The arbitration requested by Penn in May 2004 did not come on for a hearing until May 2008.  The arbitrator issued his initial arbitration award on September 15, 2008.  In that award, the arbitrator agreed with Penn that several resolutions of BigResearch's Board had no legal force, including the resolution that divested Penn of its ownership interest in BigResearch and removed Penn's representative from BigResearch's Board.  The Penn arbitrator ordered BigResearch to pay Penn its proportionate distributions that BigResearch had paid to other members during the period that Penn was purportedly divested of its membership interest.  The arbitrator appointed a Special Master to determine the amount BigResearch owed to Penn.  The Special Master's report was completed in November 2009 and submitted to the arbitrator.

In December 2009, BigResearch's Board voted two-to-one to allow 1.9% equity holder Kamerschen to withdraw from BigResearch, with Drenik and Rist voting to allow withdraw and Penn's representative voting to prohibit withdraw.  Once Kamerschen was removed, the Board voted on dissolution of BigResearch.  In another two-to-one vote that mirrored the Kamerschen withdraw vote, Drenik and Rist voted to dissolve BigResearch and Penn's representative voted against dissolution.  Prosper then initiated the process of dissolving BigResearch.

On February 24, 2010, Penn filed suit in the Court of Common Pleas in Franklin County, Ohio, to enjoin the dissolution and winding up of the affairs of BigResearch and requested an order requiring BigResearch to turn over all of its business books for an accounting.  *See Penn LLC v. BigResearch*, No. 10-CV-2909.  The Court takes judicial notice of that lawsuit.  Penn named as defendants in the lawsuit, BigResearch, Prosper, Rist, and Drenik.  BigResearch filed a motion for partial summary judgment, which is currently pending.

On May 5, 2010, the arbitrator of the Penn Arbitration issued a decision awarding Penn

4

$1,488,000 in distributions from BigResearch ("Penn Arbitration Award").  On May 17, 2010, BigResearch filed an action in the Franklin County Court of Common Pleas, requesting vacation and/or modification of the Penn Arbitration Award.  *See BigResearch v. Penn LLC*, No 10-CV-7420.  The Court takes judicial notice of that lawsuit.  On November 1, 2010, the court issued a judgment entry modifying the Penn Arbitration Award to $777,917.13.  In their briefing, Defendants asserts that BigResearch paid this amount to Penn on November 10, 2010.

On November 5, 2010, Penn filed the instant action against Prosper, Prosper Technologies, Rist, Drenik, and the Law Firm Defendants.  Penn alleges that Defendants engaged in a fraudulently induced scheme in which business opportunities, assets, and revenue of BigResearch were transferred and diverted from BigResearch to Prosper and that Defendants fraudulently concealed evidence of the scheme and conspiracy.  Penn alleges the following claims for relief:

Count One:  Corrupt activity and conspiracy to engage in a corrupt activity under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §1962 (c) and (d) ("RICO"), which is filed against all defendants;

Count Two:  Fraud/concealment, which is filed against all defendants;

Count Three:  Conversion and unjust enrichment, which are filed against Rist, Drenik, Prosper, and the Law Firm Defendants; and

Count Four:  Breach of fiduciary duties filed against Rist, Drenik, Prosper, and the Law Firm Defendants;

The Law Firm Defendants filed a motion to dismiss all of the claims filed against them and Prosper filed a combined motion to dismiss and motion for judgment on the pleadings,

which addresses Counts One, Two, and Three.  Both of these motions are ripe for review.

## II.  Standards

### A.  Fed. R. Civ. P. 12(b)(6)[1]

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the

Federal Rules of Civil Procedure a complaint must contain sufficient factual matter, accepted as

true, to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly* , 550

U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying the plausibility

standard articulated in *Twombly*).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  The factual allegations of a pleading

"must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at

555.  "The court must 'accept all the . . . factual allegations as true and construe the complaint in

the light most favorable to the Plaintiff[].' "  *Louisville/Jefferson County Metro Gov't v.

Hotels.com, L.P.*, 590 F.3d 381, 384 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461,

---

[1]The Court notes that Penn argues under a now defunct standard, *i.e.*, a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  As the Sixth Circuit explained in 2007:

> In [*Twombly*], the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard."  *Twombly*, 550 U.S. at 563.

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

466 (6th Cir. 2009)).

**B. Fed. R. Civ. P. 12(b)(1)**

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citing *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125; 1133-35 (6th Cir. 1996); *see also Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). Here, both Prosper and the Law Firm Defendants mount a facial challenge to Plaintiffs' claim of jurisdiction. No party calls on the Court to resolve any factual disputes.

**C. Fed. R. Civ. P. 12(c)**

The Court reviews motions made under Rule 12(c) of the Federal Rules of Civil Procedure in the same manner it would review a motion made under Rule 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Accordingly, to survive a defendant's motion for judgment on the pleadings, the plaintiff's complaint must state a claim to relief that is plausible on its face, as explained in more detail above. *See Twombly*, 550 U.S. 544; *Iqbal*, 129 S. Ct. 1937.

### III. Discussion

Defendant Prosper requests dismissal of three of the four claims filed against it and the Law Firm Defendants request dismissal of each of Plaintiffs' claims against them.

**A. Penn's Derivative Claim on Behalf of BigResearch**

Rule 23.1 of the Federal Rules of Civil Procedure provides in relevant part:

7

Derivative Actions

(a) Prerequisites.  This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce.  The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

(b) Pleading Requirements.  The complaint must be verified and must:

    (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

    (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

    (3)  state with particularity:

      (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

      (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1.

Prosper and the Law Firm Defendants argue that Penn has not complied with the procedural requirements of Rule 23.1, which, they contend, deprives Penn of standing to file a derivative action.  Specifically, Prosper and the Law Firm Defendants argue that Penn has not complied with Rule 23.1 because it does not fairly and adequately represent the interests of shareholders who are similarly situated in enforcing the rights of BigResearch, that it made no effort to obtain the desired action from the BigResearch's Board, and that the complaint was not properly verified.  Penn argues that technical failure to comply with Rule 23.1 does not deprive a plaintiff of standing to sue derivatively and that, in any case, it has complied with Rule 23.1.  This Court agrees.

With regard to the arguments regarding standing, the Court notes that there is a disagreement in this District on this issue. *Compare Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 670 (S.D. Ohio 2003) (J. Graham) (citing to Franklin County, Ohio appellate case and stating: "Where a plaintiff does not comply with the requirements of Rule 23.1, the plaintiff has no standing to bring suit.") *with Plumbers & Pipefitters Local 572 Pension Fund v. Cook*, No. 1:03cv168, 2004 WL 5349589 (S.D. Ohio Sept. 22, 2004) (J. Rice) ("Since the decision of the Franklin County Court of Appeals does not convince this Court that Plaintiffs are without standing in this litigation, the Court does not agree with Judge Graham's conclusion that failure to meet the pleading requirements of Rule 23.1 deprives a federal court of subject matter jurisdiction."). This Court, however, need not resolve this dispute because Penn has met the pleading requirements set forth in Rule 23.1, rendering the standing argument irrelevant in this instance.

### 1. Fair and Adequate Representation

Prosper and the Law Firm Defendants argue that Penn does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the rights of BigResearch.

> The issue of whether a stockholder can fairly and adequately represent the corporation and other stockholders in a derivative action under Rule 23.1 addressed itself to the sound discretion of the court. The action of the district court will not be set aside by this court unless we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

*Owen v. Modern Diversified Industries, Inc.*, 643 F.2d 441, 443 (6th Cir. 1981) (citations omitted). The burden of proof on the issue of the named plaintiff's adequacy to represent the interest of the other shareholders is on the defendants. *Lewis v. Curtis*, 671 F.2d 779, 788 (3d

Cir. 1982); *Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177, 179 (N.D. Ill 1987);  *Fradkin v. Ernst*, 98 F.R.D. 478, 484, 36 Fed. R. Serv. 2d (Callaghan) 1352, Fed. Sec. L. Rep. (CCH) P99, 271 (N.D. Ohio 1983).  "In reviewing [the] defendants' arguments, this Court 'must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation.' "  *Fradkin*, 98 F.R.D. at 484 (quoting *Kline v. Wolf*, 702 F.2d 400, Fed. Sec. L. Rep. (CCH) P99, 120 at p. 95, 375-76 (2d Cir. 1983) and citing to *Cook Investment Co. v. Harvey*, 20 F.R.Serv. 2d 612, 613-14 (N.D. Ohio 1975)).  "The courts have examined several factors or elements in determining whether a particular derivative plaintiff can provide the requisite fair and adequate representation."  *Davis v. Comed, Inc.*, 619 F.2d 588, 593 (6th Cir. 1980).

> Among the elements which the courts have evaluated in considering whether the derivative plaintiff meets Rule 23.1's representation requirements are: economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

*Id.* at 593-94.

Here, Prosper admits that it is reasonable to conclude that Penn is the driving force behind this litigation and is familiar with this litigation.  This Court agrees.  With regard to the remaining six factors the Court must consider, the parties disagree.

As to economic antagonism, Prosper argues that it exists between at least part of the class, *i.e.*, between Penn and Prosper, because Prosper is an adverse party to Penn in this action and in two other lawsuits.  Penn, however, is not similarly situated to Prosper and "Rule 23.1

10

does not require a derivative action plaintiff to represent the interests of shareholders with whom

he is not similarly situated." *Halsted Video*, 115 F.R.D. at 180. "Similarly situated shareholders

do not include majority shareholders opposed to the derivative action, for otherwise a derivative

suit could not be brought if the interests of the controlling shareholders coincided with those of

the defendants." 5 James Wm. Moore *et al.*, Moore's Federal Practice ¶ 23.0.09[4] (3d ed. 1997)

(citing *Schupack v. Covelli*, 512 F. Supp. 1310, 1312 (W.D. Pa. 1981)). Indeed, courts have

accepted "legitimate class[es] of one" in closely held corporation situations when the majority

shareholders were alleged to be engaged in self-dealing leaving only one minority shareholder to

request derivative action representative status. *Halsted Video*, 115 F.R.D. at 180 (quoting *Nixon*

*v. Adm'r of General Services*, 433 U.S. 425, 472, 53 L. Ed. 2d 867, 97 S. Ct. 2777 (1977)). That

is the situation in the case *sub judice*. That is, the majority shareholder, Prosper, opposes a

derivative action and the only other shareholder, Kamerschen, was permitted to withdraw from

BigResearch. This leaves only Penn as a potential derivative action representative. Thus, the

Court finds that this factor weighs heavily in favor of allowing Penn to represent BigResearch in

a derivative action.

As to the factors related to other litigation between the parties and the relative magnitude

of Penn's personal interests as compared to the derivative action itself, these too favor Penn's

position. Related to these two factors, Prosper argues:

> The "derivative" action Penn has asserted amounts to nothing more than one more
> iteration of Penn's continuing effort at avenging itself on [Prosper], Drenik, Rist,
> and, now, [Prosper]'s counsel. To the extent that Penn succeeds in its "derivative"
> action, it will receive no more than it would if it were to successfully prosecute a
> direct action against [Prosper], the majority member in BigResearch. In short, there
> is simply no significant difference in Penn's purportedly distinct interests as the
> representative of all members and as a party that has, for years, been seeking redress
> against BigResearch, [Prosper] and its principals. Given that identity of interests

11

> between Penn as a derivative "representative" and Penn as the lone "aggrieved"
> member in a close corporation, allowing Penn to pursue this action derivatively on
> behalf of BigResearch makes no sense.

(ECF No. 26 at 7.)  The Law Firm Defendants also argue that the lawsuits and arbitrations

involving Penn, Prosper, BigResearch, Drenik, and Rist work to disqualify Penn as a

representative because Penn is acting exclusively in its own self-interest and not the interest of

BigResearch and Prosper.  Specifically, the Law Firm Defendants contend that Penn's effort at

preventing the dissolution of BigResearch and the winding up of its affairs is draining

BigResearch of its remaining assets through this litigation.  The Law Firm Defendants' and

Prosper's arguments are not well taken.

 If Penn were to succeed in its derivative action it will not only receive what it would if it

were to successfully prosecute a direct action against Prosper.  Nor would Penn's efforts, if

successful, drain BigResearch of its remaining assets.  The derivative action alleges that the

MarketStar business deal and the MarketStar Arbitration Award belong to BigResearch, not

Prosper.  If the derivative suit is successful, BigResearch would be awarded the MarketStar

Arbitration Award, *i.e.*, $4,750,000.  That Award, and the business it reflects, is beneficial not

only to Penn but also to BigResearch.  Further, the influx of business and capital certainly

reflects on whether BigResearch is a successful going concern, which ultimately reflects on its

ability to wind up its business and the amount of distributions due to Penn before and after

winding up.  As the Sixth Circuit has explained, " '[i]n prosecuting a derivative claim a

shareholder acts in the stead of the corporation, as a corporate surrogate seeking vindication of a

corporate right.' "  *Comed*, 619 F.2d at 593 (quoting *Sweet v. Bermingham*, 65 F.R.D. 551, 553,

20 Fed. R. Serv. 2d (Callaghan) 454; Fed. Sec. L. Rep. (CCH) P94, 956  (S.D. N.Y.1975)).

"Moreover, as the Supreme Court has noted, 'The proceeds of the action belong to the corporation and it is bound by the result of the suit. The heart of the action is the corporate claim.' " *Id.* (citing *Ross v. Bernhard*, 396 U.S. 531, 538-39, 90 S. Ct. 733, 738, 24 L. Ed. 2d 729 (1970)).

In the instant action, this Court "must be wary" of Prosper's efforts to defeat representation of a class because the effect will most certainly be to eliminate any class representation. *See Fradkin*, 98 F.R.D. at 484. In the circumstances before this Court, there is no other candidate to protect the rights of BigResearch as it relates to the MarketStar business and the MarketStar Arbitration Award except for Penn. Thus, accepting Prosper's and the Law Firm Defendants' arguments here would leave BigResearch without a remedy for the alleged misconduct of Prosper, Drenik, and Rist. *See Halsted Video*, 115 F.R.D. at 180 ("Accepting defendants' argument would leave both Mastro and Halsted Video without a remedy for the defendants' alleged misconduct.").

Finally, the Court notes that the lawsuit and arbitration in which Penn named BigReserach as a defendant were not antagonistic to BigResearch in a way that is relevant here. That is, BigResearch was named as a defendant because the distributions were made from it. The distributions, however, were found to be improperly made by Drenik and Rist, and Penn was only seeking to retain the benefit of its ownership in BigResearch. Penn was not adverse to BigResearch in relevant ways such as attempting to compete for its business, attempting to take over the corporation, or to use the suits/arbitration as leverage in other cases. *See e.g.*, *Comed*, 619 F.2d at 597-98 (conflict of interest disqualified plaintiff shareholder from filing derivative action because of potential that derivative suit would be used as leverage in several other suits

against same defendant); *Hall v. Aliber*, 614 F. Supp. 473, 475-76 (E.D. Mich. 1985)

(representative plaintiff was inadequate when suit challenged corporation's sale of stock

allegedly made for the purpose of thwarting takeover attempt by the plaintiff). Nor is Penn

adverse to BigResearch in a relevant way such as participating in the wrongdoing against the

corporation. *See e.g., Maxwell v. Stein*, No. 93 Civ. 2830, 1993 U.S. Dist. LEXIS 17013, at *16-

18 (S.D. N.Y. Dec. 3, 1993) (shareholder representative was disqualified because fraudulent acts

had been committed while shareholder was in control of corporations at issue and shareholder

had been adjudicated as defrauder); *Bartels v. Newirth v. Newirth*, No. 75 Civ. 5664, 1976 U.S.

Dist. LEXIS 13311, at *9-10 (S.D. N.Y. Sept. 9, 1976) (controlling shareholders did not provide

fair and adequate representation because they participated in transactions that were subject of

derivative action).

      As to the remaining two factors: Penn's vindictiveness toward all of the defendants and

the degree of support Penn is receiving from the shareholders it purports to represent, they too

favor Penn's position. The minority shareholder, Kamerschen, has requested to withdraw from

BigResearch and BigResearch's Board permitted such withdraw.[2] Consequently, the Court

cannot reasonably anticipate a recently withdrawn equity member to support a derivative action.

As to Penn's vindictiveness, while the individual members of Prosper and Penn certainly seem to

have animosity toward each other, the Court finds that this relationship does not rise to the level

---

     [2]Prosper's arguments in this regard are confusing. On the one hand, Prosper contends that BigResearch's Board voted to permit the one minority equity holder, Kamerschen, to withdraw. On the other hand, Prosper argues that Penn is not a "suitable representative of the interests of either BigResearch or all of its members. . . . especially [considering] that Penn is receiving no support in this litigation from the other minority member [Kamerschen] in BigResearch." (ECF No. 26 at 8.) This issue, however, is irrelevant to the Court's decision related to the appropriateness of Penn as the representative in a derivative action.

of vindictiveness as that term is used in a legal sense.

Accordingly, the Court concludes that Penn can fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the rights of the corporation or association.

### 2. Demand

Under Federal Rule 23.1, a derivative plaintiff must demand that the board of directors take the desired action prior to filing suit, or set forth with particularity the reasons for not doing so.  Whether the failure to make a demand is excused is determined under the substantive law of the state of incorporation, here Delaware.  *Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90, 108-09, 114 L. Ed. 2d 152, 111 S. Ct. 1711 (1991).  Prosper and the Law Firm Defendants argue that Penn did not make any demand upon BigResearch's Board, nor did Penn set forth in its complaint any reason for such failure.  Penn, however, argues that it need only allege particularized factual allegations that create a reasonable doubt that, as of the time the complaint is filed, a majority of BigResearch's Board could have properly exercised its independent and disinterested business judgment in responding to a demand.  This Court agrees.

The Sixth Circuit, interpreting Delaware law, explains:

Under *Rales* [*v. Blasband*, 634 A.2d 927, 932 (Del. 1993)) then, the court must determine "whether or not the particularized factual allegations . . . create a reasonable doubt that, as of the time the complaint is filed, [a majority of] the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934. To establish a reasonable doubt, plaintiffs are not required to plead facts that would be sufficient to support a judicial finding of demand futility. *Grobow v. Perot*, 539 A.2d 180, 186 (Del. 1988).  Nor must plaintiffs demonstrate a reasonable probability of success on the merits. *Rales*, 634 A.2d at 934.  Further, whether plaintiffs have alleged facts sufficient to create a reasonable doubt concerning the disinterestedness and independence of a majority of the Board must be determined from the accumulation of all the facts taken together. *See Harris v. Carter*, 582 A.2d 222, 229 (Del. Ch.

15

1990).

*McCall v. Scott*, 239 F.3d 808, 816-17 (6th Cir. 2001) (omission in original) ("We agree with

plaintiffs that the district court, in adopting the magistrate judge's report and recommendation,

erred by viewing the factual allegations separately and by refusing to draw reasonable inferences

in plaintiffs' favor.").

> Disinterested "means that directors can neither appear on both sides of a transaction
> nor expect to derive any personal financial benefit from it in the sense of
> self-dealing, as opposed to a benefit which devolves upon the corporation or all
> stockholders generally . . . .  Independence means that a director's decision is based
> on the corporate merits of the subject before the board rather than extraneous
> considerations or influences."

*Bakerman v. Sidney Frank Importing Co., Inc.*, No. Civ.A. 1844-N, 2006 WL 3927242, at *7

(Del. Ch. Oct. 10, 2006) (citing *In re J.P. Morgan Chase & Co.*, No. Civ.A. 531-N, 2005 WL

1076069, at *8 (Del. Ch. Apr. 29, 2005), *Aronson v. Lewis*, 473 A.2d 805, 812, 816 (Del. 1984),

and *Rales*, 634 A.2d at 936).

    In the instant action, Drenik and Rist could not be considered disinterested or

independent in relation to the MarketStar business deal, in which they allegedly participated and

approved of a transaction that would benefit their company, Prosper.  Drenik and Rist are the

sole owners of Prosper, the entity that allegedly usurped the business opportunity and the

resultant $4,750,000 MarketStar Arbitration Award.  If the derivative suit is successful, that

award will be taken from Prosper and given to BigResearch, thereby requiring distributions from

the proceeds to go not only to Prosper but also to Penn.  *See e.g., Lewis v. Curtis*, 671 F.2d 779,

785 (3d Cir. 1982) (demand is futile when complaint alleges that all directors participated in and

approved of self-interested transaction); *Johnson v. Hui*, 752 F. Supp. 909, 913 (N.D. Cal. 1990)

(demand excused when suit accused six members of eight-person board of insider trading);

*Papilsky v Berndt*, 59 F.R.D. 95, 17 Fed. R. Serv. 2d (Callaghan) 214,  Fed. Sec. L. Rep. (CCH) P93, 902 (S.D. N.Y. 1973) (complaint is sufficient if it alleges that all affiliated directors who controlled and directed corporation at time of wrongs alleged participated in or acquiesced in challenged transactions and are liable therefor).

Thus, the Court finds that Penn has made particularized factual allegations that are sufficient to create a reasonable doubt that, as of the time the complaint was filed, a majority of BigResearch's Board, *i.e.*, Prosper owners Drenik and Rist, could not have properly exercised their independent and disinterested business judgment in responding to a demand that Prosper relinquish the MarketStar business relationship and resultant economic benefits to BigResearch.

### 3.  Verification

Prosper and the Law Firm Defendants argue that Penn has failed to meet Rule 23.1's verification requirement.  Penn, in its memorandum in opposition, admits that it failed to verify the complaint and, therefore, submits an affidavit from counsel verifying the complaint.  Prosper, in its reply memorandum, contends that verification by counsel is insufficient.  Instead, it contends that the verification must be made by the named plaintiff, Penn.  This Court disagrees.

The leading case on the requirements for verification is *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 15 L. Ed. 2d 807, 86 S. Ct. 845 (1966) (requirement analyzed under predecessor to Fed. R. Civ. P. 23.1(b)).  The *Surowitz* Court explained that the verification requirement of Rule 23.1 is intended only to clear the Court of "strike suits" and not to be a general impediment to shareholder derivative actions.  Thus, courts regularly find that the failure to verify is a technical defect curable by amendment. *Halsted*, 115 F.R.D. at  180 (allowing amendment to verify and stating that, "while Mastro's complaint must be verified, his mere failure to do so does not entitle

the defendants to summary judgment."); *Weisfeld v. Spartans Indus., Inc.*, 58 F.R.D. 570, 578, 17 Fed. R. Serv. 2d (Callaghan) 331; Fed. Sec. L. Rep. (CCH) P93, 719 (S.D. N.Y. 1972) (court ordered plaintiff to file an affidavit verifying the complaint and serve it upon the defendants within ten days); *Porte v. Home Federal Sav. & Loan Assoc.*, 409 F. Supp. 752, 754 (N.D. Ill. 1976) (court granted defendants' motion to compel plaintiff to verify his complaint within thirty days).

Hence, the issue for the Court to determine is whether verification by counsel is sufficient. In *Surowitz*, concurring separately, Justice Harlan stated that the rule directs that "in derivative suit 'the complaint shall be verified by oath' but nothing dictates that the verification be that of the plaintiff shareholders." *Surowitz*, 383 U.S. at 374 (citation omitted). "In Justice Harlan's view, the affidavit of Mrs. Surowitz' counsel would be adequate for the purposes of the rule. Professor Moore has endorsed Judge Harlan's view." *Fradkin*, 98 F.R.D. at 483, n.4 (citing 3B Moore's Federal Practice P23.1.16 at 62 n.22 (2d ed. 1982)). Thus, this Court too finds counsel's verification sufficient. And, in this instance, the facts verified by counsel's affidavit sufficiently indicate that Penn has investigated the charges and found them to be of substance.

### 4. Conclusion - Derivative Action

Based on the foregoing, the Court concludes that Penn is the proper party to file a derivative claim on behalf of BigResearch. Consequently, the Court **DENIES** Prosper's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Subject Matter Jurisdiction in this regard.

**B.  RICO**

Prosper and the Law Firm Defendants contend that Plaintiffs have failed to state plausible RICO claims against them.  This Court agrees.

Plaintiffs allege RICO claims under 18 U.S.C. § 1962(c) and (d).  Section 1962(c) provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(c).  Section 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).

A complaint asserting a RICO claim must allege the (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985); *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389 (6th Cir. 1996).  To establish a "racketeering activity," a plaintiff must allege a predicate act. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (quoting *Kenty*, 92 F.3d at 389).  As to Plaintiffs' second claim, "to prove a RICO conspiracy under 18 U.S.C. § 1962(d), the [plaintiff] must establish, in addition to the aforementioned elements, the existence of an illicit agreement to violate the substantive RICO provision."  *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983) (citation omitted).

Here, Plaintiffs allege mail fraud and/or wire fraud as the necessary predicate acts.  Civil RICO claims based on alleged mail or wire fraud fall under Rule 9(b) of the Federal Rules of Civil Procedure and must be pleaded with particularity.  *Kenty*, 92 F.3d at; *Berent v. Kemper*

*Corp.*, 780 F. Supp. 431, 448 (E.D. Mich. 1991) ("Courts have repeatedly held in RICO cases

alleging mail fraud and wire fraud as the 'predicate acts,' the underlying fraudulent activities

must be pled with particularity.").  Indeed, "[c]ourts have been particularly sensitive to Fed. R.

Civ. P[.] 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are mail fraud

and wire fraud, and have further required specific allegations as to *which* defendant caused *what*

to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call)

furthered the fraudulent scheme." *Berent*, 780 F. Supp. at 448 (emphasis in original); *FRC Int'l.,*

*Inc. v. Taifun Feuerloschgeratebau Und Vertriebs Gmbh*, 2002 U.S. Dist. LEXIS 17559, RICO

Bus. Disp. Guide P10357 (N.D. Ohio Sept. 4, 2002);  *Paycom Billing Servs. v. Payment Res.*

*Int'l*, 212 F. Supp. 2d 732, 736, RICO Bus. Disp. Guide P10277 (W.D. Mich. 2002).  Thus, here,

Plaintiffs "must make specific allegations as to which defendant made which telephone calls or

mailings, and how each call or mailing furthered the fraudulent scheme." *Carr v. Countrymark*

*Cooperative, Inc.*, No. C-2-96-1246, 1998 U.S. Dist. LEXIS 23000, at *9 (S.D. Ohio Jan. 29,

1998) (citing *Eby v. Producers Co-op*, 959 F. Supp. 428, 431 (W.D. Mich 1997)).  "A plaintiff

must also plead with particularity the false statement the defendant made and upon which the

plaintiff relied." *Id.* (citing *Kenty*, 92 F.3d at 390).

        The complaint in the instant case fails to satisfy the above pleading standards.

        **1.  Racketeering Activity**

        With regard to racketeering activity, Plaintiffs have failed to sufficiently allege the

predicate acts of mail and wire fraud.  Plaintiffs' complaint is replete with conclusory allegations

regarding Prosper's and the Law Firm Defendants' alleged participation in a RICO enterprise.

Plaintiffs, however, fail to provide any facts identifying the persons involved, or the time, place,

or content of the allegedly fraudulent mail and/or wire communications.  *See e.g.*, Compl. ¶ 43 ("fraudulent representations were sent via wire and/or United States mail").  Plaintiffs' allegations fall far short of the required particularity with which the predicate acts of mail and wire fraud must be pleaded.  *See Eby*, 959 F. Supp. at 431 (in RICO cases in which the predicate acts are mail fraud and wire fraud, specific allegations must be pleaded as to which defendant caused what to be mailed (or made which telephone calls), and when and how each mailing (or telephone call) furthered the fraudulent scheme).

The Court finds that Plaintiffs failed to plead with particularity the predicate acts that form the basis of Plaintiffs' RICO claims against Prosper and the Law Firm Defendants. Because of this conclusion, Plaintiffs' conspiracy claim under § 1962(d) of RICO must also be dismissed because it too depended on adequate allegations of mail fraud and/or wire fraud.

### 2.  Conduct

As to Plaintiffs' allegations related to Prosper's and the Law Firm Defendants' conduct, RICO only prohibits the racketeering activities of those persons employed by or associated with an enterprise and that conducts or participates in the conduct of such enterprise's affairs.  *See* 18 U.S.C. § 1962(c).  In interpreting this language, the United States Supreme Court has adopted the "operation and management" test, which requires the defendant to have had "*some* part in directing the enterprise's affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis in original).  Specifically, the *Reves* Court explained:

> Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus.  In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs.  Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or

> indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

*Reves*, 507 U.S. at 179 (emphasis in original).

Plaintiffs here have merely alleged *involvement* by Prosper and the Law Firm Defendants, which is insufficient. Plaintiffs fail completely to allege that Prosper and/or the Law Firm Defendants *directed* any of the alleged enterprise's affairs. Indeed, just the opposite. Plaintiffs allege that Prosper and the Law Firm Defendants were "under the exclusive control of Drenik and Rist," acted at the "behest" of Drenik and Rist, "carr[ied] out [the] directives" of Drenik and Rist, and "operate[d] pursuant to [the] directives" of Drenik and Rist. (ECF No. 2 ¶¶ 119(a), (b), and (c); ¶¶ 29-49 (also alleging these defendants' involvement with, but not direction of, the alleged enterprises affairs). *See also Hager v. ABX Air, Inc.*, No. 2:07-cv-317, 2008 WL 819293, at *15, RICO Bus.Disp.Guide 11,464 (S.D. Ohio March 25, 2008) (dismissing two defendants for failure to state a plausible RICO claim because the plaintiff failed "to allege facts supporting a conclusion that [two of the defendants] had some part in directing [the] hypothetical enterprise's affairs, not merely that [these two defendants] acquiesced to or went along with the enterprise").

With regard to the Law Firm Defendants, Plaintiffs' complaint is particularly deficient. That is, neither the complaint nor Penn's memorandum in opposition to Prosper's and the Law Firm Defendants' motion to dismiss and for judgment on the pleadings contain any facts suggesting that the Law Firm Defendants' involvement in the alleged enterprise constituted anything more than the provision of traditions legal services. Courts agree that the provision of traditional legal services does not constitute the "operation or management" of an enterprise for

22

purposes of RICO liability.  *See e.g.*, *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521-522 (2d Cir. 1994) (dismissing RICO claim against attorney who "acted as no more than [an] attorney"); *Nolte v. Pearson*, 994 F.2d 1311, 1316-1317 (8th Cir.1993) (affirming directed verdict in favor of law firm that drafted documents sent to prospective clients based on information provided by client did not establish RICO liability; no evidence that firm participated in conduct of the affairs of the enterprise);*Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (dismissing RICO claim against an attorney whose "role was limited to providing legal services"); *Rolfes v. MBNA Am. Bank N.A.*, 416 F. Supp. 2d 745, 752 (D. S.D. 2005) (dismissing plaintiff's RICO claim against attorneys who provided "ordinary professional assistance"); *Petri v. Gatlin*, 997 F. Supp. 956, 986 (N.D. Ill. 1997) (although an accountant, like an attorney, "manages" several aspects of its client's matters, that type of "management" is not synonymous with the "operation or management" of an enterprise required to sustain a RICO claim; collecting cases); *Walter*, 538 F.3d at 1249 (dismissing RICO claim against attorney and her law firm because "[o]ne can be 'part' of an enterprise without having a role in its management and operation.  Simply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.' "); *Menuskin v. Williams*, 940 F. Supp. 1199, 1210 (E.D. Tenn. 1996) (dismissing RICO claim against attorney who did not do "anything more than provide standard, routine services for [plaintiff]"); *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 827 (S.D. Fla. 1996) ("[P]roviding standard legal services does not create RICO liability under the operation and management standard."); Gilmore v. Berg, 820 F. Supp. 179, 183 (D. N. J. 1993) (lawyer's preparation of allegedly misleading tax opinion letter merely constituted the rendition of legal services, not participation in the direction of the affairs

of the enterprise).

### 3. Remedy of the Deficiencies in the Complaint

In their memorandum in opposition to Prosper's and the Law Firm Defendants' motions to dismiss and motion for judgment on the pleadings, Plaintiffs provide an affidavit that they claim remedies the deficiencies in the complaint. However, even if the Court were to consider Plaintiffs' affidavit, it fails to remedy the above noted deficiencies in the complaint. Thus, to the extent Plaintiffs suggest that amendment to the complaint would somehow remedy its deficiencies, this Court disagrees.

Plaintiffs also suggests that they should be entitled to discovery to obtain the information they need to remedy the deficiencies in the complaint because the information they needs is in the control of Prosper and the Law Firm Defendants. Plaintiffs' suggestion is not well taken. Indeed, another Judge in this District, Judge George C. Smith, has already rejected an almost identical argument, relying upon *Eby v. Producers Co-op*, and stating:

> The Court in *Eby* rejected the identical argument in a strikingly similar case, stating:
>
>> Plaintiffs claim that they should not be required to plead with specificity because information is under the Defendant's control. In *Berent v. Kemper* [*Corp.*], 780 F. Supp. 431 (E.D. Mich. 1991), *aff'd*, 973 F.2d 1291 (6th Cir. 1992)] the court rejected a plaintiff's claim that [it] should be entitled to pursue discovery rather than comply with the requirements of Rule 9(b). The court quoted *NL Industries, Inc. v. Gulf & Western Industries, Inc.*, 650 F. Supp. 1115 (D. Kansas 1986) : "[Rule 9(b)'s] requirement of greater specificity is intended to protect defendants from the harm that results from charges of serious wrongdoing, and to give defendants notice of the conduct complained of. Complaints alleging fraud should seek redress for a wrong, rather than attempt to uncover unknown wrongs." *Berent*, 780 F. Supp. at 448-449, quoting *NL Industries, Inc.*, 650 F. Supp. at 1129-30.
>
> 959 F. Supp. at 431. The reasoning of *Eby* is sound, and the Court likewise rejects

24

plaintiffs' argument in the instant case.

*Carr*, 1998 U.S. Dist. LEXIS 23000, at *9-10.  Like Judge Smith found in *Carr*, this Court too

finds the reasoning of *Eby* sound, and likewise rejects Plaintiffs' argument in the case *sub judice*.

### 4.  Conclusion - RICO

Based on the foregoing the Court concludes that, even when accepting as true all of

Plaintiffs' allegations and construing the complaint in the light most favorable to Plaintiffs,

Plaintiffs have failed to state a plausible RICO claim against Prosper or the Law Firm

Defendants.  Therefore the Court **GRANTS** the Law Firm Defendants' Motion to Dismiss and

Prosper's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Subject

Matter Jurisdiction as they relate to this claim.

## C.  Fraudulent Concealment

For the same reasons the Court explained *supra* regarding Plaintiffs' allegations of RICO

violations based on the predicate acts of mail fraud and wire fraud, the Court finds here that

Plaintiffs have failed to state a claim for common law fraud that is plausible on its face.

Although the Sixth Circuit reads Federal Rule of Civil Procedure 9(b)'s pleading requirement

liberally, it still requires "at a minimum" allegations of "the time, place, and content of the

alleged misrepresentation on which [the plaintiffs] relied; the fraudulent scheme; the fraudulent

intent of the defendants; and the injury resulting from the fraud."  *Coffey*, 2 F.3d at 161-62.

Plaintiffs have failed to meet these pleading requirements.

Accordingly, even when viewing the complaint in the light most favorable to Plaintiffs

and accepting all factual allegations as true, Plaintiffs have failed to state a common law fraud

claim against Prosper or the Law Firm Defendants that is plausible on its face.  Consequently,

the Court **GRANTS** the Law Firm Defendants' Motion to Dismiss and Prosper's Motion for

Judgment on the Pleadings and Motion to Dismiss for Lack of Subject Matter Jurisdiction as

they relate to this claim.

**D.  Conversion/Unjust Enrichment**

Prosper and the Law Firm Defendants assert that Plaintiffs' conversion and unjust

enrichment claims fail to state a claim upon which relief can be granted.

**1.  The Law Firm Defendants**

**a.  Unjust enrichment**

In Ohio, a claim of unjust enrichment requires a plaintiff to establish (1) a benefit

conferred by the plaintiff upon a defendant, (2) the defendant's knowledge of the benefit, and (3)

the defendant's retention of the benefit under circumstances where it would be unjust to do so

without payment.  *Cantwell Mach. Co. v. Chicago Mach. Co.*, 184 Ohio App. 3d 287, 290, 2009

Ohio 4548, 920 N.E.2d 994 (2009).  The Law Firm Defendants argue that Plaintiffs have failed

to allege a plausible claim for unjust enrichment against them because Penn makes no allegation

that it conferred a benefit upon the Law Firm Defendants and because Plaintiffs make no

allegation that the Law Firm Defendants' retention of the benefit conferred upon it by

BigResearch would be unjust.  The Law Firm Defendants' arguments are well taken.

With regard to conferring a benefit upon the Law Firm Defendants, these defendants

correctly argue that there is a legal distinction between a limited liability company, like

BigResearch, and its members.  In Ohio, an attorney's duties to a limited liability company run

only to the company itself and not to its members.  *See* Ohio Rev. Code § 1705.61 ("Absent an

express agreement to the contrary, a person providing goods to or performing services for a

limited liability company owes no duty to, incurs no liability or obligation to, and is not in privity with the members or creditors of the limited liability company by reason of providing goods to or performing services for the limited liability company.").  Thus, here, the benefit of being paid for its legal services was a benefit conferred upon the Law Firm Defendants by BigResearch, not Penn.  Penn therefore, could only file this claim derivatively on behalf of BigResearch.

As to the Law Firm Defendants' retention of the benefit of payment for its legal services, the Court finds that Plaintiffs' fail to allege "circumstances where it would be unjust" for these defendants to retain that benefit.  Plaintiffs provide nothing but conclusory allegations regarding the Law Firm Defendants and a request to engage in a fishing expedition to determine if these defendants engaged in illegal conduct.  Consequently, Plaintiffs have failed to state an unjust enrichment claim upon which relief can be granted against the Law Firm Defendants on behalf of Penn or derivatively on behalf of BigResearch.

### b.  Conversion

Conversion is "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps-Howard Broad. Co.*, 47 Ohio St. 2d 224, 226, 351 N.E.2d 454 (1976), *overruled on other grounds*, 433 U.S. 562, 578, 97 S. Ct. 2849, 53 L. Ed. 2d 965 (1977).  To prove conversion, a plaintiff must show: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages."  *Haul Transp. of VA, Inc. v. Morgan*, No. CA 14859, 1995 Ohio App. LEXIS 2240, at *9 (Ohio Ct. App. June 2, 1995) (citation

omitted).

In the instant action, Plaintiffs have failed to sufficiently allege any wrongful act that permitted the Law Firm Defendants to convert Plaintiffs' property.  As stated throughout this Opinion and Order, Plaintiffs merely speculate that the Law Firm Defendants were somehow involved in the alleged frauds committed against Penn and BigResearch by Rist, Drenik, Prosper, and Prosper Technologies.

### c.  Conclusion - unjust enrichment and conversion

The Court concludes that even when accepting all of Plaintiffs' factual allegations as true and viewing the complaint in the light most favorable to them, they have failed to state a plausible claim for unjust enrichment or conversion against the Law Firm Defendants. Accordingly, the Court **GRANTS** the Law Firm Defendants' Motion to Dismiss as it relates to those two claims.

### 2.  Prosper

Prosper argues that the Operating Agreement that governs the affairs of BigResearch controls the dispute between Plaintiffs and Prosper.  Review of the Operating Agreement, Prosper contends, shows that the wrongs allegedly committed by Prosper were permissible. Further, Prosper argues that, under Delaware law, which by agreement of the parties governs the Operating Agreement, "to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty apart from the duty imposed by contract."  (ECF No. 8 at 21-22) (quoting *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889-90 (Del. Ch. 2009)).  Prosper concludes that, because the rights Plaintiffs seek to assert arise only under the Operating Agreement, its tort claims must be dismissed.  This Court

disagrees.

First, in assessing Plaintiffs' conversion and unjust enrichment claims, Prosper determined that they are based upon the allegations that Penn was not permitted the opportunity to purchase a minority shareholder's stocks when they were sold.  This conclusion, however, is inaccurate.  The complaint specifically alleges that Prosper deprived BigResearch and Penn "from benefitting from the business opportunities, trade secrets, clients, assets, funds, documents, records, metadata and information of BigResearch."  (ECF No. 2 ¶ 138.)  Read in concert with the other factual allegations made in the complaint, the Court easily concludes that Plaintiffs sufficiently alleged that Prosper converted business opportunities that belonged to BigResearch and that Prosper was unjustly enriched by that conversion.

Further, Prosper's claim that Delaware law prohibits "a tort claim along with a contract claim," is irrelevant here.  Plaintiffs do not allege a breach of contract claim.  Nor does it appear, at this stage of the proceedings, that the Operating Agreement governs that relationship between the parties that gives rise to the unjust enrichment and conversion claims.  Prosper invites the Court to review the contract to determine whether "Penn's allegations proceed from duties that arise under the Operating Agreement[.]"  (ECF No. 26 at 15.)  This inquiry, however, is not one that is appropriate at this juncture.  The Court here must accept the factual allegations in the complaint as true and determine whether those allegations state a plausible claim for relief.  Under this standard, the Court concludes that Plaintiffs have stated plausible claims for relief for unjust enrichment and conversion against Prosper.

Accordingly, the Court **DENIES** Prosper's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Subject Matter Jurisdiction as it relates to Plaintiffs' conversion

and unjust enrichment claims.

**E.  Fiduciary Duty Claim**

The Law Firm Defendants argue that Penn's claim of breach of fiduciary duty should be dismissed as implausible because in Ohio an attorney representing a limited liability company does not owe fiduciary duties to the members of that company.  Penn agrees that it has failed to state a claim for breach of fiduciary duty against the Law Firm Defendants.  Instead, Plaintiffs argue that the claim is a derivative claim that is filed on behalf of BigResearch and it is one for aiding and abetting a breach of a fiduciary duty.  The Law Firm Defendants reply that Plaintiffs did not allege a claim for aiding and abetting a breach of fiduciary duty claim and that, even if they did, that allegation does not rise above the speculative level.  This Court agrees.

First, the Court notes that Plaintiffs certainly did not make clear that they were pursuing a claim for aiding and abetting a breach of fiduciary duty.  To the extent that Plaintiffs have alleged such a claim, that claim cannot survive the Law Firm Defendants' Motion to Dismiss.

All relevant parties agree that any claim for a breach of a fiduciary duty claim arises from the rights and responsibilities of the parties set forth in Operating Agreement, which dictates Delaware law is applicable to this claim.  Under Delaware law, a plaintiff must allege that the defendant non-fiduciary (here, the Law Firm Defendants) "knowingly participated in a breach." *Bay Center Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 Del. Ch. LEXIS 54, at *40 (Del. Ch. April 20, 2009) (citations omitted).  Penn has made no such allegation.  The complaint is devoid of any facts suggesting that the Law Firm Defendants intentionally or knowingly participated in a breach of any duty.  To the contrary, the complaint alleges that the Law Firm Defendants did nothing more than act as legal counsel for Prosper and BigResearch and acted

only pursuant to the directives of Drenik and Rist.

Consequently, Plaintiffs have failed to state a plausible aiding and abetting a breach of fiduciary duty claim even when the Court accepts all of the complaint's factual allegations as true and views those facts in the light most favorable to Plaintiffs.  Therefore, the Court **GRANTS** the Law Firm Defendants' Motion to Dismiss as it relates to this claim.

### IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** the Law Firm Defendants' Motion to Dismiss (ECF No. 7) and **GRANTS in part and DENIES in part** Prosper's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 8).  Specifically, the Court **GRANTS** Prosper's motion as it relates to the RICO and fraudulent concealment claims and **DENIES** it as it relates to the conversion and unjust enrichment claims and as it relates to Penn's ability to act as a derivative plaintiff on behalf of BigResearch on any of the remaining claims.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

31