**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PENN, LLC,** *et al.,* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No.  2:10-cv-993 |
| v. | : | |
| | : | Judge Gregory L. Frost |
| **PROSPER BUSINESS DEVELOPMENT** | : | |
| **CORPORATION,** *et al.,* | : | Magistrate Judge Terence P. Kemp |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM CONTRA DEFENDANTS' MOTION**
**TO EXCLUDE THE TESTIMONY OF REBEKAH SMITH**

**I.      INTRODUCTION**

Defendants' entire motion is predicated on the faulty assertion that Rebekah Smith will offer some form of expert opinion testimony in the face of this Court's rulings.   Thus, Defendants cite a host of cases that, notwithstanding Defendants' mischaracterizations, actually hold only that expert opinions cannot be disguised as lay opinion testimony.   Then, Defendants argue that because Rebekah Smith had no knowledge of any facts prior to the filing of this suit, she has no personal knowledge so as to support lay testimony.   Finally, Defendants claim that Ms. Smith's qualifications and expertise would prejudice a jury into adopting whatever opinions she theoretically might proffer.

In fact, however, it is entirely appropriate for Ms. Smith to testify as a fact witness, summarizing per Fed. R. Evid. 1006 the thousands of pages of financial transactions she reviewed in this matter.   Accordingly, for the reasons more fully set out below, Defendants' Motion should be DENIED.

## II.    LAW AND ARGUMENT

### A.    Summary Documents And Supporting Summary Testimony Are Accepted Lay Testimony In The Sixth Circuit.

As this Court is well-aware, Defendants have been loathe to voluntarily produce the financial records that underpin Plaintiffs' claims.  Nevertheless, pursuant to this Court's direction and Orders, Defendants ultimately produced the general ledger and underlying financial records, invoices and documents from Big Research.  These financial documents were initially produced in approximately 8 banker's boxes and a large binder containing payroll records totaling approximately 21,697 documents.  Prosper also produced the federal tax returns of Big Research from 2001 through 2010, which consisted of approximately 300 pages of documents along with other small snippets of Big Research financial records.

More recently, on September 11, 2012, Prosper produced approximately 5,100 pages of documents consisting of a mix of records from Consumer Research Partners ("CRP") and Big Research, which included invoices, contracts, receipts, payment records and the like.  While Plaintiffs themselves have been able to review these most recent documents only since November 28, Ms. Smith has been reviewing these financial transactions and summarizing their contents since they were produced.  With this in mind, Plaintiffs should have the option to introduce a summary of these voluminous documents through Ms. Smith, the only witness on Plaintiffs' side of the caption that reviewed these transactions *in toto* since they were produced.

According to Defendants, because they alone had control of these records prior to suit, they are the only ones with factual knowledge such as to be competent to testify. Were this true, Plaintiffs would have no choice but to cross-examine Defendants for days to establish each separate transaction underpinning the case, one at a time.  Fortunately, the Federal Rules of Evidence are not so circumscribed, and permit lay testimony in summary fashion.

Thus, Rule 1006 of the Federal Rules of Evidence permits a party to introduce summaries to prove the content of voluminous documents.  This Rule states:

### RULE 1006. SUMMARIES TO PROVE CONTENT

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.

Rule 1006 follows the common law tradition that recognized that parties could prove the contents of voluminous writings in the form of testimonial or written charts, summaries, or calculations when the writings, because of their voluminous contents, could not be examined in court without causing inconvenience or a waste of time.  5  JACK B.  WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE, ¶ 1006 (1996).  The purpose of the Rule is simply "to allow the use of summaries when the volume of documents being summarized is so large as to make their use impractical or impossible; summaries may also prove more meaningful to the judge and jury." *United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir.), *cert. denied*, 444 U.S. 964 (1979).

In the case of *United States v. Scales*, 594 F.2d 558, (6th Cir. 1979), *cert. denied,* 441 U.S. 946 (1979), the Sixth Circuit Court of Appeals, considered the whether summary testimony and a summary exhibit were inadmissible and prejudicial at a criminal trial.[1]  In this case, the Government introduced 161 exhibits consisting of thousands of pages of documents.  The Government also had a witness who prepared a summary exhibit that consisted of a series of

---

[1]  Indeed, because of the availability of depositions, summary testimony is even less worrisome in civil cases, such as the one at bar.  Here, Defendants have until discovery closes in May, 2013 to test in deposition Ms. Smith's abilities as a lay witness to accurately perceive, recall and communicate the facts of her testimony—i.e., her review and summarization of the financial records produced by Defendants.

large charts that referenced to the indictments against the defendant and to the documentary proof in evidence.  The witness, an FBI agent, authenticated the exhibit.

Scales, who was convicted on nine counts of unlawfully converting assets, argued that the exhibit was inadmissible and prejudicial because it summarized the indictment and the evidence, thereby constituting improper conclusions and argument.  *Id.* at 561.  The Sixth Circuit Court disagreed.  The Court found that Rule 1006 permitted such testimony and use of an exhibit:

> With 161 exhibits, involving facts relevant to sixteen counts and twenty-one overt acts, comprehension of the exhibits would have been difficult, and certainly would have been inconvenient, without the charts utilized by the Government.

*Id.* at 562.  Scales further objected that the witness was not an expert.  However, the court found that the only requirements necessary to properly introduce such summary evidence was that the summary was accurate, authentic and properly introduced before it was admitted.  The witness properly catalogued the information and was the proper person to attest to the authenticity and accuracy of the chart.  *Id.* at 563.

The Sixth Circuit further recognized that "[t]here is an established tradition, both within this circuit and in other circuits, that permits a summary of evidence to be put before a jury with proper limiting instructions."  *Id.*  The court also recognized that summarization of purely testimonial evidence is permitted.  *Id.*  And, the court further recognized while some danger of prejudice exists, particularly more so in criminal cases, most summaries are routinely admitted. "In fact, not only are the summaries themselves admitted, by computations and evaluations are often permitted on the basis of such summaries."  *Id.* at 564.

Again, while it is premature at this stage to specify the particular documents and transactions that will be presented and summarized at trial, it is hardly unusual for a lay witness to proffer such factual testimony.

**B.     Ms. Smith Can Testify From Personal Knowledge Of Her Review Of The Documents.**

Defendants next claim that, because Ms. Smith was not involved in any of the underlying transactions at the time they occurred, she lacks personal knowledge and cannot testify pursuant to Fed. R. Evid. 602.  It is not surprising that Defendants would take this view of the evidentiary rules.  If true, it would mean that Defendants themselves would be the only lay witnesses competent to testify and summarize the financial transactions recorded in the ledgers that they alone kept.  Because Defendants could not be forced to summarize their thousands of transactions in any way useful to Plaintiffs' case, Plaintiffs would be forced at trial to cross-examine Defendants about each of these transactions one at a time, for days on end.  Fortunately, the evidentiary rules are not so spendthrift of the jury's time and attention.

Rule 602 states, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Here, while Ms. Smith was not involved in the actual transactions between Big Research, Penn and the Defendants, she can still testify as a lay witness of what she reviewed and perceived of the records as produced.

In *United States v. White*, 492 F.3d 380 (6th Cir. 2007), the defendants were convicted of Medicare fraud.  During the trial, the Government offered the lay testimony of Medicare auditors who were contracted by the Government to conduct an audit of the Medicare records.  The witnesses were not qualified as experts, and (obviously) had not been personally involved in the underlying fraud.  The court found that the auditors nevertheless had proper personal knowledge

within the purview of a lay witness.  *Id.* at 403.  Although the court noted that these witnesses also proffered improper expert opinion testimony, which was appropriately excluded, the court affirmed the lay witness testimony based upon their personal involvement in the audit after the fact.  Notably, the court stated, "Each challenged witness had personal knowledge of the facts relevant to the case – ***whether from their role auditing cost reports submitted by Defendants***, or from their personal interactions with Defendants."  *Id.* (Emphasis added).

In *United States v. Madison*, 266 Fed. Appx. 535 (6th Cir. 2007), the court again allowed lay testimony where the witness was a *post-hoc* analyst with a specialized background.  In this case, the defendants were convicted of tax evasion and money laundering.  The lay witness, an FBI analyst, examined the financial records of the transactions involving the defendants and testified about his findings.  The Sixth Circuit permitted his testimony because he "merely examined the records of transactions involving Mrs. Madison's and Cherokee's accounts and stated the origin and the destination of funds."  *Id.* at 543.  The Court went on to state

> His status as a financial analyst may, like the computer expertise of
> the witness in *Hamaker*, have facilitated his review of the
> accounting records.  However, his conclusion that Mrs. Madison
> would not have been able to make the down payment on the
> Colony Park property with funds converted from Cherokee is a
> matter of arithmetic "within the capacity of any reasonable lay
> person."

*Id.* at 544.

The case relied upon by the Sixth Circuit in *Madison* was *United States v. Hamaker*, 455 F.3d 1316 (11th Cir. 2006).  In that case, the defendants were convicted of bank fraud and other related offenses.  At trial, the court permitted an FBI analyst to testify as a lay witness even though the analyst was a trained financial analyst with twenty-three years experience.  *Id.* at 1330.  Defendants argued that his testimony as a lay witness was improper and he was

essentially an expert witness that was not timely disclosed.  *Id.*  This witness reviewed and summarized over seven thousand financial documents, including Quickbooks records, timesheets, invoices and check stubs and matched the documents to the other payroll, accounting and invoice records.  The central purpose of the analyst testimony was to prove the fact that the defendants' construction company improperly billed a bank for construction work not performed for the bank.  *Id.* at 1331.  The court found that the lay witness testimony was proper:

> Contrary to Appellants' contention, the government was not required to certify Odom as an expert witness and comply with *Rule 16(a)* with respect to Odom's testimony. To prepare for his testimony, <u>Odom simply added and subtracted numbers from a long catalogue of MCC records, and then compared those numbers in a straightforward fashion. As Odom himself explained at trial, while his expertise and the use of computer software may have made him more efficient at reviewing MCC's records, his review itself was within the capacity of any reasonable lay person. Therefore, Odom's testimony was permissible lay testimony under *Rule 701 of the Federal Rules of Evidence*</u>. *See Fed. R. Evid. 701* (allowing lay testimony as to opinions or inferences "which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of *Rule 702*"); *see also United States v. Henderson, 409 F.3d 1293, 1299-1300 (11th Cir. 2005), cert. denied,    U.S.   , 126 S. Ct. 1331, 164 L. Ed. 2d 47 (2006)*.

*Id.* at 1331-1332 (footnotes omitted) (emphasis added).[2]

This case is no different.  Ms. Smith should be permitted to testify regarding her review of the documents and a summarization of the voluminous financial documents that have been presented.  As discussed below, any prejudice as to her credentials could be remedied by limiting instructions and restriction on opinion testimony.

---

[2] The court also noted that such a presentation is also permitted under Fed. R. Evid. 1006 to permit the summary testimony of voluminous documentary evidence.

Each of the cases relied by Defendants are wholly distinguishable.  *See Motion*, at 5.

Thus, notwithstanding Defendants' claims, the Court in *JGR v. Thomasville Furniture Ind.*,

actually prohibited a financial consultant from offering *opinion* testimony on lost profits and

business valuation when testifying as a lay witness.  *JGR v. Thomasville Furniture Ind.*, 370

F.3d, 519 (6th Cir. 2004).   As the Court explained, the financial consultant had opined business

values and lost profits based upon assumptions offered to him by his own client:

> [T]he information upon which [the witness, Gornik] relied in
> making his calculations of lost profits and loss of business value
> came  primarily from Yosowitz, and Gornik admitted that he did
> not independently verify much of that information.   Therefore,
> Gornik had no basis upon which to offer <u>lay *opinion* testimony</u>
> <u>about JGR's lost profits or loss of business value</u>, and the district
> court abused its discretion in permitting that testimony.

*Id.*, at 526 (emphasis added).   Here, by contrast, Ms. Smith would be providing factual

testimony, rather than opinions, based upon her personal review and summarization of the

records.

Defendants' reliance upon *Pedigo v. Unum Life Insurance Company* is equally

misplaced, on the identical grounds.  In *Pedigo*, as in *JGR,* the witness sought to give *opinion*

testimony, and was barred from doing so. *Pedigo v. Unum Life Ins. Co.,* 145 F.3d 804, 807 (6th

Cir., 1998) ("Pedigo insists that the district court erred in concluding that he could not offer his

*opinion* regarding entry and exit wounds resulting from the shooting.") (emphasis added). Again,

here, Ms. Smith is not being called to testify as to *opinions*, but rather as to *facts* based upon her

factual review of the documents and compilation and summarization of them.   In this instance,

Ms. Smith is no different than the experts in *White, Madison* and *Hamaker.  See also Prieto v.*

*Malgor*, 361 F.3d 1313, 1318 (excluding opinion testimony that "merely reviewed police reports

and depositions provided by counsel and offered *expert opinions* on the level of force exhibited

by Prieto and the appropriateness of the officer's response") (emphasis added). *Accord Humboldt Baykeeper v. Union Pacific R.R.*, 2010 U.S. Dist. LEXIS 52182, at *4 ("However, pursuant to Federal Rule of Evidence 701, lay witnesses may testify based upon their experience, but they may not provide *opinions* 'based on scientific, technical, or other specialized knowledge within the scope of Rule 702") (emphasis added).

Given this Court's prior rulings, Ms. Smith will not be proffering expert opinion testimony. Accordingly, Defendants' motion misses the mark, and the cases they cite to the contrary are simply inapposite.

### C. Ms. Smith Is Not Being Paid To Improperly Induce Testimony.

Equally misguided is Defendants' putative concern that Plaintiffs might violate ethical guidelines were they to pay Ms. Smith for lay testimony. Motion, at 6. A plain reading of the actual rule merely directs that a lawyer shall not "falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law." Ohio Rules. Prof. Conduct, R. 3.4. The comment provides examples of improper payments that would incentivize untruthful testimony. Obviously, no such concerns are present here, and indeed, Defendants remain free to cross-examine Ms. Smith for bias—both in deposition and at trial.

As a fact witness, Ms. Smith would be permitted to testify only about what she has observed based upon the information she has summarized, not the opinions that she formed based on those observations. Defendants could certainly raise the point that Ms. Smith has been retained as a consultant to Penn and a jury or trier of fact can weight that information against the factual testimony. Her testimony is no different than the auditor in *White* or the financial analyst in *Madison*. Indeed, this scenario also happens frequently in workers' compensation and personal injury cases. It is not at all uncommon for the insurer or employer in such matters to

retain a private investigator during the course of litigation to observe the injured worker performing his or her daily activities.  In such instances, as the court will recognize from its own experience, the private investigators typically testify as to their observations (i.e. whether the injured worker was observed lifting heavy objects, exercising, running etc.).  This is classic lay witness factual testimony, where the witness is retained during litigation and is compensated for his or her time.

>    **D.**    **Ms. Smith's Testimony Is Of Extremely High Probative Value, And Will Not Cause Unfair Prejudice to Defendants.**

Defendants next claim that any testimony by Ms. Smith would be highly prejudicial pursuant to Fed. R. Evid. 403.  Rule 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Here, Defendants contend that Ms. Smith's testimony "has limited, if any, probative value," Nothing could be further from the truth.  This case involves substantial amounts of complex business records and other documents, the meaning and contents of which often cannot be gleaned without comparing them with other corresponding records and documents. Rather than taking the jury through days of testimony examining the thousands of financial records produced in this case, a summarization of the financial records (with the underlying documents submitted into evidence) through Ms. Smith would prove inherently beneficial and economical at trial.  The far more efficient method of setting out Plaintiffs' case is to allow Ms. Smith – the only individual in this case who has had an meaningful opportunity to review *all* documents from *all* parties – to simply testify as to her personal knowledge of what she observed in the

financial records.  Her testimony is highly probative, and greatly outweighs the prejudice to Defendants.

As to prejudice, Defendants claim that the jury will attach undue weight to Ms. Smith's description of facts because she is a "specially-trained forensic accountant."  They claim that her very presence, and any acknowledgement of her job, immediately casts negative aspersions on the transactions at issue, stating that "the jury will undoubtedly be left with the inescapable conclusion that there is something likely wrong or improper about such transactions." Motion, at 8.  This specter of supposed prejudice is a canard.

As noted in *White, Madison* and *Hamaker,* which considered the even more heightened theoretical prejudice of criminal conviction, courts can issue limiting instructions to a jury stating that such summary testimony is merely to aid in evaluating the evidence. *See also, Scales,* 594 F.2d at 564 (trial courts can issue "guarding instructions" to the effect that the summary testimony is an aid to evaluating the evidence); *United States v. Seelig,* 622 F.2d 207, 214 (1980) (same).  Indeed, financial experts such as those in *Madison* and *Hamaker* were permitted to testify despite their long experience in forensic accounting.  By limiting Ms. Smith's testimony to a summary of the voluminous documents in an objective and neutral manner would only benefit the procedure.  To have the jury and this Court pore over voluminous exhibits, by contrast, would be difficult and inefficient.

The Court can issue limiting instructions as to the value and weight of her testimony.  The Court can limit the extent to which her admittedly impressive credentials are disclosed.  The Defendants can cross-examine Ms. Smith for bias in all of the traditional ways. Therefore, Defendants claim of prejudice is significantly outweighed by the efficiency and economy of her

summary testimony, and the corollary prejudice Plaintiffs would suffer if forced to introduce these transactions one by one through cross-examination of Defendants themselves.

## III.  CONCLUSION

Rebekah Smith is an appropriate fact witness under 6th Circuit evidentiary law.  Her testimony is highly probative, ensuring the jury has a clear understanding of the facts and documents at issue in this case.  Defendants have failed to demonstrate unfair prejudice that outweighs her value. For the foregoing reasons, Plaintiffs respectfully urge that Defendants' motion to exclude her testimony be DENIED.

Respectfully submitted,

CARLILE PATCHEN & MURPHY LLP

By: /s/ Carl A. Aveni, II
Carl A. Aveni, II (0070664)
caveni@cpmlaw.com
Maria Mariano Guthrie (0068047)
mguthrie@cpmlaw.com
366 East Broad Street
Columbus, Ohio  43215
Telephone: (614) 228-6135
Facsimile: (614) 221-0216
*Attorneys for Plaintiffs*
*Penn LLC and Big Research LLC*

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certified that the foregoing was electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, this 14th day of December, 2012.  Parties may access this filing through the Court's system.

/s/ Carl A. Aveni, II
Carl A. Aveni, II