**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**PENN, LLC, et al.,**

        **Plaintiffs,**                    **Case No. 2:10-cv-0993**
                                        **JUDGE GREGORY L. FROST**
     **v.**                           **Magistrate Judge Terence P. Kemp**

**PROSPER BUSINESS DEVELOPMENT**
**CORPORATION, et al.,**

        **Defendants.**

**OPINION AND ORDER**

This matter is before the Court upon Defendants' motion for partial summary judgment

on claims barred by res judicata (ECF No. 119), Plaintiffs' memorandum contra (ECF No. 134),

and Defendants' reply memorandum in support of their motion (ECF No. 139).  For the reasons

set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion.

**I.    Background**

This case is a contentious commercial dispute.  Plaintiff Penn, LLC ("Penn") filed this

action on behalf of itself and derivatively on behalf of Plaintiff BigResearch, LLC ("Big

Research"), a limited liability company of which Penn and Defendant Prosper Business

Development Corporation ("Prosper") were members. Penn alleges that Defendants improperly

transferred and diverted assets, revenues, and business opportunities of Big Research for the

benefit of Prosper.

Penn is a Delaware limited liability company with its principal place of business in Will

County, Illinois.  Prosper is an Ohio corporation based in Worthington, Ohio.  Penn and Prosper

collaborated in October 2000 to form Big Research, each of them being equal owners.  Big

Research was formed as a company in the business of conducting survey research.

An Operating Agreement executed by Penn and Prosper governed the business and affairs of Big Research.  Under the Operating Agreement, Defendant Prosper controlled the day-to-day activities of Big Research.  As for governance, Big Research was to be governed by a Board of Members consisting of Phillip Rist, Gary Drenik, and a representative from Penn.  Rist and Drenik are executives who control Prosper.  Defendants Prosper, Drenik, and Rist were responsible for, among other things, preparing and complying with the annual budget of Big Research.  The Operating Agreement required the Board Members to approve unanimously all "major financial decisions."

When formed, Big Research was owned equally by Penn and Prosper.  After its inception, and in order to infuse cash into the company's operation, Big Research sold 5.22% of its membership units to outside investors, thereby reducing Penn's and Prosper's membership interests in Big Research to 47.39% each.  The outside member interests, coupled with seeds of discontent that materialized as between Penn and Prosper, led to multiple Big Research resolutions entered into in 2004 that underlie many of the contentions between the parties in this litigation.  In particular, Big Research adopted a resolution that changed the requirement for approval of all major financial decisions from a unanimous vote of the Board of Members to a majority vote.  Rist, Drenik, and the outside investors voted in favor of this resolution; neither Penn nor its CEO, Jaffer Ali, voted on it.

Later in 2004, Big Research (again without Penn's vote) adopted resolutions that mandated a cash contribution by a member when there was a failure to provide an "in kind" or non-cash contribution.  Based on this resolution, Big Research deemed Penn to have forfeited its interest in the company, retroactive to January 1, 2004.

Pursuant to the Operating Agreement, Penn demanded arbitration in May 2004 with regard to the matters adopted in the controversial resolutions.  More than one year later, Penn filed a complaint in the Cook County, Illinois, Circuit Court seeking to compel Big Research and Prosper to arbitrate.  More than two years after that, in December 2007, Penn, Prosper, Big Research, Robert Kamerschen, Robert J. Massey, John J. Perrini, Michael H. Perrini IRA, and Sino Marketing, Ltd., entered into a separate agreement to submit their ongoing disputes to arbitration in accordance with Article XI of the Big Research Operating Agreement.  (ECF No. 119-1, at PAGEID# 3521-25.)   Kamerschen, Massey, Perrini, and Perrini IRA were part of an investment group that obtained membership units in Big Research; Sino was an affiliated company of Prosper to which Prosper assigned certain membership rights.  Neither Rist nor Drenik was a party to the arbitration.

In an arbitration award issued in September 2008, Arbitrator David Rimstadt agreed with Penn that several resolutions of Big Research's Board were "invalid, null and void," including the resolution that divested Penn of its ownership interest in Big Research and removed Penn's representative from Big Research's Board.  The arbitrator ordered Big Research to pay Penn its proportionate distributions that Big Research had paid to other members during the period that Penn was improperly divested of its membership interest.  The arbitrator later appointed a special master to determine the amount of distributions and/or damages owed to Penn.

Following the special master's report, the arbitrator issued a decision finding that either (1) Prosper could "voluntarily tender" $777,917.13 to Penn or (2) if Prosper chose not to "voluntarily tender its funds," Big Research shall pay $1,488,000.00 to Penn as "damages for improper distributions it made" prior to the arbitration award in September 2008.  The Franklin County (Ohio) Court of Common Pleas confirmed the award, albeit modifying it to allow

Prosper to satisfy the award by paying $702,917.13 plus interest by November 10, 2011.
*BIGresearch, LLC v. Penn, LLC*, No. 10CVH-05-7420 (Franklin Cty. C.P. Ct. Nov. 1, 2010).
The arbitrator also ordered Big Research to reimburse Penn $25,000.00 for a partial
reimbursement of Penn's attorneys' fees.  The state court confirmed this part of the arbitrator's
award.  *See BIGresearch, LLC v. Penn, LLC*, No. 10CVH-05-7420 (Franklin Cty. C.P. Ct. Sept.
9, 2011).

At some point during the pendency of the various arbitration and litigation proceedings
between these parties, Prosper purchased some of the outside investors' membership interests in
Big Research, ultimately making Prosper the holder of 50.71% of Big Research's membership
interests.  One outside investor, Kamerschen, remained a 1.9% equity holder until November
2009, when he requested to withdraw as a member of Big Research.  Kamerschen's withdrawal
was approved by a majority vote of Big Research's Members.  By a majority vote (with Penn
voting against), the Board Members voted in December 2009 to dissolve Big Research and not to
continue Big Research's operations after Kamerschen's withdrawal.

Seven months before it filed the instant case in this Court, Penn filed suit in the Franklin
County (Ohio) Court of Common Pleas to enjoin the dissolution and winding up of the affairs of
Big Research and seek an order requiring Big Research to turn over all of its business books for
an accounting.  *Penn, LLC v. BigResearch, LLC*, No. 10-cv-2909 (Franklin Cty. C.P. filed Feb.
24, 2010).  Penn named as defendants in the lawsuit, Big Research, Prosper, Rist, and Drenik.
Big Research moved for partial summary judgment, asking the state court to determine whether
the withdrawal of Kamerschen was a "dissolution event" and whether Prosper was entitled to
wind up Big Research pursuant to the terms of the Operating Agreement.  Though it had sued in

the state court to enjoin the dissolution of Big Research, Penn ultimately withdrew its objection to the winding up.

On December 12, 2011, the state court granted partial summary judgment on the issues of Kamerschen's withdrawal being a dissolution event and the winding up of Big Research. *Penn, LLC v. Big Research, LLC*, No. 10-cv-2909 (Franklin C.P. Ct. Dec. 12, 2011) (Decision and Judgment Entry). The state court "declared that (1) the withdrawal of Kamerschen was a dissolution event; and (2) pursuant to the Big Research Operating Agreement, Prosper is entitled to wind-up [*sic*] Big Research." *Id.*

During the pendency of the state court action, Penn filed this lawsuit. Suing on behalf of itself and Big Research, Penn's Complaint alleged a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count One), fraud (Count Two), conversion/unjust enrichment (Count Three), and breach of fiduciary duties (Count Four). Following this Court's grant of motions to dismiss certain claims and parties from this action, the only claims that remain are those for conversion/unjust enrichment and breach of fiduciary duties as against Defendants Prosper, Rist, and Drenik.

## II. Discussion

Defendants move for partial summary judgment on certain claims raised in Penn's Complaint. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met its burden of production, the non-moving party must present significant probative evidence to defeat the motion for summary judgment. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id*. at 252.

In the motion before the Court here, Defendants seek partial summary judgment on the basis of res judicata. The term res judicata refers to the doctrines of issue preclusion and claim preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008). Both doctrines, when applicable, give preclusive effect to a final judgment previously rendered. Under claim preclusion, "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). In contrast, issue preclusion bars " 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id*. (quoting *New Hampshire*, 532 U.S. at 748-49).

When the prior court proceeding is a state proceeding, the federal courts must give it the same res judicata effect that it would have in that state's courts. *5455 Clarkins Drive, Inc. v. Poole*, 384 F. App'x 458, 462 (6th Cir. 2010) (citing *Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)). In Ohio, as in the federal system, the doctrine of res judicata encompasses claim preclusion and issue preclusion. *Id.* (citing *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St. 3d 449, 2010-Ohio-606, 923 N.E.2d 588, 592 (Ohio 2010). "'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action,' whereas issue

preclusion, or collateral estoppel, 'precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action.'" *State ex rel. Nickoli*, at ¶ 21 (quoting *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd*., 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (Ohio 1998)). As to claim preclusion, the doctrine applies not only to what *was* determined in the prior action, but also to every claim which *might have been* raised in the earlier proceeding. *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382, 653 N.E. 2d 226 (Ohio 1995).

### A.  The State Court Litigation

In the first branch of their motion, Defendants ask this Court to give res judicata effect to the judgment rendered by the Franklin County (Ohio) Court of Common Pleas in an action that Penn commenced in 2010.  In that state court action, Penn's two-count Complaint sought (1) an injunction to prevent the winding up and dissolution of Big Research and (2) an injunction ordering Defendants to comply with the Big Research operating agreement and to provide full disclosure of  Big Research's books and records.  (ECF No. 119-2, at PAGEID# 3690-3700.) Ultimately, the state court determined on summary judgment that Prosper was entitled to wind up Big Research.  (ECF No. 119-2, at PAGEID# 3853-54.)  Defendants argue that both the "claim preclusion" and "issue preclusion" branches of the res judicata doctrine bar Penn's claims, to the extent it bases them upon the allegedly wrongful dissolution of Big Research. Defendants also argue that any claim by Penn that Defendants usurped business opportunities from Big Research after dissolution is barred by res judicata.

### 1.  Dissolution of Big Research—Claim Preclusion

Claim preclusion requires four elements: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies,

as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (applying Ohio law) (citation omitted); *see also Portage Cty. Bd. of Comm'rs. v. City of Akron*, 109 Ohio St. 3d 106, 2006-Ohio-954, 846 N.E. 2d 478, at ¶ 84.

Defendants argue that all four elements are met here.  There is no genuine dispute as to the first two elements: there was a prior, final, and valid decision on the merits in the state court action and the state court action involved the same parties as this case.[1]  As to the final two elements, Defendants frame the issue by noting that the "transaction or occurrence" forming the subject matter of the state court action was the "dissolution of Big Research."  (ECF No. 119, at PAGEID# 3506.)  Indeed, Penn filed the earlier state court action to obtain injunctive relief to prevent Prosper from winding up and dissolving Big Research.  Among other things, Penn's state court lawsuit alleged that Defendants' actions to dissolve and wind up Big Research "breached their contractual obligations as well as their duty of good faith and fair dealing and their fiduciary duties to Penn."  (ECF No. 119-2, at ¶ 25, PAGEID# 3697.)  Thus, Penn sued in state court to enjoin the dissolution of Big Research, under the legal theory that Defendants were in breach of contractual and fiduciary duties owed to it.

Based on a comparison of the state court complaint and the claims asserted in this case, the Court concludes that claim preclusion applies to bar Penn's claims in this lawsuit, insofar as they are based on the dissolution of Big Research.  In this lawsuit, Penn asserts that Defendants' dissolution and winding up of Big Research was self-dealing and a breach of fiduciary duty.

---

[1] The state court disposed of the prior action on summary judgment.  Under Ohio law, a summary judgment is considered a judgment on the merits, triggering the doctrine of res judicata if a subsequent suit is filed based on the same transaction or occurrence.  *See State ex rel. Hensley v. City of Columbus*, 10th Dist. No. 10AP-840, 2011-Ohio-3311, at ¶ 14.

(Compl. ¶ 148(j), ECF No. 2 at PAGEID# 25.)  Thus, Penn is seeking relief in this case based on the same transaction or occurrence that formed the basis of the state court lawsuit—the purported breach of contract and fiduciary duties alleged to have taken place with respect to the dissolution of Big Research.

In arguing against application of res judicata, Penn attempts to minimize the reach of the state court's ruling.  Emphasizing that it filed the state court action "as an injunction action to prevent Big Research and Defendants from winding up Big Research," Penn argues that the state court "simply found that 'Prosper was entitled to wind-up' Big Research.  No finding was made as to whether Defendants acted appropriately in the wind up of Big Research, which was and is on-going."  (ECF No. 134, at PAGEID# 4987.)  Penn goes on to argue that the state court did not find that the dissolution was "lawful."  (*Id.*)

Penn's arguments miss the point and conflate concepts of claim preclusion and issue preclusion.  For one thing, Penn's arguments concerning the appropriateness of Defendants' actions in winding up Big Research are *not* the subject of Defendants' motion for summary judgment on res judicata grounds.  Defendants ask the Court to grant summary judgment on res judicata grounds as to claims "challenging the validity of the December 2009 dissolution of Big Research."  (ECF No. 119, at PAGEID# 3496.)  As Defendants themselves point out in their reply brief in support of their motion for summary judgment—

> any suggestion by Penn that there was no finding in the [state court litigation] as to whether the Defendants acted appropriately in the ongoing *winding-up* of Big Research misses the point.  Defendants' Motion for Partial Summary Judgment is not premised upon the notion that *every* action taken by the Defendants while *winding up* the affairs of Big Research was decided in the [state court litigation].  Rather, the point of Defendants' Motion is that Penn is precluded from challenging the lawfulness of Big Research's *dissolution* and the legal ramifications thereof.

(ECF No. 139, at PAGEID# 5134.)

9

Accordingly, Penn's argument that issues concerning the "winding up" were not litigated in the state court action is inconsequential.  The matters related to the "winding up" (as Defendants themselves frame the issue) are *not* the same "transaction or occurrence" as the dissolution of Big Research itself.  It is Penn's claims related to the *dissolution* that are barred by claim preclusion.  Claims related to any breach of fiduciary duty occasioned by Defendants' actions in winding up Big Research—actions taken *after* the dissolution—are not barred.

In any event, Penn's emphasis on what was or was not actually litigated before the state court is not relevant to a *claim preclusion* analysis. When applicable, the doctrine of claim preclusion bars not only those matters that were litigated in a prior action, but also those that arise out of the same transaction or occurrence that *might have been raised* in the prior action. *See Grava*, 73 Ohio St. 3d at 382.  Thus, even if Penn is correct in its argument that the state court did not find that the dissolution of Big Research was "lawful" or a breach of fiduciary duty (ECF No. 134, at PAGEID# 4987), the fact that there was no such determination made in the prior action does not prevent claim preclusion from barring the present action, to the extent it seeks to challenge the lawfulness of the dissolution.  A challenge to the lawfulness of the dissolution necessarily arises out of the same "transaction or occurrence" as the one that formed the basis of the state court action—namely, the dissolution of Big Research.

For the foregoing reasons, Defendants' arguments regarding the claim preclusion effect of the state court action are well taken.  Claim preclusion bars Penn from challenging the validity of the December 2009 dissolution of Big Research.

## 2.    Dissolution of Big Research—Issue Preclusion

Defendants also argue that issue preclusion bars Penn from challenging the lawfulness of Big Research's dissolution because the state court, in granting summary judgment to the defendants, specifically ruled that Prosper was entitled to dissolve and wind up Big Research following the specified dissolution event (*i.e.*, the withdrawal of member Kamerschen).  (ECF No. 119, at PAGEID# 3507-08.)  This finding of the "lawfulness" of Big Research's dissolution, argue Defendants, bars Penn from litigating whether the dissolution was a breach of fiduciary duty.

This Court need not reach the issue of whether issue preclusion bars Penn's claim that the dissolution constituted a breach of fiduciary duty.  Because this Court has already found above that any challenge to the dissolution in this lawsuit is barred by claim preclusion, there is no need for this Court to delve into the murkier issue of whether the state court resolved the precise issue that Penn raises here (*viz.* whether a dissolution authorized by the operating agreement can constitute a breach of fiduciary duty).

## 3.    Usurpation of Business Opportunity

Defendants also argue that res judicata bars Penn from litigating any claim that Defendants "usurped and/or converted Big Research, LLC's survey business after its dissolution in December 2009."  (ECF No. 119, at PAGEID# 3498.)  Because the prior state court action conclusively determined that the Big Research dissolution was "lawful," Defendants argue that it necessarily follows that there can no usurpation of business opportunity.  Under Delaware law, Defendants argue that once Big Research was "lawfully dissolved" (which occurred in December 2009), Big Research was authorized to do nothing other than wind up its affairs.  (*Id.* at PAGEID# 3510.)  Thus, Defendants conclude that there could be no usurpation of business

opportunity from Big Research because Big Research did not have the "ability or reasonable expectancy" of conducting any business post-dissolution.  (*Id.* at PAGEID# 3511.)  The Court construes Defendants' "res judicata" argument here as an attempt to invoke issue preclusion—because the state court fully litigated the issue of the lawfulness of Big Research's dissolution, Defendants argue that this conclusively bars any action based upon alleged post-dissolution usurpation of business opportunity.

Penn raises a number of arguments in response to Defendants' contentions, but the Court need reach only one of them.  Among other points, Penn notes that the usurpation of business opportunities has not been litigated in any forum.  (ECF No. 134, at PAGEID# 4992.)  This point is not only evident from the state court's ruling granting Defendants' motion for summary judgment, it is entirely glossed over by Defendants' motion for partial summary judgment here. A necessary element of issue preclusion is that the precise issue has been necessarily and actually litigated in a prior proceeding.  *See State ex rel. Nickoli*, *supra*, 124 Ohio St. 3d 449, at ¶ 21.  The issue litigated in the state court action was whether Defendant Prosper was entitled to dissolve Big Research.  The *effect* of that dissolution on other issues, including the question of whether business opportunity could be usurped from Big Research post dissolution, is a separate matter that was *not* within the scope of what was litigated in the state court action.  Defendants therefore cannot use the doctrine of res judicata/issue preclusion to bar Penn from litigating whether Defendants usurped business opportunities from Big Research during the period of time following Big Research's dissolution in December 2009.

This Court is mindful of the fact that the parties have raised numerous arguments relating to the substantive issue of whether a dissolved entity can, as a matter of law, have business opportunities usurped from it.  Defendants argue that it cannot as a matter of law; Penn argues

that is not so and that the usurpation of business opportunities from Big Research is a question

for the trier of fact.  Defendants' motion for partial summary judgment, however, sought

summary judgment only on the basis of res judicata.  (ECF No. 119, at PAGEID# 3496-99.)

With the Defendants having framed the summary judgment issue as solely one of res judicata,

the Court declines to delve into the substantive merits of whether Defendants are entitled to

partial summary judgment on some other basis with respect to the usurpation of business

opportunities issue.

### B.  The Arbitration

In the second branch of their motion, Defendants ask the Court to give res judicata effect

to the decision rendered by the arbitrator in a prior arbitration convened before Arbitrator David

Rimstadt in 2008.   The arbitration order was later confirmed in state court.  *Bigresearch, LLC v.*

*Penn, LLC*, No. 10CVH-05-7420 (Franklin C.P. Ct. Sept. 9, 2011) (Decision and Final

Judgment).  Under Ohio law, an arbitration confirmed by a state court having jurisdiction over

the matter is entitled to the same preclusive effect as any judgment in a court action.  *See* Ohio

Rev. Code § 2711.14.

Defendants argue that the prior arbitration bars Penn from litigating the "validity" of any

Big Research transaction occurring before September 15, 2008.  (ECF No. 15, at PAGEID#

3512.)  Emphasizing the arbitrator's appointment of a special master to audit the books and

records of Big Research after the arbitrator's September 15, 2008 decision, Defendants argue

that the arbitrator's later adoption of the special master's findings regarding the accounting she

performed forecloses further litigation or challenge to "any transaction that was the subject of the

prior accounting." (*Id.* at PAGEID# 3513.)  Defendants further argue that the arbitration

likewise bars Penn "from challenging the reasonableness of the payments made by Big Research

13

after September 2008 for executive compensation." (*Id.*)  Defendants are incorrect on both counts: there is no such bar.

As an initial matter, the Court notes that Defendants' arguments with respect to the arbitration invoke only the issue preclusion branch of res judicata.  Defendants cite Ohio law for the proposition that an arbitration award has the same preclusive effect as a judgment "for the matters *it decided*."  (*Id.* at PAGEID# 3511 (emphasis added).)  This argument sounds in issue preclusion rather than claim preclusion.  Moreover, Defendants' focus on the "full and complete accounting" performed in connection with the arbitration award solidifies that Defendants are arguing that issues fully and actually litigated in the arbitration should be barred for that reason, as opposed to being barred because they "could have" been litigated in the arbitration (*i.e.*, a concept of *claim* preclusion).  Accordingly, this Court treats Defendants' arguments with regard to the res judicata effect of the arbitration as invoking the *issue* preclusion doctrine.

To bar relitigation of an issue under the issue preclusion doctrine, four requirements must be met under Ohio law: (1) there must be a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (2) the issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; (3) the issue in the present suit must have been identical to the issue involved in the prior suit; and (4) the party against whom estoppel is sought was a party or in privity with a party to the prior action.  *Kovacic v. Cuyahoga Cty. Dep't of Children and Family Servs.*, 809 F. Supp. 2d 754, 772 (N.D. Ohio 2011) (citing *Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 87 Ohio App. 3d 809, 623 N.E.2d 213, 215 (Ohio Ct. App. 1993)).  In addition, the burden is upon the party seeking to invoke issue preclusion to prove that all the elements of the doctrine apply.  *Id.* The elements are not met in this case.

The Court's analysis begins and ends with the crucial element that an identical issue has been actually litigated in a prior proceeding.  Defendants have failed to convince the Court that the precise issue raised here is the same as the one resolved in the special master's "accounting" adopted by the arbitrator.  The arbitrator did not decide the precise issue of whether each transaction of Big Research prior to September 15, 2008, was a valid one.  Though Defendants argue that the arbitrator ordered an accounting that was "broad in scope" in his September 15, 2008 ruling, the order must be viewed in the context of what was awarded to Penn.  In the portion of his decision in which he ordered that to which Penn was entitled, the arbitrator found:

> **IT IS FURTHER ORDERED** that BIGresearch make *redistribution to PENN of 47.39% of all prior distributions of profits* made by BIGresearch to its other investors.  This profit redistribution shall be paid from future profit distributions.  No future profits shall be distributed to any investor other than PENN until the full amount of redistributed profits owed to PENN is paid in full.
>
> The amount of *prior profit redistribution* has not been determined.  PENN asserts that all money paid to Prosper is a return on investment.  Prosper asserts that every dime it has received is payment for wages/salaries or for accrued wages/salaries.  What is known is that there has been $2,539,435.55 in payments to Sino and Prosper entities through year end 2006.  It is also known that payments of $3,550 were made to Kamerschen through the end of 2006.  No other distributions had been made to other investors through year end 2006.  *There is insufficient evidence at this time to determine what part, if any, of those payments was a profit distribution* by BIGresearch to its investors.

(ECF No. 119-1, at PAGEID# 3643 (emphasis added; citation to record omitted).)

The order that Big Research make "redistribution" of profits followed naturally from the arbitrator's key ruling that certain resolutions passed by the Big Research board (which was controlled by Defendants Rist and Drenik) were "invalid, null and void" and that Penn had never relinquished its ownership interest in Big Research.  (*Id.* at PAGEID# 3642.)  In the same decision, the arbitrator went on to order a full accounting of Big Research's "receipts, payments, accruals and allocations of profits and losses to date" (*i.e.*, September 15, 2008).  (*Id.* at

PAGEID# 3644.)  But this "full accounting" ordered by the arbitrator must be viewed in the context of the rest of the order.  The purpose of the "full accounting" was to determine the amount of profit "redistribution" that Big Research was required to give Penn.  The accounting was not, as Defendants argue, designed to address the validity of any and all of Big Research's transactions before September 15, 2008.

The issue that Penn raises in this case is whether Defendants Prosper (as the management company of Big Research), Drenik, and/or Rist breached their fiduciary duties owed to Penn and/or Big Research.  The "full accounting" ordered and adopted by the arbitrator in the prior arbitration did not resolve that issue.  Accordingly, Defendants are not entitled to use issue preclusion to bar relitigation of fiduciary duty claims that may relate to Big Research transactions occurring prior to September 15, 2008.

Defendants also ask the Court to apply issue preclusion to bar Penn from litigating whether the executive compensation paid to Defendants Drenik and Rist was unreasonable and therefore actionable as a breach of fiduciary duty owed to Penn and/or Big Research. Defendants contend that the reasonableness of the executive compensation paid to Drenik and Rist was specifically litigated in the arbitration proceeding.  In support of their contention, Defendants note that (1) Penn specifically challenged the amount of executive compensation in its "Second Statement of Claims" submitted to the arbitrator (ECF No. 119, at PAGEID#3513), (2) the arbitrator "specifically held" that levels of executive compensation existing on September 15, 2008 were reasonable and in the bottom quartile of similarly situated executives (*id.*), and (3) the arbitrator did not declare the executive compensation excessive or invalid in issuing his final

arbitration award (ECF No. 139, at PAGEID#5150).[2]  Upon examination, however, the Court

disagrees with Defendants on this point:  issue preclusion does not apply to the executive

compensation issue.

Among the fiduciary duty issues Penn seeks to litigate in this case is "whether the

executive compensation received by Drenik and Rist violated their fiduciary duties owed to

Plaintiffs."  (ECF No. 134, at PAGEID# 4986.)  Though Defendants make much of the fact that

Penn filed a "Second Statement of Claims" in the arbitration that placed Drenik's and Rist's

executive compensation at issue, the issue raised by Penn in this case is not the same issue that

was litigated in the arbitration.   In that Second Statement of Claims, Penn raised the executive

compensation issue in the context of claims related to the approval of Big Research's 2008

budget.  (ECF No. 119-1, at PAGEID#3653.)  More specifically, Penn took the position that the

2008 budget was void because it was a "major financial decision requiring the approval of all

three Board Members," which had not happened.  (*Id.* at PAGEID# 3655.)  Because the 2008

budget increased the level of Drenik's and Rist's executive compensation, Penn challenged the

validity of the increase, seeking a "declaratory finding" that no Big Research executive could

receive more than $100,000 per year in total compensation.  (*Id.* at PAGEID# 3655-56.)  Thus,

the issue Penn placed before the arbitrator was not necessarily the reasonableness of the

executive compensation, much less whether the level of compensation was a breach of fiduciary

---

[2] In the memorandum in support of their motion for summary judgment, Defendants also cite the fact that
the arbitrator "rejected" Penn's claims that certain amounts paid by Big Research to Prosper for "shared
expenses" were unreasonable and should have been deemed "qualifying distributions" for purposes of
assessing the amount of profit "redistribution" to which Penn was entitled.  (ECF No. 119, at
PAGEID#3514.)  To be sure, the arbitrator deferred to the special master's finding that certain shared
operating expenses paid by Big Research were "market rate regardless of whether Prosper . . . received
benefit from the payment of such expenses."  (ECF No. 119-1, at PAGEID# 3675.)  The Court does not,
however, view this finding by the arbitrator to be germane to the executive compensation issue.  It is
evident from the arbitrator's determination that the "shared expenses" determination was an issue separate
from the executive compensation issue.

duty.  Rather, the issue was whether the 2008 increase in executive compensation to Rist and

Drenik was void because the increase was implemented by means of a void budget approval.

Nor does the arbitrator's May 2010 decision touted by Defendants support application of

issue preclusion.  Citing to the arbitrator's May 5, 2010 order, Defendants contend that the

arbitrator "specifically held that the 'levels of executive compensation existing on September 15,

2008 to be reasonable from an accounting standpoint,' and were in fact, 'in the bottom quartile of

similarly situated executives.'"  (ECF No. 119, at PAGEID# 3513 (quoting ECF No. 119-1, at

PAGEID# 3675).)  But Defendants' argument is slightly misleading.  The portion quoted by

Defendants comes from a passage that reads in its entirety:

> Penn has resolved to prove that executive compensation in excess of . . . the
> original Operating Agreement *should be considered as additional qualifying
> distributions*.  The complained of executive compensation is in the bottom
> quartile of similarly situated executives.  The Master concluded that levels of
> executive compensation existing on September 15, 2008 to be reasonable from an
> accounting standpoint.  Thus, what remains to be determined in the hearing on the
> Second Statement of Claims is not whether BIGresearch managers failed to use
> their best business judgment in increasing executive salaries, but rather, whether
> such increases are related to previously undisclosed evidence, and, if so, whether
> such increases in executive compensation are allowed in the absence of
> unanimous Board of Members approval.  Any challenged executive compensation
> payments were made to individuals and not to any Member.  Therefore, the
> arbitrator will not consider any payments for executive compensation as a
> qualifying distribution for resolution by this Order.

(ECF No. 119-1, at PAGEID# 3675.)

Thus, the May 5, 2010 order determined only that the increase in executive compensation

should *not* be considered a "qualifying distribution" for purposes of determining the amount of

profit redistribution due Penn under the arbitrator's September 15, 2008 order.  Though he noted

that the executive compensation was "reasonable" in the judgment of the special master, the

arbitrator did *not* decide whether the increase in compensation was a breach of fiduciary duty by

any of the Defendants in this case.  Whether executive compensation was reasonable "from an

accounting standpoint" is not necessarily the same issue as whether it was reasonable from a fiduciary duty standpoint.  The latter issue was simply not before the arbitrator.

For these reasons, Defendants are not entitled to summary judgment based on the res judicata/issue preclusion effect of the previous arbitration.

### III.  Conclusion

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for partial summary judgment on grounds of res judicata.  The claim preclusion branch of res judicata bars Penn from litigating any claims challenging the validity of the December 2009 dissolution of Big Research.  The Court denies Defendants' motion in all other respects.

**IT IS SO ORDERED**.


**/s/ Gregory L. Frost_____**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**