UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PENN, LLC, et al.,**

        Plaintiffs,                      Case No. 2:10-cv-0993
                                                  JUDGE GREGORY L. FROST
       v.                                  Magistrate Judge Terence P. Kemp

**PROSPER BUSINESS DEVELOPMENT
CORPORATION, et al.,**

        Defendants.

## OPINION AND ORDER

This matter is before the Court upon Defendants' motion for partial summary judgment on claims relating to the "Marketstar Arbitration Award" (ECF No. 130), Plaintiffs' Fed. R. Civ. P. 56(d) motion to deny Defendants' motion for summary judgment (ECF No. 137), Defendants' combined opposition to Plaintiffs' Rule 56(d) motion and reply in support of the motion for partial summary judgment (ECF No. 143), and Plaintiffs' reply in support of their Rule 56(d) motion (ECF No. 144). For the reasons given below, the Court **GRANTS** Defendants' motion for partial summary judgment and **DENIES** Plaintiffs' Rule 56(d) motion.

        **I.**        **Background**

Plaintiff Penn, LLC ("Penn") filed this action on behalf of itself and derivatively on behalf of Plaintiff BigResearch, LLC ("Big Research"), a limited liability company of which Penn and Defendant Prosper Business Development Corporation ("Prosper") were members. In a nutshell, Penn alleges that Defendants Prosper, Phil Rist, and Gary Drenik improperly transferred and diverted assets, revenues, and business opportunities of Big Research for the benefit of Prosper. A general background of this case and its procedural history appears in Magistrate Judge Kemp's Opinion and Order of August 20, 2012, and this Court's Opinion and

1

Order granting in part and denying in part Defendants' motion for partial summary judgment with regard to certain claims contained in the Complaint. (ECF Nos. 135 and 179.) The instant motions relate to another of Plaintiffs' claims: Penn and Big Research allege that Defendants breached fiduciary duties owed to Plaintiffs when they reaped the benefits of an arbitration award won by Prosper in 2009 against MarketStar Corporation. The facts detailed below relate solely to the MarketStar arbitration.

Defendant Prosper describes itself as being in the business of "developing businesses," such as aiding in the creation and launch of new business ventures. In 1996, Prosper, Drenik, and Rist created Sino Marketing Ltd. ("Sino") to take advantage of Prosper's business relationships in China. In particular, Prosper was trying to leverage its relationship with CITIC Beijing Guo-An Advertising Company ("CITIC") and CITIC executive Yan Gang.

According to Prosper, its relationship with CITIC developed over several years. In 1996, Prosper (through Sino) became CITIC's exclusive North American representative. Prosper was authorized to seek investors for various business opportunities with CITIC, including those in television, film, and print media advertising. The relationship between Prosper and CITIC was such that Yang Gang and/or CITIC utilized space in Prosper's offices during business trips to Ohio to meet with potential business partners.

Penn and Prosper collaborated in October 2000 to form Big Research, each of them being equal owners. Big Research was formed as a company in the business of conducting survey research, which it would conduct using Penn's subscriber database. According to Defendant Drenik, Big Research conducted some surveys internationally (including surveys of consumers in China), but that the company was not engaged in the development of business ventures

2

generally, whether in the United States or abroad.  (Drenik Decl., ECF No. 130-1, at PAGEID# 4860.)

In 2004, MarketStar contacted Big Research, seeking Big Research's services for marketing research and the development of email newsletters and a video.  In connection with this engagement, Big Research and MarketStar entered into a mutual confidentiality agreement.  Under the terms of that agreement, each party had the mutual responsibility to refrain from disclosing confidential or proprietary information to anyone except "employees who have a 'need to know'" or using such information to the other party's detriment.  (ECF No. 130-1, at PAGEID# 4899.)  The parties also agreed in the mutual confidentiality agreement "[n]ot to circumvent any third party relationships that may exist to the other's detriment."  (*Id.*)

While working with Big Research on the services MarketStar contracted for, Ryan Brock, a MarketStar representative, became aware of Prosper's connection with CITIC.  MarketStar became interested in Prosper's connection and Brock expressed that interest to Prosper.  MarketStar's interest led it to enter into a Strategic Marketing Alliance Agreement ("SMAA") with Prosper for the purpose of developing "a strategic cooperative business relationship for their mutual benefit and which may utilize the services of each parties' affiliated entities as needed."  (ECF No. 130-1, at PAGEID# 4893.)  Pursuant to the SMAA, Prosper authorized MarketStar to market Big Research's products and services.  The parties also agreed that Big Research would develop three customized email video newsletters for MarketStar.  The SMAA incorporated the earlier mutual confidentiality agreement by reference, thereby binding Prosper and MarketStar (in addition to Big Research) to safeguard the confidentiality of each other's business information and not to use that information to the detriment of the other.

MarketStar's parent company was Omnicom Group, Inc. ("Omnicom"), a global advertising and marketing communications company. Before entering into the SMAA, MarketStar indicated to Prosper that MarketStar and/or Omnicom was interested in pursuing a business relationship with CITIC. After Prosper and MarketStar executed the SMAA, Drenik introduced Brock to Yan Gang. Prosper later agreed to facilitate the introduction of other representatives of CITIC and MarketStar/Omnicom to one another. (Drenik Decl., ECF No. 130-1, at PAGEID# 4861.)

In October 2005, Drenik arranged a meeting between representatives of MarketStar, Omnicom, and CITIC in New York. At that meeting, CITIC disclosed that it was terminating a long term joint venture with its existing marketing and advertising company and actively seeking a new marketing and advertising partner. (*Id.*) After that meeting, Yan Gang indicated that he was interested in a follow-up meeting with Omnicom. There was evidence presented during the arbitration proceeding indicating that drafts of a Business Development Agreement ("BDA") between Omnicom and Prosper were circulated in anticipation of that follow-up meeting, with Prosper's understanding that no deal between Omnicom and CITIC could go forward without Prosper's involvement.

In February 2006, Omnicom, CITIC, and Prosper held a second meeting at Omnicom's offices in New York. Following this meeting, and without Prosper's knowledge, Omnicom and CITIC conducted negotiations for a joint venture agreement between them. Omnicom and CITIC ultimately entered into a joint venture agreement in June 2006. Prosper did not receive any compensation for its efforts in bringing Omnicom and CITIC together.

In February 2007, Prosper filed a Notice of Arbitration with the Centre for Dispute Resolution, seeking arbitration of claims against MarketStar. Prosper alleged that the actions of

4

MarketStar and/or Omnicom circumvented the business relationship between Prosper and CITIC and violated the mutual confidentiality obligations that were incorporated into the SMAA between Prosper and MarketStar.  The arbitrator (a retired Ohio state court judge) found in favor of Prosper, finding that MarketStar breached the confidentiality and non-circumvention provisions of the SMAA.

In finding for Prosper, the arbitrator took heed of the evidence presented with regard to how business is done in China.  Because of China's government regulations and complex bureaucracy, "it is important for a foreign company entering or expanding into the China market to have a Chinese connection."  (ECF No. 137-2, at PAGEID# 5081.)  The arbitrator continued:

> Networks and relationships are extremely important in China to connect entities and people.  Chinese business culture is built on trust and human relationships.  It takes time to build a guanxi and once built requires nurturing.  Guanxi is used as a currency to aid the establishment of a partnership between one company and another or one person and another.  It provides a means for accomplishing "due diligence" or "vouching," normally required between companies or persons, to get things done in an expeditious manner in a complex environment.  It minimizes the risks otherwise faced by foreign companies without one.  That's why a guanxi is so coveted.

(*Id.*)

The arbitrator ruled that it was Prosper's "guanxi" with CITIC that made it possible for the Omnicom/CITIC joint venture to become reality.  And it was the value of this "guanxi" that formed the basis for Prosper's claims in the MarketStar arbitration.  The arbitrator held that "[b]y bringing Omnicom to the table, Prosper vouched for Omnicom's trustworthiness.  Prosper used its guanxi with CITIC to give Omnicom the connection it needed to do business with CITIC." (*Id.* at PAGEID# 5089.)

Armed with these (and other) factual findings, the arbitrator found that MarketStar breached its contractual obligations to Prosper under the SMAA and the mutual confidentiality

agreement.  First, the arbitrator found that MarketStar shared Prosper's confidential information about CITIC's business with Omnicom without seeking a confidentiality agreement from Omnicom.  This failure was a direct violation of the mutual confidentiality agreement.  Second, the arbitrator found that MarketStar used Prosper's confidential information to Prosper's detriment.  Finally, MarketStar circumvented Prosper's relationship with CITIC "by failing to communicate with Prosper after the second meeting."  (ECF No. 137-2, at PAGEID# 5093.)  Based on MarketStar's breaches of contract, the arbitrator awarded Prosper damages in the amount of $4,750,000.  (*Id.* at PAGEID# 5095.)

In this lawsuit, Penn sued on behalf of itself and Big Research, claiming, among other things, that Defendants breached fiduciary duties owed to Big Research by usurping business opportunities from Big Research.  As relevant to the motions now before the Court, the Complaint asserts claims for conversion/unjust enrichment and breach of fiduciary duties as against Defendants Prosper, Rist, and Drenik.  Among Plaintiffs' theories of relief is that Defendants usurped "the business opportunities, assets and revenue of BigResearch and its member Penn, by virtue of the Marketstar [sic] Arbitration."  (Compl. ¶ 148c., ECF No. 2, a PAGEID# 24-25.)  In other words, Plaintiffs' lawsuit seeks damages, in part, for Prosper's successful pursuit of the arbitration award that Prosper obtained against MarketStar.

## II. Discussion

Defendants ask the Court to grant partial summary judgment on any claims premised upon the MarketStar arbitration award won by Prosper.  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. See *Anderson v. Liberty Lobby, Inc*., 477 U.S.

242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

When the nonmoving party fails to adequately respond to a summary judgment motion, the court is not required to search the record to determine whether genuine issues of material fact exist.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); see also Fed. R. Civ. P. 56(c)(1).  Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).  Ultimately, the Court must determine whether the evidence is so one-sided that the moving party must prevail as a matter of law.  *Anderson*, 477 U.S. at 252.

### A.  Plaintiffs' Rule 56(d) Motion

The Court first considers Plaintiffs' "Rule 56(d) Motion to Deny Defendants' Motion for Partial Summary Judgment."  (ECF No. 137.)  Fed. R. Civ. P.  56(d) provides that a party may oppose a motion for summary judgment by submitting an affidavit explaining why it cannot present facts essential to justify its opposition.  A party invoking Rule 56(d) in this fashion, however, has the burden of informing the district court of his need for discovery.  *Murphy v.*

*Greiner*, 406 F. App'x 972, 976 (6th Cir. 2011). Rule 56(d) does not shield parties who were dilatory in conducting the necessary discovery. *Mallory v. Noble Corr. Inst.*, 45 F. App'x 463. 469 (6th Cir. 2002).

In their Motion and in an affidavit submitted by their counsel, Plaintiffs contend that "critical" depositions have yet to take place and that said discovery will demonstrate the existence of a genuine issue of material fact with respect to the Defendants' alleged usurpation of business opportunities related to the MarketStar arbitration. In particular, Plaintiffs argue that it has not had the opportunity to depose Joe Pilotta, a Big Research employee during the relevant time period. (Pls.' Mot., ECF No. 137, at PAGEID# 5072.) Plaintiffs contend that they expect the facts to demonstrate that the "guanxi" that was so key to the arbitrator's ruling was developed by Pilotta as a Big Research employee, thereby entitling Big Research to a share of the arbitration award.[1] (*Id.*) Plaintiffs further contend that their failure to provide evidence in opposition to summary judgment is "no fault of their own." (*Id.*)

In response, Defendants contend that Plaintiffs do not require additional discovery to oppose the summary judgment, as Plaintiffs have everything they would need to establish a genuine issue of material fact (if any). Defendants argue they have produced "all pleadings, correspondence, and discovery exchanged between the parties in the MarketStar Arbitration and the subsequent appeals to the courts." (Defs.' Opp'n, ECF No. 143, at PAGEID# 5202.) This material included the deposition and hearing testimony of Drenik, Rist, *and* Pilotti during the arbitration proceeding. With Plaintiffs having this "complete access" to the factual record from the MarketStar arbitration, Defendants argue that the record is more than sufficient for purposes

---

[1] Plaintiffs make this claim despite the evidence at the arbitration indicating that Drenik and Pilotta cultivated their business relationship with CITIC during the mid-1990s, long before Big Research was formed. (Final Award of Arbitrator, ECF No. 137-2, at PAGEID# 5082.)

of Plaintiffs' preparation of a substantive opposition to Defendants' motion for partial summary judgment.

What's more, Defendants lambaste Plaintiffs for the purported failure to obtain necessary discovery related to the MarketStar arbitration. While Plaintiffs decry the need to depose Pilotta, Defendants argue that Plaintiffs had ample opportunity to do so before the close of discovery. Though Pilotta's deposition was scheduled for June 2012 but postponed (due to Pilotta's unavailability), Defendants note that Plaintiffs never tried to reschedule the deposition at any point thereafter. (ECF No. 143, at PAGEID# 5204.) Plaintiffs' failure to secure Pilotta's deposition when they could have done so, argue Defendants, requires denial of Plaintiffs' Rule 56(d) request for the Court to defer ruling on Defendants' motion for summary judgment.

Predictably, Plaintiffs take umbrage at the notion that they should have obtained the necessary discovery to oppose Defendants' motion for summary judgment before Plaintiffs filed their Rule 56(d) motion. Plaintiffs note that the Magistrate Judge granted in part a motion to compel last August, requiring Defendants to produce "a broad array" of records. (Pls.' Reply, ECF No. 144, at PAGEID# 5267.) And as to the failure to depose Pilotta, Plaintiffs point to the transcript from a June 18, 2012 status conference before the Magistrate Judge, in which Defendants' counsel balked at convening certain depositions before the Magistrate ruled on Plaintiffs' pending motion to compel. (*Id.* at PAGEID# 5276.)

After considering the parties' arguments and the evidence submitted, the Court finds Plaintiffs' Rule 56(d) motion to be without merit. Plaintiffs place great emphasis upon the June 18 status conference and the Magistrate's August 20 decision on the motion to compel as justification for any delay in obtaining necessary discovery with respect to the MarketStar arbitration. But the record does not support Plaintiffs' arguments. Though both the June 18

9

status conference and the August 20 decision on the motion to compel touched upon a variety of discovery issues, none of them had to do with the MarketStar arbitration. Moreover, Defendants note (and Plaintiffs do not dispute) that Pilotta is no longer an employee of Big Research and is in no way controlled by Defendants or any of Prosper's related companies. The Court sees no reason that would have prevented Plaintiffs from taking Pilotta's deposition notwithstanding the postponement of other depositions that was discussed in the June 18 status conference. Finally, and conspicuously, Plaintiffs have no rejoinder to Defendants' point that all MarketStar arbitration materials were previously produced and that said materials should have provided enough evidence for Plaintiffs to oppose summary judgment.

Plaintiffs have failed to sustain their burden of showing their entitlement to, much less the need for, additional discovery before this Court rules on Defendants' motion for partial summary judgment. The Court therefore **DENIES** Plaintiffs' Rule 56(d) motion (ECF No. 137).

### B. Defendants' Motion for Partial Summary Judgment

Having found that Plaintiffs are not entitled have this Court defer ruling on Defendants' motion for partial summary judgment, it is appropriate for this Court to proceed to the merits of Defendants' motion. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (finding no abuse of discretion by the district court to grant summary judgment "if it is otherwise appropriate" when the non-moving party fails to establish entitlement to relief under then-Rule 56(f) (now Rule 56(d)).

Plaintiffs' claims relating to the MarketStar arbitration are premised upon the theory that Prosper wrongfully exploited the MarketStar opportunity for itself. Delaware law, which provides the substantive law applicable to this case, describes the doctrine of corporate opportunity as "but one species of the broad fiduciary duties assumed by a corporate director or

officer." *Broz v. Cellular Information Systems, Inc.*, 673 A.2d 148, 154 (Del. 1996).[2]  "In light of the diverse and often competing obligations faced by directors and officers . . . the corporate opportunity doctrine arose as a means of defining the parameters of fiduciary duty in instances of potential conflict." *Id.*

To show a wrongful usurpation of business opportunity in this case, Plaintiffs must show (1) Big Research was financially able to exploit the MarketStar opportunity, (2) the opportunity was within Big Research's line of business, (3) Big Research had an interest in the opportunity, and (4) by taking the opportunity for themselves, Defendants placed themselves in a position "inimical" to their duties owed to Big Research. *Id.* at 154-55. Defendants argue in their motion that Plaintiffs cannot establish a usurpation of business opportunity because the business opportunity at issue in the MarketStar arbitration was not within Big Research's line of business. Because the claims in the MarketStar arbitration involved only MarketStar's misuse of Prosper's assets (namely, its "guanxi" with CITIC) to the detriment of Prosper, Defendants argue that Big Research cannot possibly show that Defendants usurped an opportunity. According to Defendants, "[a]ny fair reading of [the arbitration] Award conclusively demonstrates that Big Research's line of business — consumer market research — had nothing to do with that Award. Rather the MarketStar Award was based solely on Omnicom's breach of the [SMAA] (a contract solely between Prosper Business and MarketStar) by circumventing Prosper Business's relationship with CITIC, something it developed 4 or 5 years prior to Big Research's formation." (Defs.' Reply, ECF No. 143, at PAGEID# 5207.)

---

[2] The Big Research operating agreement provides that "[a]ll questions with respect to the construction of this Agreement and the rights and liabilities of the parties shall be determined in accordance with the applicable provisions of the laws of the State of Delaware, and this Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations of such state."

11

For their part, Plaintiffs use the evidence submitted by Defendants to support an argument that a genuine issue of material fact exists for trial.  Citing Defendants' description of the steps taken between 2004 and 2006 to foster a relationship between MarketStar/Omnicom and CITIC, Plaintiffs argue it is unclear whether these "steps" were properly taken on behalf of Prosper as opposed to Big Research.  Plaintiffs make much of the fact that it was Big Research that entered into the mutual confidentiality agreement with MarketStar in April 2004.  Thus, when the SMAA incorporated by reference the mutual confidentiality agreement, Plaintiffs argue that the parties were incorporating an agreement to which Big Research was a party.  (Pls.' Reply, ECF No. 144, at PAGEID# 5273.)  According to Plaintiffs, this is significant because the MarketStar arbitration placed at issue an alleged breach by MarketStar of the mutual confidentiality agreement.  Because of Big Research's "nexus" to the contracts at issue in the MarketStar arbitration, Plaintiffs raise some question as to whether Prosper should have reaped the benefit of the entire MarketStar arbitration award.

Unfortunately for Plaintiffs, their arguments obfuscate the issues more than they illuminate any genuine issue of fact for trial.  Conspicuous by its absence is any reference by Plaintiffs to the arbitration award itself or the decision by the United States District Court for the District of Utah, which confirmed the award.  *See Marketstar Corp. v. Prosper Bus. Dev. Corp.*, No. 2:07-cv-0132, 2009 U.S. Dist. LEXIS 81398 (D. Utah Sept. 8. 2009).  The arbitrator found that Marketstar breached its contract with Prosper in three ways:  (1) by failing to protect Prosper's confidential information about CITIC's business when it shared the information with Omnicom, (2) by failing to advise Prosper that Omnicom would not sign the proposed BDA, and (3) by permitting Omnicom to circumvent Prosper's third-party relationship with CITIC to Prosper's detriment.  (Final Award of Arbitrator, ECF No. 137-2, at PAGEID# 5091-93.)  The

arbitrator went on to calculate a damages award that was based in large part upon the value of the joint venture facilitated by Prosper, using testimony by Prosper's expert witness.  (*Id.* at PAGEID# 5089-91, 5095.)

A close reading of the arbitrator's award reveals that the claims in the MarketStar arbitration related to MarketStar's (and Omnicom's) misappropriation of Prosper's "guanxi" with CITIC.  In essence, MarketStar and Omnicom used Prosper to gain an introduction to CITIC, only to shut Prosper out of the eventual joint venture agreement that sprang from that introduction.  Plaintiffs have failed to present evidence that would enable a reasonable trier of fact to conclude that the claims and award in the MarketStar Arbitration had anything to do with the services provided by Big Research.  Indeed, rather than usurp opportunity from Big Research, the agreements at issue in the MarketStar arbitration show that Prosper procured business *for* Big Research by having Big Research perform services for MarketStar.  And there is unrefuted evidence in the summary judgment record that Big Research was "paid in full" for the services that MarketStar agreed to purchase from Big Research.  (Drenik Decl., ECF No. 130-1, at PAGEID# 4861.)

The dispute in the MarketStar arbitration appears to have had everything to do with MarketStar's misappropriation of Prosper's information and relationships and nothing to do with the services Big Research performed.  Accordingly, the Court finds Defendants' motion for partial summary judgment well-taken.

### III.  Conclusion

For the reasons set forth above, Plaintiffs' Rule 56(d) motion to deny or defer ruling on Defendants' motion for partial summary judgment (ECF No. 137) is **DENIED**.  Defendants' motion for partial summary judgment on claims related to the MarketStar arbitration award (ECF No. 130) is **GRANTED**.

**IT IS SO ORDERED**.

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT JUDGE**