```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Penn, LLC, et al.,                :

    Plaintiffs,              :

  v.                              :       Case No. 2:10-cv-993

Prosper Business Development      :       JUDGE GREGORY L. FROST
    Corporation, et al.,              Magistrate Judge Kemp

    Defendants.              :

OPINION AND ORDER

    This case is before the Court to resolve a discovery dispute. Plaintiffs Penn, LLC ("Penn") and Big Research, LLC ("Big Research") filed a motion for an order compelling the "re-deposition" of non-party witness Bradford S. Eldridge. (Doc. #210). Defendants Prosper Business Development Corporation ("Prosper"), Phil Rist, and Gary Drenik filed a memorandum in opposition to Plaintiffs' motion. (Doc. #221). Mr. Eldridge, the non-party witness, likewise filed a memorandum in opposition. (Doc. #224). On June 24, 2013, Plaintiffs filed a reply brief in support of their motion. (Doc. #238). Consequently, the motion has been briefed fully and is now ripe for decision. For the following reasons, the motion will be granted.

I. Background

    The nature and history of this litigation are fully set forth in previous orders of this Court and will not be repeated at length here. Briefly, however, for purposes of the current motion, the Court notes that Penn filed the present action on behalf of itself and derivatively on behalf of Big Research for restitution and damages, alleging that Defendants improperly transferred and diverted business opportunities, assets, and revenues of Big Research to Prosper, and that these improper

transactions happened both when Big Research was still operating and in connection with the purchase of Big Research's assets and the transfer of its remaining business to Prosper.

Big Research retained Mr. Eldridge to perform various tasks which included an interpretation of Big Research's Operating Agreement, an analysis of capital account balances, a valuation of Penn's membership interest in Big Research, instruction on how to wind-up Big Research and how to comply with the May 2010 Arbitration Award, a determination as to the reasonableness of the royalty rate Prosper charged Big Research, and a calculation of Big Research's liquidation value. (Doc. #221 at 2-3). Plaintiffs deposed Mr. Eldridge, seeking information concerning his reports and practices. They claim that Mr. Eldridge's counsel refused any inquiry into the following areas important for cross-examination:

1. Eldridge's typical valuation methodologies and the extent to which his specific work here varied from his usual protocol or techniques;

2. The criteria Eldridge considered important in the work he performed here, and the extent to which other data points may have been significant had he been aware of them;

3. The assumptions provided to him by Defendants, and the extent to which his conclusions here change if the assumptions are wrong; and

4. The instructions and communications Eldridge received from James Leickly in Leickly's capacity as BIGresearch's counsel, at a time when Eldridge was performing his valuation work per Leickly's direction and before Leickly came to represent Eldridge.

(Doc. #210 at 4). In their motion, Plaintiffs claim that Mr. Eldridge "should be required to sit for re-deposition, and be compelled to answer under oath regarding the four topics listed above." Id. Alternatively, Plaintiffs request that the Court

preclude Defendants from making any mention of Mr. Eldridge and his work at trial.  Id. at 4-5.

In opposition, Defendants claim that Plaintiffs are using Mr. Eldridge's deposition to do an "end-around" the Court's order prohibiting Plaintiffs from using expert testimony due to their failure to comply with the relevant deadlines.  (Doc. #221 at 1). Defendants also argue that they should not be barred from referencing Mr. Eldridge's work despite his refusal to answer questions about it because he explained it in "great detail" during the deposition.  Id. at 1. Defendants also argue that they should not suffer any adverse consequences relating to Mr. Eldridge's failure to answer questions because his counsel, and not defense counsel, advised him not to answer.  Id.

Mr. Eldridge likewise opposes the motion to compel, arguing that Plaintiffs are attempting to elicit expert testimony from him in violation of this Court's order.  (Doc. #224 at 1). Accordingly, Mr. Eldridge insists that his refusal to answer was consistent with Fed. R. Civ. P. 30(c)(2), which allows a witness to refuse to answer a deposition question "to enforce a limitation ordered by the court."  Id.

## II. Discussion

Fed. R. Civ. P. 30(c)(2) provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Here, Mr. Eldridge's counsel instructed him not to answer on the grounds that he was enforcing "a limitation by the court."  The purported limitation arises from the Court's ruling that Plaintiffs are not entitled to present expert testimony due to their failure to comply with the relevant deadlines.  (Doc. #98).  More specifically, the Court issued an Opinion and Order providing that Plaintiffs are prohibited from presenting the testimony of forensic accounting

-3-

expert witness Rebekah A. Smith of GBQ Consulting in light of their failure to meet the expert disclosure deadline.  <u>Id.</u>

The Court's ruling concerning expert witness testimony, however, is not a limitation on discovery as suggested by counsel for Mr. Eldridge.  <u>See</u> Fed. R. Civ. P. 26(b)(2)(c).  Fed. R. Civ. P. 26(b)(2)(c) discusses when a court may issue an order limiting discovery and indicates that a court may do so if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

This Court has not issued an order limiting discovery under Fed. R. Civ. P. 26(b)(2)(c).  An order precluding a party from presenting expert testimony at trial is not the equivalent of an order limiting a party's ability to question a witness about matters of opinion, especially if the opposing party intends to offer testimony from that very witness.  Accordingly, Mr. Eldridge was improperly instructed not to answer on the grounds that he was enforcing "a limitation by the court."

To the extent that Mr. Eldridge's counsel may have had objections to questions based on his belief that those questions called for expert, as opposed to fact, testimony, Fed. R. Civ. P. 30(c)(2) provides that an objection during a deposition "must be noted on the record, but the examination still proceeds; the

testimony is taken subject to any objection." Accordingly, Mr. Eldridge should have answered Plaintiffs' questions subject to any such objection. Simply put, Mr. Eldridge did not have a basis upon which to refuse to answer under the relevant rules and the instruction not to answer was improper.

Given that Mr. Eldridge was improperly instructed not to answer questions, the Court finds it both necessary and proper to require him to be deposed a second time. See Fed. R. Civ. P. 30(c)(2) (allowing a party to take a second deposition if the request is consistent with Fed. R. Civ. P. 26(b)(2)). Defendants urge that, if ordered, Mr. Eldridge's second deposition should be limited to two hours. (Doc. #221 at 2, 6). The Court agrees that a presumptive time limit is advisable even though the additional time is necessary in order to allow Plaintiffs to explore fully the basis for Mr. Eldridge's deposition testimony without being prevented from doing so by way of improperly-grounded instructions not to answer. A two-hour time limit appears to be reasonable in light of the fact that Mr. Eldridge was deposed previously for nearly seven hours, and in light of the fairly limited scope of the questions he refused to answer. However, should the process of re-deposing Mr. Eldridge turn out to be more protracted than would first appear, the parties shall discuss if a reasonable extension of the two-hour time limit is warranted, and Plaintiffs may apply for more time if they believe it is necessary and if Defendants or the witness disagree.

### III. Conclusion

Based upon the foregoing, Plaintiffs' motion for an order compelling the "re-deposition" of non-party witness Bradford S. Eldridge (Doc. #210) is granted. The duration of the deposition shall be limited to two hours, subject to the qualification on that time limit set forth above.

### IV. Procedure on Objections

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge