UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PENN, LLC, et al.,

       Plaintiffs,                          Case No. 2:10-cv-0993
                                             JUDGE GREGORY L. FROST
    v.                                      Magistrate Judge Terence P. Kemp

PROSPER BUSINESS DEVELOPMENT
CORPORATION, et al.,

       Defendants.

**OPINION AND ORDER**

      This matter is before the Court on several motions in limine filed by Plaintiffs (ECF Nos. 248, 249, 251, and 252) and Defendants' consolidated opposition to all of them (ECF No. 253). For the reasons set forth below, the Court **DENIES** all of Plaintiffs' motions in limine.

**I.**

      Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion in limine. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Notwithstanding this well-meaning purpose, courts are generally reluctant to grant broad exclusions of evidence in limine, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d

1

1385, 1388 (D. Kan 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388; *cf. Luce*, 469 U.S. at 41. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp.2d at 846. Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. *Id.* The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *Id.* (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989)).

**II.**

    A. *Motion to Exclude Claims that Penn is a "Spammer" and to Exclude Testimony Regarding Penn's E-mail Network*

Penn's first motion in limine asks the Court to prohibit Defendants from introducing any testimony asserting that Penn is a "spammer" and that Penn "has no email network." (ECF No. 248.) Penn contends that the "briefs and depositions" in this case indicate that Defendants will try "to cast Penn in a negative light," despite the fact that Penn has not been charged with violating any anti-spamming laws. (*Id.* at PageID# 12920.)

Penn's first basis for exclusion is a "res judicata" argument. In an earlier arbitration between these parties, the arbitrator found that Penn's email network was at no time denied to Big Research. (*Id.* at PageID# 12922 (citing Arbitration Award, ECF No. 84-4).) Penn also

2

notes that the arbitrator "found there was no evidence to suggest that Penn was a spammer." (*Id.* at PageID# 12923.) Citing the doctrine of res judicata, Penn argues that the Court should preclude Defendants from introducing evidence that Penn was a "spammer" or that Penn's email network was somehow unavailable for Big Research's activities.

Penn's "res judicata" argument is misplaced. Generally speaking, res judicata principles bar relitigation of *claims* (claim preclusion) that were or could have been litigated in a prior litigation or *issues* (issue preclusion) that were fully litigated in a prior litigation between the same parties. *See generally Migra v. Warren City Sch. Dist. Bd. of Edn.*, 465 U.S. 75, 77 n.1 (1984). The res judicata doctrine does not bar *evidence* relevant to a claim or issue in a case.

In addition, Penn argues that any evidence of Penn being a "spammer" is not relevant to the claims at issue in this case and is "prejudicial." Penn contends that such evidence has no probative value and, even if it did, such value is substantially outweighed by unfair prejudice because "spammer" has a negative connotation in today's internet age. Penn therefore argues that the evidence is barred by Fed. R. Evid. 403.

The Court sees no reason for an in limine order barring such evidence. Penn contends that this case "is about the breaches of fiduciary duties owed by Defendants to Big Research and Penn." (ECF No. 248 at PageID# 12925.) While that may be true, Defendants are also correct that they should be allowed to present evidence concerning the reasons they took some of the actions they took, including Defendants' belief that Penn had engaged in spamming activities and failed to make its email network available for Big Research's activities. The complaints Penn raises regarding Defendants' anticipated evidence are matters appropriately addressed in cross-examination.

Accordingly, the Court **DENIES** Plaintiffs' motion to exclude testimony claiming that Penn is a "spammer" or testimony regarding the unavailability of Penn's email network.

### B. *Motion to Exclude All References to Plaintiffs' Former RICO Claim*

Penn's second motion in limine asks the Court to exclude any reference during trial to Plaintiffs' previously-dismissed claim brought under the Racketeer Influenced and Corrupt Organization Act ("RICO").  (ECF No. 249.)  The Court denies this motion.

Plaintiffs' Complaint alleged a RICO claim, which this Court dismissed in a prior order. (ECF No. 31.)  Plaintiffs' complain that "[e]ven though this claim has been dismissed by this Court, Defendants continuously bring up the fact that Plaintiffs filed a RICO claim even though this issue is no longer before this Court."  (ECF No. 249 at PageID# 12930.)  Plaintiffs claim that it would be "highly prejudicial" to permit Defendants to "state or imply, directly or indirectly, that the mere fact of the bringing of the claim is somehow in violation of law or such filing constitutes improper conduct by Penn or its former or current counsel."  (*Id.* at PageID# 12930-31.)

The Court rejects Plaintiffs' argument.  This Court previously denied Plaintiffs' motion for summary judgment on Defendants' counterclaims alleging abuse of process.  Penn's filing of a RICO claim in this matter is probative of Defendants' theory of abuse of process liability.  The inclusion of a RICO claim in the Complaint is relevant to Defendants' allegation that Penn brought the instant lawsuit with the improper ulterior purposes of (1) leveraging a more favorable settlement of an action then pending in state court and (2) seeking to disqualify Prosper's trial attorney and his law firm from representing Prosper in this action.  Even indulging Penn's argument that mere mention of the RICO claim is "prejudicial," the Court does not view such evidence as *unfairly* prejudicial for purposes of Fed. R. Evid. 403.

Accordingly, the Court **DENIES** the motion in limine to exclude all references to Plaintiffs' former RICO claim.

### C. *Motion to Exclude Testimony Relating to Steve Denari and TMG Resources and Testimony Regarding Penn's Ownership and Operations*

Plaintiffs' third motion in limine seeks to exclude any testimony regarding Penn's association with Steve Denari and TMG Resources, Inc. ("TMG"), as well as any testimony regarding the operation of Penn's business, Penn's members, and Penn's operating agreement. (ECF No. 251.)  Plaintiffs argue that such evidence is not relevant to this case and therefore inadmissible under Fed. R. Evid. 402.

By way of background, Denari is the president of TMG; TMG was a member of Penn, LLC as of January 1, 2004.  In September 2008, Denari became Penn's designee to Big Research's Board of Members and remained a member until Penn removed him in November 2009.  By January 2010, TMG was no longer a member of Penn.  Later that year, Denari filed an Illinois state court lawsuit against Drenik, Rist, and Prosper, alleging defamation.  Penn was not a party to that lawsuit.  In its motion in limine, Plaintiffs complain that Defendants "have attempted to link conduct, reputation or acts by Mr. Denari or TMG to Penn."  (ECF No. 251 at PageID# 12937.)

The Court denies Plaintiffs' motion, as it is unable to render a broad exclusion of the type sought by Plaintiffs.  The dispute over the evidence Plaintiffs seek to exclude is best resolved in the context of trial.  Defendants' opposition to Plaintiffs' motion in limine sets forth at least four plausible arguments supporting the relevance of evidence related to Denari's association with Penn and, by extension, the operation of Penn's business.  Defendants argue—

- Denari's "checkered past" and business activities that were in direct competition with Big Research are relevant "to place in context" the animosity between Penn and

5

Defendants and to Defendants' contention that Penn's placement of Denari on the Big Research Board was a breach of fiduciary duty;

- Denari's association with Penn is relevant to challenge the credibility of the valuation testimony by Jaffer Ali (Penn's CEO) because the value Penn placed on TMG's ownership interest in Penn is "directly relevant" to how Penn and TMG valued Penn's ownership interest in Big Research;

- Denari and Ali voted jointly to reject Big Research's budgets in 2009 and 2010 and retroactively rejected all budgets for 2004 through 2008; and

- Denari's association with Penn may be relevant to place in context the decision of Robert Kamerschen to withdraw from Big Research, a decision that led to the dissolution of Big Research.

Given Defendants' arguments for relevance, the Court cannot, at this juncture, conclude that evidence regarding Penn's operation and Penn's association with Denari is "clearly inadmissible on all potential grounds." *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846.  The admissibility of the challenged evidence is a determination better left to the context of trial.  The Court therefore **DENIES** Plaintiffs' motion in limine to exclude the Denari evidence and testimony regarding Penn's ownership and operations.

### D.  *Motion to Exclude Prior Settlement Discussions or to Bifurcate*

Plaintiffs' final motion in limine asks the Court to exclude any evidence related to "prior settlement negotiation" between the parties.  In the alternative, Plaintiffs ask the Court to bifurcate the trial so that the challenged evidence is admitted solely in connection with proceedings addressing Defendants' counterclaims.

The evidence Plaintiffs seek to exclude relates to Defendants' abuse of process

6

counterclaim.  Defendants allege that Attorney Richard Cochran, who previously represented Penn, threatened that if Big Research did not settle a then-pending state court action on terms favorable to Penn, then Penn would file a federal court lawsuit against not only the Defendants named here, but also against Prosper attorney James Arnold and his law firm.  Consistent with Defendants' theory, when the state court issued its decision modifying an arbitration award to reduce Penn's damage award, Plaintiffs filed this action, naming Attorney Arnold and his law firm as Defendants.  And then, following the filing of this lawsuit, Defendants contend that Attorney Cochran repeated his demand that Big Research settle the state court cases on terms favorable to Penn in exchange for Penn dismissing this case.  Defendants argue that these actions by Attorney Cochran on behalf of Penn are an abuse of process in that they were an attempt to bully Defendants into giving Penn more money than it was legally entitled to receive in the state court action.

Plaintiffs' primary argument for exclusion of "settlement discussions" evidence falls under Fed. R. Civ. P. 408.  Rule 408 states:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--*either to prove or disprove the validity or amount of a disputed claim* or to impeach by a prior inconsistent statement or a contradiction:
>
>   (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
>   (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

7

Plaintiffs argue that all of the discussion between Attorneys Arnold and Cochran, the substance of which supports Defendants' abuse of process theory of liability, came during the context of settlement, triggering the exclusion set forth in Rule 408. The Court, however, has already rejected Plaintiffs' position. In denying Plaintiffs' motion for summary judgment on Defendants' abuse of process counterclaims, the Court stated:

> Rule 408 prohibits the admissibility of any conduct or statement made in settlement negotiations *to prove or disprove the validity or amount of a disputed claim*. Defendants are not using Attorney Cochran's statements to prove or disprove the validity or amount of a disputed claim in this case. Rather, Defendants are using Cochran's statements to demonstrate the ulterior motive underlying this lawsuit, namely, the alleged motive of trying to leverage more favorable terms in a settlement of a state-court lawsuit.

(ECF No. 254, at PageID# 12986.) Based on the purpose for which Defendants would offer the evidence of Cochran's so-called settlement communications in this case, Rule 408 does not come into play. *See Evans v. Troutman*, 817 F.2d 104, 1987 WL 37221, at *3 (6th Cir. Apr. 29, 1987) ("Rule 408 is intended to encourage settlement of suits by forbidding a party from pointing to her opponent's settlement offer as proof that the opponent thought he would lose.").

Nor is the evidence inadmissible under Fed. R. Evid. 403. Attorney Cochran's statements go to the heart of the abuse of process counterclaims. Assuming that Defendants are able to elicit testimony about Cochran's communications at trial, such evidence would be highly relevant to Defendants' theory that Penn continued its pursuit of this lawsuit with an ulterior motive of leveraging a more favorable outcome in the earlier state court lawsuit. There is nothing *unfairly* prejudicial about the jury hearing the evidence that underlies the abuse of process counterclaim.

In the alternative, Plaintiffs ask that the trial be bifurcated, such that the "settlement" evidence would be introduced only in proceedings related to Defendants' counterclaims. Under

8

Fed. R. Civ. P. 42(b), a district court has discretion to order a separate trial of any "claims, crossclaims, counterclaims, or third-party claims" for purposes of avoiding prejudice to a party. Plaintiffs argue that to permit disclosure of settlement discussions "could unfairly prejudice the jury." (ECF No. 252, at PageID# 12956.)

Plaintiffs' request for bifurcation is lukewarm at best and entirely unconvincing. Bifurcation is the *exception*, not the rule: as a general rule, disputes should be resolved in a single proceeding and a district court should bifurcate only in exceptional cases. *See Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-cv-1285, 2008 WL 4823069, at *2 (S.D. Ohio Nov. 3, 2008). Plaintiffs have not demonstrated how this is the exceptional case where bifurcation is appropriate. There is significant factual overlap between Defendants' counterclaims and Plaintiffs' claims, meaning that bifurcation would only result in a second trial that may be largely repetitive of the first one.

Further, the Court is not convinced that Plaintiffs would be unduly prejudiced if Defendants are able to introduce the evidence of "settlement negotiations" that underlie Defendants' abuse of process counterclaim. Plaintiffs contend that the evidence would have "the very real effect of misleading the jury into believing that an offer of settlement correlates with the real extent of damages at issue." (ECF No. 252 at PageID# 12955.) The Court does not have as little faith in the potential jurors as Plaintiffs do. The premise of Defendants' abuse of process counterclaims is that Penn (through the communications of Attorney Cochran) was trying to extract a more favorable settlement *in the previously pending state court action* through the threat and ultimate pursuit of *this* lawsuit. The settlement evidence that would be presented to the jury would therefore relate to the supposed extent of damages *in the state court suit* and not this one. While this case involves a complex commercial dispute that may pose some challenges

9

for the jury, the Court does not view the evidence of Attorney Cochran's settlement communications as an aspect of the case that poses a danger of misleading the jury.

The Court therefore **DENIES** Plaintiffs' motion in limine to exclude settlement discussions or to bifurcate proceedings.

### III.

For the foregoing reasons, the Court **DENIES** each of Plaintiffs' motions in limine. (ECF Nos. 248, 249, 251, 252.)  As with all decisions in limine, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pretrial motions and memoranda.

**IT IS SO ORDERED**.

    **/s/ Gregory L. Frost**
    **GREGORY L. FROST**
    **UNITED STATES DISTRICT JUDGE**