UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PENN, LLC, et al.,

    Plaintiffs,

  v.

PROSPER BUSINESS DEVELOPMENT
CORPORATION, et al.,

    Defendants.

Case No. 2:10-cv-0993
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on the motion of Plaintiffs Penn, LLC and BigResearch, LLC for judgment as a matter of law or, in the alternative, for a new trial. (ECF No. 309.)[1] Defendants Prosper Business Development Corporation, Gary Drenik, and Phil Rist have filed a memorandum in opposition (ECF No. 313) and Plaintiffs have filed a reply (ECF No. 314). For the reasons set forth below, the Court **DENIES** Plaintiffs' motion and instructs the Clerk to enter final judgment in Defendants' favor in accordance with the jury verdict in this case.

---

[1] Plaintiffs' motion is styled as one "FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL *OR TO AMEND THE JUDGMENT*." (ECF No. 309 at PageID# 17626 (emphasis added).) While the body of Plaintiffs' motion argues for judgment as a matter of law under Fed. R. Civ. P. 50(b) and for a new trial under Fed. R. Civ. P. 59(a), it does not contain any argument for amending the judgment in this case under Fed. R. Civ. P. 59(e). Accordingly, the Court treats Plaintiffs' motion as moving only for judgment as a matter of law under Fed. R. Civ. 50(b) or, alternatively, for a new trial under Fed. R. Civ. P. 59(a).

**I.**

This case involves a contentious commercial dispute that has progressed through multiple lawsuits and arbitration proceedings over a span of several years.  In a nutshell, Plaintiff Penn, LLC ("Penn") and Defendant Prosper Business Development Corporation ("Prosper") formed a limited liability company, BigResearch LLC ("Big Research"), which was in the business of performing consumer research for clients seeking such data.  At the time Big Research was formed, the parties contemplated that Prosper would develop the consumer research products (*e.g.,* consumer questionnaires) and interpret the resulting data while Penn would procure respondents for consumer research questionnaires using the e-mail network it had developed in connection with its other businesses.  Not long after the parties formed Big Research, disputes began to develop, which ultimately led to Prosper taking steps to exclude Penn from decisions concerning the management of Big Research.

Penn filed this action on behalf of itself and derivatively on behalf of Big Research.  Penn alleged that Defendants Prosper, Gary Drenik, and Phil Rist improperly transferred and diverted assets, revenues, and business opportunities of Big Research for the benefit of Prosper. Defendants filed counterclaims against Penn, alleging that Penn engaged in an abuse of process, theorizing that Plaintiffs used this lawsuit in order to leverage a more favorable outcome for Penn in other litigation between the parties.

This case proceeded to a jury trial that took place from September 23, 2013 to October 17, 2013.  After various rulings on motions for judgment as a matter of law, the only remaining claims for the jury's consideration were (1) Plaintiffs' claim for breach of fiduciary duty and (2)

Defendants' counterclaims for abuse of process.  After a three-week trial that included testimony from 18 witnesses and the admission of more than 200 exhibits, the jury returned a defense verdict on Plaintiffs' breach of fiduciary duty claim and also found in favor of Defendants on their abuse of process counterclaims.  The jury awarded Defendants compensatory damages in an aggregate amount of $1,200,000.  The jury also awarded punitive damages in the amount of $25,000 to Defendant Drenik and $25,000 to Defendant Rist.

Plaintiffs now move the Court for judgment as a matter of law under Fed. R. Civ. P. 50(b) on Defendants' abuse of process counterclaims, arguing that the claims never should have been submitted to the jury in the first place.  Plaintiffs also move for a new trial under Fed. R. Civ. P. 59 based on a series of perceived evidentiary errors the Court committed that produced, in Plaintiffs' view, a trial that was unfair.

## II.

The Court first addresses Plaintiffs' motion for judgment as a matter of law under Fed. R. Civ. P. 50(b).  Plaintiffs argue that the Court should set aside the jury's verdict in Defendants' favor on the counterclaims for abuse of process and render judgment in their favor as a matter of law on those counterclaims.

Fed. R. Civ. P. 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

3

>    (1) allow judgment on the verdict, if the jury returned a verdict;
>
>    (2) order a new trial; or
>
>    (3) direct the entry of judgment as a matter of law.

"The inquiry for resolving a motion for judgment as a matter of law pursuant to Rule 50 is the same as the inquiry for resolving a motion for summary judgment pursuant to Rule 56." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 794 (6th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000)).  The Court views the evidence of record in the light most favorable to the nonmoving party and determines whether there was a genuine issue of material fact for the jury.  *Id.*; *see also Gray v. Toshiba Am. Cons. Prods.*, 263 F.3d 595, 598 (6th Cir. 2001).

The Court must uphold the jury verdict "unless there was 'no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party.'"  *White*, 364 F.3d at 794 (quoting Fed. R. Civ. P. 50(a)).  The Court draws all reasonable inferences in favor of the prevailing party (here, the Defendants), does not make any credibility determinations, and does not weigh the evidence.  *Id.*  Thus, the court must "disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves*, 530 U.S. at 151.  Judgment as a matter of law is appropriate only "if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ."  *LaPerriere v. Int'l Union UAW*, 348 F.3d, 127, 132 (6th Cir. 2003).  The Court must also be mindful of the fact that he jury is allowed to draw inferences from the evidence at trial and that such inferences

4

may provide the basis for an appropriate verdict. *See Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 429 (6th Cir. 2004).

As to the tort claim for abuse of process (which the parties agree is governed by Ohio law), the elements are "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rose Co., L.P.A.*, 68 Ohio St. 3d 294, 298, 626 N.E. 2d 115 (Ohio 1994).  Abuse of process occurs "where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St.3d 264, 271, 662 N.E.2d 9 (Ohio 1996).

Plaintiffs argue that Defendants' abuse of process claim never should have reached the jury because there was no evidence that Plaintiffs used this lawsuit "with a wrongful <u>collateral</u> objective, <u>unrelated to any legitimate goals of the suit itself</u>," which is the sine qua non of an abuse of process claim.  (Pls.' Mot., ECF No. 309 at PageID# 17633.)  Plaintiffs contend that the "only evidence" of improper conduct that Defendants introduced was settlement negotiations in which Penn attorney Richard Cochran approached Defendant Prosper's attorney James Arnold and stated that Plaintiff Penn would dismiss this lawsuit if Defendants settled this and other pending litigation on Penn's proposed terms.

Though Plaintiffs downplay this evidence (which consisted mainly of testimony from Arnold), the evidence was enough for the jury to conclude that there was an ulterior purpose behind this lawsuit, namely, to obtain a more favorable settlement in the state court proceeding.

Just as it did when it denied Plaintiffs' pretrial motion for summary judgment on Defendants' counterclaims for abuse of process (Opinion and Order, ECF No. 254), the Court finds *Luciani v. Schavone*, 210 F.3d 372 (table), 2000 WL 331974 (6th Cir. Mar. 24, 2000), instructive here.

In *Luciani*, the Sixth Circuit reversed a grant of summary judgment on an Ohio abuse of process claim based on the defendant's role in instituting a legal separation action in an Ohio court on behalf of the plaintiff's then-wife. The plaintiff's wife had previously instituted a divorce proceeding in New Mexico (where she and her husband resided), but had moved to Ohio. The court of appeals held that a reasonable fact finder could infer that the defendant brought the Ohio action "to pressure [the husband] to submit to Ohio's jurisdiction on issues that were not properly before the court." *Id.*, 2000 WL 331974 at *6. Specifically, the court of appeals found that "a jury could infer that [the defendant] was using the Ohio action as a bargaining chip to obtain a custody arrangement and property settlement that the Ohio court had no power to order" or to obtain judgments "that it had no power to grant." *Id.* So characterized, the Ohio lawsuit was an attempt to achieve something that the Ohio court was powerless to order. *Id.*

Likewise here, the evidence at trial led to the reasonable conclusion that Plaintiff Penn instituted this lawsuit with the ulterior motive of using it as a bargaining chip to extract a more favorable settlement in the *Ohio state court* action arising from the parties' prior arbitration. This Court was, of course, powerless to itself make any order with respect to the confirmation of the arbitration award, much less the amount of the award. Thus, the jury was within its rights to find Penn liable for abuse of process for using this lawsuit to obtain a collateral advantage in

6

another proceeding.

Plaintiffs argue, however, that settlement tactics, no matter how heavy handed, cannot form the basis of an abuse of process claim. Plaintiffs cite to a multitude of cases standing for the proposition that the use of a civil action to extract money from the other party is not abuse of process; rather, it is simply the use of process to obtain an objective contemplated by the process (*i.e.*, succeeding in the lawsuit and obtaining compensation). Plaintiffs emphasize the principle that no abuse of process claim will lie "where the defendant has done nothing more than carry out the process to its authorized conclusion, even with bad intentions." *Yaklevich*, 68 Ohio St. 3d at 298 n.2. Thus, Plaintiffs contend that Mr. Cochran's tactics cannot form the basis of an abuse of process claim as a matter of law because he was simply pursuing a "global settlement" of this case and the state court case.

Plaintiffs' characterization of Mr. Cochran's conduct as the pursuit of a "global settlement" was not, however, the only way to interpret the evidence that came before the jury. The jury heard evidence that the state court reduced Penn's arbitration award by approximately half a short time before Penn filed suit in this case. Then after Penn filed this lawsuit, Mr. Cochran approached Mr. Arnold and demanded that Defendants pay, in substance, the amount by which the state court reduced the arbitration award. Based on this evidence, the jury could have reasonably found that Mr. Cochran was pursuing not a "global" settlement but, in actuality, was leveraging this case to obtain a more favorable resolution of the state court and arbitration proceedings between the parties—a collateral objective. Further, there was evidence that Penn was trying to obtain another collateral objective, namely, to disqualify Mr. Arnold from

7

representing his client in the state court and arbitration proceedings.

Plaintiffs also contend that judgment must be rendered in their favor on the abuse of process counterclaims because Defendants' abuse of process claim must be premised upon conduct that occurred between the filing of Plaintiffs' complaint and Defendants' filing of the counterclaims in this action. This is so, argue Plaintiffs, because there must be something "improper or corrupt [that] occurred *after* the process was set in motion that would serve to pervert the proceeding." *Hershey v. Edelman*, 187 Ohio App. 3d 400, 932 N.E. 2d 386, 2010-Ohio-1992, at ¶ 44 (Ohio Ct. App. 2010) (emphasis added); *see also Gillman v. Schlagetter*, 777 F. Supp. 2d 1084, 1099 (S.D. Ohio 2010).

The Court is not persuaded by Plaintiffs' argument in this regard. As an initial matter, the Court is not convinced that Ohio law is as clear on this subject as Plaintiffs posit. If anything, the abuse of process case law sends mixed signals as to what evidence is required to create a genuine issue for a jury. While *Hershey* and *Gillman* (among other cases) suggest that an abuse of process defendant commit some specific "improper" or "corrupt" act to pervert a proceeding *after* process is issued, other cases appear to suggest that the mere continued pursuit of an action with an ulterior motive collateral to the proceeding is enough to sustain an abuse of process claim. *See e.g. E.E.O.C. v. Spitzer Mgmt., Inc.*, 866 F. Supp. 2d 851, 871 (N.D. Ohio 2012) (finding a genuine issue of material fact on abuse of process claim when there was evidence to support "a finding that the lawsuit against [plaintiffs] personally was meant to silence their ongoing, protected speech"); *Williams v. New Day Farms, LLC*, No. 2:10-cv-394, 2011 U.S. Dist. LEXIS 36543, at *16 (S.D. Ohio Mar. 31, 2011) (finding "material question of

8

fact" on an abuse of process claim when there was evidence "that the defendants instituted a lawsuit that was lawfully served upon plaintiffs, in an attempt to use the court to do something the court could not otherwise do"); *Thompson v. R&R Service Sys., Inc.*, 10th Dist. App. Nos. 96APE10-1277 and 96APE10-1278, 1997 Ohio App. LEXIS 2677, at *37 (Ohio Ct. App. 1997) (reversing a directed verdict on an abuse of process claim when plaintiffs presented evidence that defendants instituted criminal proceedings for the "improper, collateral purpose" of recovering property and excusing obligations under a contract). Indeed, in *Robb*, the Ohio Supreme Court found a viable abuse of process claim (and reversed a summary judgment in the defendants' favor) when the defendants "instituted at least one of their suits with the intention to use it as a club to coerce" a course of action that the trial court had no authority to order. *Robb*, 75 Ohio St. 3d at 271.

Even accepting Plaintiffs' premise as true, however, there was evidence at trial to support a jury finding that Penn took "improper or corrupt action" after filing this lawsuit. Mr. Arnold testified that Mr. Cochran made a settlement demand in December 2010, *after* Penn initiated this lawsuit, and that the demand sought to obtain a more favorable (to Penn) outcome in the state court/arbitration proceedings than what the state court had previously ordered.

As an additional basis for judgment as a matter of law, Plaintiffs argue that Defendants did not present "any acceptable measure of direct damages." (Pls.' Mot., ECF No. 309 at PageID# 17637.) They argue that all Defendants presented was evidence of "undifferentiated attorneys' fees incurred in this lawsuit *in toto*." (*Id.*) The Court likewise rejects this argument for judgment as a matter of law. Defendants presented evidence of the attorneys' fees they

9

incurred in defending the lawsuit in which the abuse of process occurred. Plaintiffs' argument that the fees should have been "differentiated" somehow (*e.g.*, separating fees incurred for pursuing the counterclaims versus fees incurred for defending "legitimate" aspects case) is not a basis for invalidating the jury's award. Rather, it is a point that Plaintiffs had every opportunity to cross-examine Defendants' witnesses about and argue to the jury.

Indeed, in any event, it seems that the jury may have done some differentiation on its own. As Defendants point out, the $1.2 million in compensatory damages awarded by the jury was only a fraction of the $1.8 million in attorneys' fees that Defendants claimed at trial to having incurred in this action. Moreover, Defendants also presented evidence that they incurred $544,000 in lost business opportunity damages attributable to the abuse of process. If the jury credited that testimony, the $1.2 million figure is an even smaller portion of the damages Defendants claim to have incurred. Though Plaintiffs take issue with the strength of Defendants' evidence of "lost business opportunity" damages, their arguments raise points that inform the weight of that evidence rather than to its admissibility. Plaintiffs had ample opportunity to cross-examine Defendants and argue to the jury that these damages were too uncertain to award.

For these reasons, the Court denies Plaintiffs' motion for judgment as a matter of law on Defendants' counterclaims for abuse of process.

## III.

Alternatively, Plaintiffs move this Court for a new trial under Fed. R. Civ. P. 59(a). Under Rule 59(a)(1), a district court may grant a new trial following a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The Sixth

Circuit has interpreted Rule 59(a)(1) to require a new trial "when a jury has reached a seriously erroneous result as evidenced by:  (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996) (internal quotations omitted); *see also Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006).  An incorrect evidentiary ruling may also form the basis of a motion for new trial.  *See Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013).  But "[a]n erroneous evidentiary ruling amounts to reversible error, justifying a new trial, only if it was not harmless; that is, only if it affected the outcome of the trial." *Id.*

### A.  Mr. Arnold's Role as Attorney and Witness

Plaintiffs' first argument for a new trial concerns an issue that this Court addressed prior to trial—Mr. Arnold, Prosper's trial attorney, being allowed to testify at trial in support of Defendants' counterclaims for abuse of process.  Plaintiffs argue that the blurring of Mr. Arnold's roles as advocate and witness created an unfair trial.

The Court disagrees.  As an initial matter, the Court observes that the cases Plaintiffs cite in support of their position deal with whether an attorney should be *disqualified* from representing a party in a case in which the attorney is a witness.  *See Jones v. City of Chicago*, 610 F. Supp. 350 (N.D. Ill. 1984); *General Mill Supply Co. v. Rotenberg*, 697 F.2d 704 (6th Cir. 1982).  Plaintiffs did not move to disqualify Mr. Arnold; they merely sought to exclude his testimony and argue now that allowing him to testify was error.  But as this Court previously ruled:

11

> Ohio's Code of Professional Conduct "'does not delineate rules of evidence but only sets forth strictures on attorney conduct.'" *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St. 3d 256, 258, 510 N.E. 2d 379 (Ohio 1987) (quoting *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 539 (3d Cir. 1976)). Thus, an attorney's testimony is not rendered inadmissible by the ethics rule. *Id.* The Court therefore cannot exclude Mr. Arnold's testimony simply because he is trial counsel for Defendant Prosper. *See BSW Dev. Group v. City of Dayton*, No. C-3-93-438, 1995 U.S. Dist. LEXIS 22183, at *10 (S.D. Ohio Sept. 13, 1995).

(Opinion and Order, ECF No. 259 at PageID# 13054.)

Plaintiffs argue now that allowing Mr. Arnold to testify was confusing and prejudicial under Fed. R. Evid. 403 because of the "blending" of his roles as advocate and witness. The Court disagrees, in part because his testimony was highly relevant to Defendants' abuse of process claim. Mr. Arnold and Mr. Cochran were the *only* parties to the alleged conversations that formed the basis for Defendants' abuse of process counterclaims. To preclude Mr. Arnold from testifying as a witness would have unduly undermined Defendants' ability to prove their counterclaims at trial.

Weighed against the highly probative nature of Mr. Arnold's testimony in this instance, the Court does not find that the "blending" of his attorney and witness roles was unfairly prejudicial to Plaintiffs. The jury was specifically instructed to treat Mr. Arnold's testimony as a witness the same as the testimony of any other witness; the jury was not to give Mr. Arnold's testimony any greater or lesser weight because of his role as an attorney in this case. (Final Jury Instructions, ECF No. 285 at PageID# 14071.) Given the Court's instruction to the jury, the Court does not find any undue prejudice that would warrant exclusion of Mr. Arnold's testimony under Fed. R. Evid. 403.

12

Plaintiffs also argue that Mr. Arnold's testimony should have been excluded under Fed. R. Evid. 408, which bars evidence of statements made during settlement negotiations. But Rule 408 prohibits only the admissibility of any conduct or statement made in settlement negotiations *to prove or disprove the validity or amount of a disputed claim*. Defendants did not use evidence of Mr. Cochran's statements to prove or disprove the validity or amount of a disputed claim in this case. Rather, Defendants offered Mr. Arnold's testimony about Mr. Cochran's statements to demonstrate the ulterior motive underlying this lawsuit, namely, the alleged motive of trying to leverage more favorable terms in a settlement of a state-court lawsuit. Accordingly, Rule 408 was not implicated by Mr. Arnold's testimony.

Nor is the Court persuaded by Plaintiffs' argument that Mr. Arnold's testimony about Mr. Cochran was inadmissible hearsay under Fed. R. Evid. 802. The record does not indicate that Plaintiffs objected to Mr. Arnold's testimony on this ground, thereby forfeiting any alleged error with regard to the admission of hearsay. Even if Plaintiffs had raised this objection, however, it is not well taken. Mr. Arnold's testimony about what Mr. Cochran said was a non-hearsay party admission. *See* Fed. R. Evid. 801(d)(2)(C) and (D); *see also Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986) (noting that statements made by an attorney concerning a matter within his employment are admissible against the party retaining the attorney). And even if not a party admission, Defendants did not offer the testimony about Mr. Cochran's statements for the truth of the matters asserted therein; rather, Defendants offered them for the non-hearsay purpose of establishing Penn's improper ulterior motive for bringing this lawsuit.

For these reasons, the Court finds no error with respect to allowing Mr. Arnold to testify

13

in this case. Accordingly, the Court's allowance of Mr. Arnold to testify cannot form the basis for granting a new trial under Fed. R. Civ. P. 59(a).

### B. *Evidentiary Rulings*

Plaintiffs also contend that certain evidentiary rulings by this Court were erroneous and caused an unfair trial. As to all of the evidence challenged, Plaintiffs argue that the evidence was inadmissible under Fed. R. Evid. 403, as being "highly prejudicial, irrelevant and cumulative." (Pls.' Mot., ECF No. 309 at PageID# 17639.) The Court finds none of these arguments persuasive, much less a valid basis for overturning the jury's verdict and granting a new trial.

#### 1. The Dismissed RICO Claim

Plaintiffs first argue that it was error for the Court to allow evidence of the "dismissed RICO claim that was not before the Court." (*Id.* at PageID# 17640.) Mr. Arnold testified that the original complaint in this case (filed against Defendants as well as Mr. Arnold and his law firm) included a claim under the federal Racketeer Influenced and Corrupt Organizations Act, a statute usually reserved "for gangsters and organized crime." Plaintiffs argue that allowing this testimony created the "clear misimpression" that this suit had been wrongfully filed even though the parties stipulated for purposes of trial that Plaintiffs had probable cause to bring this lawsuit. (*Id.*)

The Court rejects Plaintiffs' argument. Before trial, the Court denied Plaintiffs' motion in limine seeking to exclude references to the dismissed RICO claim. The Court ruled:

> Penn's filing of a RICO claim in this matter is probative of Defendants' theory of abuse of process liability. The inclusion of a RICO claim in the Complaint is relevant to Defendants' allegation that Penn brought the instant lawsuit with the improper ulterior purposes of (1) leveraging a more favorable settlement of an

14

> action then pending in state court and (2) seeking to disqualify Prosper's trial attorney and his law firm from representing Prosper in this action. Even indulging Penn's argument that mere mention of the RICO claim is "prejudicial," the Court does not view such evidence as unfairly prejudicial for purposes of Fed. R. Evid. 403.

(Opinion and Order, ECF No. 255 at PageID# 12991.)

Having heard the testimony about the RICO claim in the context of the trial, the Court views the issue no differently now than it did then. Given the parties' stipulation that there was "probable cause" to bring the lawsuit, Plaintiffs had powerful fodder for cross-examination and argument to blunt the so-called "misimpression" that this suit was wrongfully filed.

Nor is the Court persuaded by Plaintiffs' argument that the admission of the evidence regarding the RICO claim was unfairly prejudicial due to this Court's exclusion of evidence that the Court previously denied Defendant's request for sanctions under Fed. R. Civ. P. 11 with respect to the filing of the RICO claim. As this Court previously explained, "failing to find an 'improper purpose' behind this lawsuit for purposes of Rule 11 sanctions does not prevent Defendants from demonstrating to a trier of fact that Penn brought this lawsuit with an ulterior motive for purposes of an abuse of process claim." (Opinion and Order, ECF No. 254 at PageID# 12985.) Allowing evidence of the Court's denial of Rule 11 sanctions had the potential of confusing the jury, given the differing standards involved for Rule 11 sanctions versus an abuse of process claim. Moreover, the evidence of the denial of sanctions was unnecessary, as the parties had stipulated for trial purposes that Penn brought this lawsuit with probable cause.

## 2. Issues from the Rimstidt Arbitration

Plaintiffs also argue that the Court impermissibly allowed Defendants to present testimony concerning (1) Penn being a "spammer" in 2003, (2) Penn's subscriber network having been "misrepresented," failed, or denied to Defendants in 2003, and (3) Penn sending misleading e-mails under the banner "Dear Kohl's Shopper" in 2004. (Pls.' Mot., ECF No. 309 at PageID# 17641.)  Plaintiffs argue that these issues had been previously litigated and resolved in Penn's favor during previous arbitration proceedings before Arbitrator Rimstidt.

The Court disagrees with Plaintiffs that this evidence lacked relevance.  Just because Arbitrator Rimstidt resolved these issues in Plaintiffs' favor does not mean that Defendants should have been foreclosed from presenting evidence about them during the trial.  Plaintiffs alleged breach of fiduciary duty against Defendants and presented evidence concerning Defendants' efforts over the years to exclude Penn from the management decisions of Big Research (the "freeze out" as Plaintiffs referred to it repeatedly during trial).  Defendants were entitled to present evidence regarding the reasons they took certain actions that Plaintiffs characterized as nefarious attempts to "freeze out" Penn from the operation of BigResearch.  The fact that the arbitrator found that Prosper's reasons for excluding Penn were not factually correct was powerful cross-examination and argument material for Plaintiffs.  Accordingly, the Court finds no unfair prejudice that would outweigh the probative value of the evidence under Fed. R. Evid. 403.

### 3. Stephen Denari

Plaintiffs also complain that Defendants were allowed to present evidence regarding one Stephen Denari, who was formerly associated with Plaintiff Penn. Defendants presented, over objection, testimony that Denari was involved in an unspecified scheme to extort President Clinton, that Denari was litigious, that Denari may have been linked to organized crime, and that Denari was sued in connection with an alleged Ponzi scheme.

The Court disagrees with Plaintiffs.  In the context of trial, the Court finds that the testimony about Denari had relevance.  Plaintiffs' witnesses testified at length about Penn being frozen out of the operation of Big Research and intimated that Prosper orchestrated the series of transactions that led to Prosper becoming the majority shareholder of Big Research.  The Denari evidence was relevant to place in context what the members of Big Research knew of Denari at the time.  Such evidence helped to inform Defendants' reasons for wanting to sever their business relationship with Penn and the animosity that developed between Penn and Defendants.   Defendants were wary of Penn's association with Denari and it was proper for Defendants to introduce evidence as to the reasons why. Plaintiffs had ample opportunity to cross-examine Defendants' witnesses regarding Denari's background and whether Defendants' stated concerns about Penn's association with Denari was legitimate.  Viewing the three-week trial as a whole, the Court cannot say that the evidence concerning Denari's background affected the outcome of the trial.

For the foregoing reasons, the Court rejects Plaintiffs' arguments regarding the admission

17

of evidence.  A new trial is not warranted.

## IV.

The Court **DENIES** Plaintiffs' motion for judgment as a matter of law or, in the alternative, for a new trial (ECF No. 309).  The Court finds no basis upon which to overturn the verdict of the jury in this case.  Accordingly, the Court instructs the Clerk to enter judgment in this action in accordance with the jury's verdict.

**IT IS SO ORDERED**.

 /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE