# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: January 23, 2015

Mr. James E. Arnold

Mr. Carl A. Aveni II

Mr. Damion M. Clifford

Mr. Gerhardt A. Gosnell II

Mr. H. Ritchey Hollenbaugh

Ms. Maria Mariano Guthrie

Re: Case No. 14-3107, *Penn, LLC, et al v. Prosper Business Dev. Corp., et al*
Originating Case No. : 2:10-cv-00993

Dear Counsel:

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Amy E. Gigliotti
Case Manager
Direct Dial No. 513-564-7012

cc: Mr. John P. Hehman

Enclosure

Mandate to issue

<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

File Name: 15a0073n.06

Case No. 14-3107

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

<div style="border:1px solid black;">

**FILED**

Jan 23, 2015

DEBORAH S. HUNT, Clerk

</div>

| | | |
|---|---|---|
| PENN, LLC; BIGRESEARCH, LLC, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| PROSPER BUSINESS DEVELOPMENT | ) | OHIO |
| CORPORATION; PROSPER | ) | |
| TECHNOLOGIES, LLC; PHIL RIST; GARY | ) | |
| DRENIK; JAMES E. ARNOLD & | ) | |
| ASSOCIATES; JAMES E. ARNOLD, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: MOORE and COOK, Circuit Judges; STEEH, District Judge.[*]

COOK, Circuit Judge. A lengthy arbitration and a series of state lawsuits over the management and dissolution of Plaintiff-Appellant BIGresearch, LLC, the joint venture of Plaintiff-Appellant Penn, LLC and Defendant-Appellee Prosper Business Development Corporation, culminated in this civil action. Penn sued Prosper for, among other things, breaching its fiduciary duty as BIGresearch's managing entity and majority stakeholder. Prosper asserted counterclaims of its own, including one for abuse of process. After three years of motion practice and a sixteen-day jury trial, the district court entered judgment in favor of

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

Prosper on Penn's conversion, unjust enrichment, and breach of fiduciary duty claims as well as Prosper's abuse of process counterclaim. Penn filed a post-trial motion for judgment as a matter of law or, alternatively, a new trial, which the district court denied. Penn appeals, challenging three of the district court's adverse rulings on the parties' motions for judgment as a matter of law and a handful of evidentiary and procedural rulings that Penn claims warrant a new trial. For the following reasons, we REVERSE in part and AFFIRM in part the district court's judgment.

I.

In October 2000, Penn and Prosper formed BIGresearch, a Delaware limited liability company dedicated to consumer research. BIGresearch's board consisted of three individuals: one representative of Penn and two representatives of Prosper. Although Penn and Prosper each owned 50% of BIGresearch at the time of formation, BIGresearch later sold a 5.22% stake to outside investors, leaving Penn and Prosper each with a 47.39% ownership interest. Prosper later purchased many of these outside investors' shares and obtained a 50.71% majority stake in BIGresearch.

By 2004, the relationship had soured. Prosper used its majority-owner authority to pass resolutions removing Penn's representative from the board and divesting Penn of its membership in BIGresearch. Penn challenged the legality of Prosper's "freeze out" and demanded arbitration. In September 2008, the arbitrator ruled against Prosper, invalidating the offending resolutions and appointing a special master to determine the amount in distributions Penn's shares would have earned during the "freeze-out" years.

Although the arbitrator restored Penn's membership and seat on BIGresearch's board, Prosper's owners still occupied the other two board positions. And in December 2009, while the special master was preparing his report, the Prosper-controlled board voted to dissolve

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

BIGresearch.  Penn responded by seeking to enjoin BIGresearch's dissolution in an Ohio court.
In December 2011, the state court decided that Prosper properly dissolved BIGresearch and
granted partial summary judgment to Prosper and BIGresearch.  Penn voluntarily withdrew its
remaining claims the following month.

Meanwhile, the arbitrator charged with determining the amount of loss Penn suffered
from the "freeze-out" adopted the special master's recommendation in May 2010 and ordered
BIGresearch to pay Penn $1,488,000.  The award equaled the total distributions that Prosper
received from BIGresearch between 2001 and 2008.  The arbitrator's decision prompted
BIGresearch—under the direction of Prosper—to file its own Ohio action seeking modification
of the award.

In the midst of these arbitral and state-court proceedings, the parties discussed a global
settlement.  In late July 2010, Defendant-Appellee James E. Arnold, Prosper's attorney in the
pending state and arbitral proceedings, extended a settlement offer to Richard Cochran, the
Illinois-based attorney representing Penn in the arbitration.  Prosper offered to pay Penn the
value of BIGresearch's assets calculated after dissolution, then estimated at $1.25–$1.5 million,
in exchange for a release from all liability.  Penn countered at $1.75 million to settle all claims,
which Prosper rejected.

Weeks later, Cochran telephoned Arnold to both remind him of Penn's $1.75 million
settlement offer and to inform Arnold that Penn intended to file a new complaint against
Prosper—the action on appeal—unless it accepted the proposal.

Two weeks later, Cochran reiterated Penn's settlement offer, this time adding the
unwelcome specter of including Arnold and his firm, Defendant-Appellee James E. Arnold &

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

Associates, as co-defendants in the intended federal complaint unless Prosper agreed to Penn's global settlement offer.

A month after this third settlement conversation, the court presiding over Prosper's lawsuit seeking modification found that the arbitrator's award violated Delaware law because compliance would render BIGresearch insolvent.  The court issued a judgment modifying the award and ordered Prosper to return $777,917.13 to BIGresearch for redistribution to Penn as a "true up."  Prosper promptly repaid BIGresearch, which redistributed the money to Penn.

Four days after the state court's judgment, Penn filed the instant action on its own behalf and derivatively on behalf of BIGresearch.[1]  Penn alleged RICO violations, fraud, conversion, unjust enrichment, and breach of fiduciary duty against Prosper, its principals, Arnold, and his firm.

After filing the federal action, Cochran again called Arnold to discuss settlement.  In light of the $777,917.13 "true up" from BIGresearch, Penn offered to accept the assets of BIGresearch after dissolution—then estimated at approximately $900,000—in exchange for a global release.  As Arnold recalls the conversation, Cochran stated that "he was doing [Arnold] a favor by trying to get this case settled."  (R. 303-1, Trial Tr. at 223.)  But Arnold refused the offer because it "wasn't materially different from what [Cochran had] already demanded on behalf of Penn" and because global resolution "was not possible" with Penn "having now sued [Arnold] and [his] firm."  (*Id.*)

Prosper responded to Penn's overture by filing counterclaims for breach of fiduciary duty and abuse of process.  And all the defendants moved to dismiss Penn's complaint.  Six months

---

[1]Although Penn named BIGresearch as a plaintiff, the company on whose behalf an investor sues typically joins the derivative action as a nominal defendant. *See Ross v. Bernhard*, 396 U.S. 531, 538 (1970).

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

later, the district court dismissed all Penn's claims against Arnold and his firm as well as the RICO and fraud claims against Prosper.[2]  Then, after more than two years of contentious discovery and motion practice, the remaining claims and counterclaims went to trial.

At the close of evidence, the district court granted Prosper's motion for judgment as a matter of law on Penn's conversion and unjust enrichment claims.  It denied Penn's motion for judgment as a matter of law on Prosper's abuse of process counterclaim, but granted judgment to Penn on Prosper's breach of fiduciary duty counterclaim.

This left Penn's breach of fiduciary duty claim and Prosper's abuse of process counterclaim for the jury to resolve.  The jury returned a verdict in favor of Prosper on both claims and awarded Prosper and its owners $1.25 million in compensatory and punitive damages.  Post-trial, Penn renewed its motion for judgment as a matter of law and, in the alternative, requested a new trial.  The district court denied Penn's motions and entered judgment on the jury's verdict.  This appeal followed.

Penn challenges the district court's rulings: (1) denying Penn's motion and renewed motion for judgment as a matter of law on Prosper's abuse of process counterclaim; (2) granting Prosper's motion for judgment as a matter of law on Penn's conversion and unjust enrichment claims; and (3) denying Penn's motion for a new trial.

II.

When reviewing the grant or denial of judgment as a matter of law on state claims, "[l]egal determinations . . . will always be reviewed *de novo*," but "[q]uestions of evidence sufficiency will be reviewed as the forum state would review them."  *K & T Enters., Inc. v.*

---

[2]Penn also sued Prosper Technologies, LLC, another company owned by Prosper's principals.  The court dismissed Prosper Technologies from the action on October 20, 2011.

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

*Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996). Under Ohio law, "the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied." *Posin v. A. B. C. Motor Court Hotel, Inc.*, 344 N.E.2d 334, 338 (Ohio 1976).

A.    *Prosper's Abuse of Process Counterclaim*

The parties agree that Ohio law governs Prosper's abuse of process counterclaim, which requires proof of three elements: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994). Penn challenges the district court's ruling that Prosper presented evidence "of an attempt to accomplish an ulterior purpose" sufficient to sustain the judgment.

At trial, Prosper primarily argued that "Penn had an ulterior collateral purpose in filing this lawsuit, namely, as a bargaining chip to extract a more favorable settlement in the Ohio state court actions—specifically, to recoup the arbitration award that the state court cut in half." (Prosper's Br. at 27; *see also* R. 315, JMOL Order at 5–7.) To support its theory of liability, Prosper relied on Arnold's testimony regarding settlement negotiations. Penn moved for judgment as a matter of law, contending that none of Prosper's evidence supported the theory that Penn's filing suit and global settlement offers were designed to pursue a collateral advantage.

The district court rejected Penn's challenge, reasoning:

- 6 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

> [T]he evidence at trial led to the reasonable conclusion that Plaintiff Penn instituted this lawsuit with the ulterior motive of using it as a bargaining chip to extract a more favorable settlement in the *Ohio state court* action arising from the parties' prior arbitration. This Court was, of course, powerless to itself make any order with respect to the confirmation of the arbitration award, much less the amount of the award.

(R. 315, JMOL Order at 6.) Based on Arnold's testimony, the court found that "the jury could have reasonably found that Mr. Cochran was pursuing not a 'global' settlement but, in actuality, was leveraging this case to obtain a more favorable resolution of the state court and arbitration proceedings between the parties—a collateral objective." (*Id.* at 7.) We disagree.

A defendant's "improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996) (quoting W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 121 (5th ed. 1984)). "Generally, if a suit is instituted in an attempt to settle a case, there is no abuse of process." *Luciani v. Schiavone*, 210 F.3d 372, at *4 (6th Cir. 2000) (table); *see also Edward D. Jones & Co., L.P. v. Wentz*, No. 23535, 2007 WL 1827628, at *3 (Ohio Ct. App. June 27, 2007) ("[A]s the public policy of this State unquestionably encourages settlement negotiations, Cambridge's position that any such demand subjects a party to an abuse of process claim is untenable."); *Tilberry v. McIntyre*, 733 N.E.2d 636, 644 (Ohio Ct. App. 1999) ("[A] threat to pursue a civil action, even if the action would be entirely frivolous or brought in bad faith, does not constitute extortion."). But the general rule that a party does not commit abuse of process by instituting a suit in an attempt to settle "does not apply if the attempt . . . involves issues that are not properly before the court." *Luciani*, 210 F.3d 372, at *4; *see also Robb*, 662 N.E.2d at 14 ("Simply, abuse of process occurs where someone attempts to achieve

- 7 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

through use of the court that which the court is itself powerless to order."); *Edward D. Jones*, 2007 WL 1827628, at *4 ("[W]e cannot say that Jones' settlement demands constituted a perversion of the legal process. Rather, each of the demands made by Jones was properly tied to the subject matter of its initial lawsuit.").

*Luciani* provides an example of when filing suit in an attempt to settle comes within the narrow exception supporting abuse of process liability. The Lucianis married in Ohio, but later moved to New Mexico. *Luciani*, 210 F.3d 372, at *1. After the marriage deteriorated, Mrs. Luciani filed for divorce in New Mexico and presented her husband with a divorce proposal that he rejected. *Id.* at *1–3. She later dismissed the New Mexico action, returned to Ohio with the children, and filed a complaint seeking separation, child custody, and distribution of the marital assets. Ohio courts, however, lacked jurisdiction over child custody and the distribution of marital assets until Mrs. Luciani resided in the state for six months. Mrs. Luciani then acquiesced to New Mexico's jurisdiction. *Id.* Upon finalization, Dr. Luciani sued Mrs. Luciani's Ohio attorney for abuse of process. *Id.* at *3–4. We found "that there [was] a genuine issue of material fact whether [the attorney] was trying to settle issues that were not properly before the court or to force Dr. Luciani to acquiesce in the Ohio court's jurisdiction." *Id.* at *4. And we concluded that a jury reasonably could find that the attorney "was using the Ohio action as a bargaining chip to obtain a custody arrangement and property settlement that the Ohio court had no power to order." *Id.* at *6.

The district court here relied on *Luciani* in finding that Prosper presented sufficient evidence for the jury to conclude that Penn filed the federal action in an attempt to settle claims not properly before the court—*i.e.*, the state-court dispute over the arbitration award. But because the *Luciani* complaint included two forms of relief the court could not grant, the cases

- 8 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

are distinguishable.  Thus, the jury could find that the attorney filed the complaint in an attempt to pressure Dr. Luciani to settle these two issues on terms favorable to his client rather than with the intent to prosecute the Ohio divorce action to completion.

Conversely, Penn's action never asked the court to reach beyond its authority.  Penn requested money damages in a tort action that Prosper concedes Penn had probable cause to file. (R. 307, Trial Tr. at 25.)  No one disputes that Penn could assert its claims or that the district court could order Prosper to pay damages in the event that Penn prevailed.  *See Robb*, 662 N.E.2d at 14; *Kavlich v. Hildebrand*, No. 91489, 2009 WL 625725, at *4 (Ohio Ct. App. Mar. 12, 2009) (holding that a defendant's decision to file a counterclaim was "a legitimate objective under the law, despite the fact that any money damages that [the defendant] obtained thereby might be offset from [the] plaintiff's collection case"); *Havens-Tobias v. Eagle*, No. 19562, 2003 WL 1601461, at *5 (Ohio Ct. App. Mar. 28, 2003) (holding the plaintiffs failed to state an abuse of process claim where "the court had the power to order them to pay a monetary award").

This case instead falls within the general rule that filing suit in an attempt to settle does not constitute an abuse of process.  Before filing the federal action, Cochran warned Arnold that Penn had colorable claims it could still bring against Prosper unless the parties agreed to settle all claims for $1.75 million.  When Prosper rejected the offer, Penn followed through and asserted its remaining claims in an attempt to achieve a global settlement on the same terms it offered before filing suit.  *See Knief v. Minnich*, 658 N.E.2d 1072, 1074 (Ohio Ct. App. 1995) (holding that an "unreasonably high" settlement demand following a restraining order failed to raise a factual dispute over ulterior purpose because the defendant could show "a reasonable belief" that the restraining order was necessary to protect his client's assets).  Moreover, Penn's post-filing offer of $900,000 from BIGresearch's assets "was properly tied to the subject matter of [this]

- 9 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

lawsuit." *Edward D. Jones*, 2007 WL 1827628, at *3–4 (citing *Robb*, 662 N.E.2d at 14) (holding that even a settlement demand extending "beyond the relief requested in the complaint" failed to demonstrate an ulterior purpose because it related to a prior, related lawsuit). Prosper fails to demonstrate how the jury could reasonably find that Penn sought to achieve a collateral objective when it asserted viable claims, requested appropriate relief, then offered to release all related claims in exchange for a portion of its requested damages.

In the alternative, Prosper argues that the jury could find Penn instituted this action as part of an ongoing effort to disqualify Arnold from representing Prosper in federal proceedings. In support, Prosper points to evidence that: (1) in 2009, Penn sought to disqualify Arnold's firm from representing Prosper in arbitration proceedings (R. 305, Trial Tr. at 45), and (2) "Penn's attorney demanded Arnold withdraw from representing [BIGresearch] in . . . the pending state court matters[] because she 'represented' [BIGresearch] derivatively in this lawsuit" (Prosper's Br. at 29).

Prosper's second theory of liability also fails. To the extent Prosper complains that Penn sought to disqualify Arnold from representing it in *this* action, Penn's actions were not collateral to the proceedings. *See Robb*, 662 N.E.2d at 14; *cf. Wolfe v. Little*, No. 18718, 2001 WL 427408, at *4–5 (Ohio Ct. App. Apr. 27, 2001) (holding that strategically filing a false affidavit and conducting improper ex parte communications failed to satisfy the ulterior purpose element because the defendants "were acting to advance the interests of their client and succeed in the lawsuit"). If Prosper means to argue that Penn intended to disqualify Arnold from representing Prosper in *other* pending actions, Prosper failed to adduce evidence sufficient to raise a genuine dispute of fact. Penn never moved to disqualify Arnold in any action after filing the federal lawsuit. As such, Prosper cannot establish a perversion of the federal action because Penn never

- 10 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

"attempt[ed] to accomplish" its alleged ulterior purpose. *See Yaklevich*, 626 N.E.2d at 118. The court cannot punish Penn for a bad intention never acted upon. *Id.* at 118 n.2. The fact that Penn's attorney demanded by phone that Arnold withdraw from representing BIGresearch in the state proceedings might support an abuse of process claim by BIGresearch or Arnold. But Prosper fails to explain how the demand injured it.

Finally, Prosper argues that "Penn's ulterior purpose could also be inferred from the nature of Penn's Complaint itself, which included highly inflammatory RICO and Fraud claims against [Prosper] and Mr. Arnold." (Prosper's Br. at 28.) But Prosper stipulated that Penn had probable cause to bring RICO and fraud claims against it, "inflammatory" or otherwise. (R. 307, Trial Tr. at 25.) And Prosper nowhere articulates how Penn's claims against Arnold support its own abuse of process claim beyond the disqualification theory rejected above. In short, the evidence does not support the judgment, and the district court should have granted judgment as a matter of law. Accordingly, we REVERSE the judgment with respect to Prosper's abuse of process counterclaim.

B.    *Conversion & Unjust Enrichment Claims*

Penn next challenges the district court's grant of judgment as a matter of law to Prosper on Penn's conversion and unjust enrichment claims. The parties agree that Delaware law, under which they formed BIGresearch, governs both of Penn's claims.

1.    *Conversion*

The district court granted judgment as a matter of law on Penn's conversion claim, finding that the claim could not proceed to the jury "as a result of the failure of evidence with regard to the . . . value of the specific assets" at the time of the alleged conversion. (R. 303-1, Trial Tr. at 191.)

- 11 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

Penn contends that the district court's ruling "was utterly irreconcilable with [Penn's] theory of recovery . . . throughout the entire case," which was "that BIGresearch had value as a going concern that was separate and substantially greater than any particular aggregate of individual assets." (Penn's Br. at 56.) Penn asserts that it presented evidence showing that Prosper "took all of BIGresearch . . . [and] continu[ed] to operate the entirety of the same business—albeit under a new entity and without Penn, [and so] the measure of damages for [Prosper's] conversion was the value of BIGresearch as a whole." (*Id.* at 56–57.) In support, Penn directs the court to testimony by Penn's principal member that BIGresearch would have been worth $13.9 million if Prosper had sold the company as a "going concern" in 2009, thus entitling Penn to its share of that sales price.

Although the district court earlier ruled that the question of "[w]hether the 'going concern' value is a proper measure of [Penn's] damages is an issue for the jury to resolve at trial" (R. 254, Summ. J. Order at 4, ID 12975), it reversed course after hearing all the evidence because it recognized that Penn's "going concern" theory failed to distinguish between the value of tangible, convertible assets and intangible, nonconvertible assets (*see* R. 303-1, Trial Tr. at 191). Under Delaware law, one cannot convert intangible assets unless "the intangible property relations are merged into a document," such as a plan, design, or specification. *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 439 (D. Del. 1999). Nor will the tort "lie to enforce a claim for the payment of money . . . [except] where there is an obligation to return the identical money delivered by the plaintiff to the defendant." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 890 (Del. Ch. 2009) (internal citations and punctuation omitted).

Penn's valuation of BIGresearch as a "going concern" admittedly incorporated intangible, nonconvertible assets such as BIGresearch's "business model, customer base,

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

employees, and name." (Penn's Br. at 56.) And Penn offered no means for the jury to disentangle tangible and intangible assets in its valuation of BIGresearch as a "going concern." As the district court pointed out, BIGresearch's value as a "going concern" was only relevant "as a comparison to any asset valuation" in determining "whether or not that asset valuation [was] reasonable." (R. 303-1, Trial Tr. at 193.) Penn's failure to present evidence of the value of individual, tangible assets rendered BIGresearch's "going concern" value a meaningless benchmark with respect to its conversion claim. Penn failed to adduce evidence of cognizable damages because Prosper could not, as a matter of law, steal BIGresearch as a "going concern." We therefore AFFIRM the district court's grant of judgment as a matter of law on Penn's conversion claim.

> 2. *Unjust Enrichment*

Penn also argues that the district court erred in granting judgment as a matter of law to Prosper on Penn's unjust enrichment claim. But even if Penn is correct, the error ultimately proved harmless. *Cf. Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 491 (6th Cir. 1995) (holding harmless an erroneous grant of judgment on willfulness because jury found against plaintiff on the underlying claim).

Delaware defines "[u]njust enrichment [as] the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citation and internal quotation marks omitted). Prosper argues that Penn predicated its unjust enrichment claim on the same wrongful conduct underpinning its breach of fiduciary duty claim. Prosper reasons, therefore, that Penn's failure to convince the jury that Prosper breached its fiduciary duties also dooms Penn's unjust enrichment claim.

- 13 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

We agree.  Penn's breach of fiduciary duty and unjust enrichment claims require Penn to prove the same set of facts.  The complaint asserts unjust enrichment on the ground that Prosper "and Others have acted in concert to deprive [BIGresearch] and thereby its member Penn from benefitting from the business opportunities, trade secrets, clients, assets, funds, documents, records, metadata and information of [BIGresearch]."  (R. 2, Compl. ¶ 138.)  A few paragraphs later, Penn complains that Prosper and others "breached their fiduciary duties to Plaintiffs and engaged in self-dealing by willfully and wrongfully . . . [d]iverting [intellectual property] as well as its sales and revenues from [BIGresearch] to Prosper, . . . [and t]ransferring the confidential trade secrets, clients and business opportunities of [BIGresearch] to Prosper."  (*Id.* at ¶ 148.g–h.)  In short, "[t]he theory of liability for [Penn's] unjust enrichment claim is that the members of [Prosper] improperly enriched themselves at the expense of [BIGresearch's] minority stockholders.  The exact same theory, . . . couched in fiduciary duty terms, forms the basis of [Penn's] fiduciary duty claim against [Prosper]."  *Frank v. Elgamal*, No. 6120-VCN, 2014 WL 957550, at *31 (Del. Ch. Mar. 10, 2014); *see also In re Nine Sys. Corp. S'holders Litig.*, No. 3940-VCN, 2014 WL 4383127, at *49 (Del. Ch. Sept. 4, 2014) (holding the plaintiffs' breach of fiduciary duty and unjust enrichment claims duplicative under similar circumstances); *cf. McPadden v. Sidhu*, 964 A.2d 1262, 1276 (Del. Ch. 2008) (explaining that even if the claims were duplicative, the plaintiff could elect its remedy if it prevailed).

Because Penn's unjust enrichment claim rises and falls with its breach of fiduciary duty claim, and—as discussed in the following sections—Penn fails to persuade us that the jury reached its verdict on the basis of improperly admitted evidence, we AFFIRM the district court's judgment with respect to Penn's unjust enrichment claim.

- 14 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

<div style="text-align:center">III.</div>

Penn challenges several of the district court's evidentiary rulings, arguing that these errors made it impossible for Penn to get a fair hearing on its breach of fiduciary duty claim. We review the district court's evidentiary rulings for abuse of discretion. *United States v. Morales*, 687 F.3d 697, 701 (6th Cir. 2012). "An abuse of discretion exists if we are firmly convinced that the district court made a mistake in admitting challenged evidence." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 797 (6th Cir. 2007). But even where we conclude that the district court abused its discretion, we "vacate a jury verdict [only] where the error so altered the total mix of information submitted to the jury that it was substantially likely to have affected the verdict." *Id.* at 804; *see also Barnes v. City of Cincinnati*, 401 F.3d 729, 743 (6th Cir. 2005) (reviewing district court's denial of a new trial for abuse of discretion). Moreover, the cumulative effect of several erroneous rulings may constitute reversible error where no single one would undermine our "fair assurance" in the verdict. *Beck v. Haik*, 377 F.3d 624, 645 (6th Cir. 2004) ("Since a jury reaches its verdict in light of the evidence as a whole, it makes no sense to try to analyze errors in artificial isolation, when deciding whether they were harmless."), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009).

Penn asserts that the district court abused its discretion in admitting several pieces of evidence where the danger of "unfair prejudice, confusing the issues, [and] misleading the jury" substantially outweighed the probative value. *See* Fed. R. Evid. 403. Specifically, Penn points to: (1) evidence that Penn employed unfair business practices; (2) an email to BIGresearch's members alleging a number of misdeeds by Stephen Denari, Penn's former member; and

<div style="text-align:center">- 15 -</div>

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

(3) Arnold's testimony concerning Penn's dismissed RICO claims against him and his firm.[3] Penn argues that the cumulative effect of this evidence made a fair hearing "impossible."

A.    *Allegations of Penn's Pre-Arbitration Misconduct*

Penn objects to Prosper's evidence that: "(1) Penn was a 'spammer' in 2003; (2) Penn's [advertising] network had been misrepresented, had failed[,] or been denied to [Prosper] in 2003; and [(3)] that Penn had sent misleading e-mails under the banner 'Dear Kohl's Shopper' in 2004." (Penn's Br. at 48–49.)  The district court admitted this evidence to show Prosper's motivation for engineering Penn's removal from BIGresearch in 2004, later explaining that "[Prosper was] entitled to present evidence regarding the reasons [it] took certain actions that [Penn] characterized as nefarious attempts to 'freeze out' Penn from the operation of [BIGresearch]." (R. 315, JMOL Order at 16.)

We cannot determine whether this argument has any merit.  Even if Penn persuaded us that the district court erred in admitting this type of evidence under any circumstances, we still could not ascertain whether its admission affected the jury's verdict without knowing the exact nature of the challenged evidence and the context in which Prosper presented it.  *Cf. Stockman*, 480 F.3d at 804; *Rush v. Ill. Cent. R. Co.*, 399 F.3d 705, 723–24 (6th Cir. 2005) (demonstrating

---

[3]Penn also objects to the evidence of Prosper's damages and the decision permitting Arnold to testify.  Although Penn presents these challenges in the section titled: "The Trial Court's Cumulative Evidentiary Errors Created An Unlevel Playing Field At Trial" (Penn's Br. at 29), its arguments focus solely on how these rulings disadvantaged it in defending against Prosper's abuse of process counterclaim (*see id.* at 38, 40, 43–44).  We need not address the merits of these objections in that context because we reverse the judgment on legal grounds with respect to Prosper's counterclaim.  Nor do we consider the merits of these challenges in analyzing whether Penn deserves a new trial.  Penn concedes that Arnold's testimony "pertained to the issues in play" (*id.* at 30), and Penn fails to explain how the district court's rulings on evidence related to Prosper's abuse of process counterclaim prejudiced the jury against Penn on *its own* breach of fiduciary duty claim.  *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . ." (citation omitted)).

- 16 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

the fact-specific nature of the prejudice inquiry).  Penn neglects to direct us to the portions of the

trial record describing the evidence in question and how Prosper presented it to the jury.  Instead,

Penn cites only the arguments from its own motion *in limine* to demonstrate that the district court

abused its discretion by admitting all similar evidence at trial.  We decline to comb through the

sixteen-day trial record on Penn's behalf.  *See Emerson v. Novartis Pharm. Corp.*, 446 F. App'x

733, 736 (6th Cir. 2011) ("'Judges are not like pigs, hunting for truffles' that might be buried in

the record." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

B.    *Stephen Denari*

        Second, Penn challenges the district court's admission of evidence concerning Stephen

Denari, a former member of Penn and its designee on the BIGresearch board between September

2008 and November 2009.  Penn complains that "the jury was allowed to hear that Mr. Denari

was involved in unspecified extortion schemes pertaining to 'President Clinton's illegitimate

black baby,' as well as that he was 'highly litigious,' was 'associated with organized crime' and

was sued in connection with a supposed Ponzi scheme."  (Penn's Br. at 49.)  Penn argues that

Prosper used these statements about Denari's past to "malign [Penn's] character through . . .

association."  (*Id.* at 50.)

        Penn suggests that the evidence of Denari's past and his reputation among BIGresearch's

members had little probative value because the district court admitted it merely as "background"

or "context."  Although the court justified admission in part because "[s]uch evidence helped to

inform [Prosper's] reasons for wanting to sever [its] business relations with Penn and the

animosity that developed between Penn and [Prosper]" (R. 315, JMOL Order at 17), the court

also found the evidence probative of several material questions of fact.  As Penn even concedes

(Penn's Br. at 50), the evidence supported Prosper's breach of fiduciary duty counterclaim based

- 17 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

on the theory that Penn designated Denari as its representative on the BIGresearch board in order to disrupt operations and coerce Prosper into buying out Penn's shares.  (R. 315, JMOL Order at 17; *see also* R. 302-1, Trial Tr. at 152–55; R. 293, Trial Tr. at 29.)  Penn suggests that the district court's later grant of judgment as a matter of law on Prosper's breach of fiduciary duty counterclaim undermines its determination of probative value.  But the district court made its rulings when the counterclaim remained viable, and the counterclaim persisted because Penn advanced its winning, legal argument for the first time at the close of evidence.

Penn also points to statements made during Prosper's closing arguments—after the grant of judgment as a matter of law—to show that Prosper impermissibly referred to the evidence of Denari's litigation history and reputation after it ceased to be probative.  But Penn failed to object to Prosper's closing arguments at trial, and ignores the district court's other bases for finding the Denari evidence probative.  For example, the court found the evidence relevant to Prosper's defenses against Penn's breach of fiduciary duty claim.  Prosper used evidence of Denari's litigious past to justify its refusal to accept him onto the BIGresearch board and evidence of what minority shareholders knew of Denari's reputation to explain why they sold their stake in BIGresearch.  As such, the evidence rebutted Penn's witnesses who "testified at length about Penn being frozen out of the operation of [BIGresearch] and intimated that Prosper orchestrated the series of transactions that led to Prosper becoming the majority shareholder of [BIGresearch]."  (R. 315, JMOL Order at 17.)  It also helped justify Prosper's refusal to recognize Penn's designation of Denari to the BIGresearch board, which Penn characterized as a failure to communicate and a breach of fiduciary duty.

Penn fails to grapple with these findings regarding probative value.  Instead, Penn attempts to emphasize the prejudicial effect of the Denari evidence by citing 117 instances in the

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

record where Prosper "invoked Mr. Denari's supposedly nefarious reputation." (Penn's Br. at 50–51 & n.7.)  Yet Penn's indiscriminate string citation includes every mention of Denari's name in the trial transcript without regard to context or whether the jury was present.  Without more, we cannot say that the district court abused its discretion in finding that the danger of unfair prejudice did not substantially outweigh the evidence's probative value.

## C.     *Arnold's RICO Testimony*

Third, Penn contends that Arnold's testimony concerning the dismissed RICO claim "created the clear misimpression that the suit had been wrongfully filed and was itself tortious." (Penn's Br. at 48.)  At trial, Arnold testified that Penn asserted RICO and fraud claims against him and his firm that the court subsequently dismissed.   Arnold also characterized RICO generally as "originally enacted under a federal statute to deal with organized crime families, mobsters engaged in mail fraud and wire fraud, among other criminal activities." (R. 303-1, Trial Tr. at 221.)

The district court overruled Penn's objections, finding Arnold's testimony probative of Prosper's "theory of abuse of process liability" and "relevant to [Prosper's] allegation that Penn brought the instant lawsuit with the improper ulterior purposes of (1) leveraging a more favorable settlement of an action then pending in state court and (2) seeking to disqualify Prosper's trial attorney and his law firm from representing Prosper in this action." (R. 315, JMOL Order at 14–15.)

The district court erred in assessing the probative value of Arnold's testimony because the facts it made more probable did not help resolve Prosper's abuse of process counterclaim. *See* Fed. R. Evid. 401; *Yaklevich*, 626 N.E.2d at 118.  Arnold testified primarily about the RICO claims against him and his firm, rather than the RICO claims against Prosper.  The fact that Penn

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

filed baseless RICO claims against Arnold and his firm might support a malicious prosecution claim by Arnold, but it lacks relevance to Prosper's abuse of process counterclaim. Prosper stipulated that Penn had probable cause to file the RICO claims against it and fails to articulate how the RICO claims against Arnold, "*per se* defamatory" or otherwise, could influence Prosper's settlement decision or injure Prosper.

Prosper persuaded the district court that Penn's RICO claims against Arnold were probative of ulterior purpose because they raised the possibility of his disqualification from representing Prosper in the federal action. As discussed above, however, seeking Arnold's disqualification in *the same* proceeding as the alleged abuse of process fails to meet the requirement that an ulterior purpose be "collateral" to the action. *See Robb*, 662 N.E.2d at 14; *cf. Wolfe*, 2001 WL 427408, at *4–5. And, even assuming Prosper meant to argue that Penn intended to disqualify Arnold in the state or arbitral proceedings, we already found that Prosper provided insufficient evidence to that effect. Because Arnold's RICO testimony lacked relevance to Prosper's abuse of process counterclaim, the district court abused its discretion in admitting the testimony over Penn's objections.

Even so, we cannot say the district court abused its discretion in denying Penn a new trial. Arnold's characterization of the RICO claims and his testimony regarding their dismissal likely caused some confusion as to whether Penn's remaining breach of fiduciary duty claim had merit. But several factors mitigate the effects of this potential confusion. Arnold testified only about the court's dismissal of Penn's RICO claim against him, not its dismissal of the claims against Prosper. (R. 303-1, Trial Tr. at 223.) Arnold never addressed Penn's breach of fiduciary duty claims against him or Prosper. (*See id.* at 220–24.) And the offending statements composed a small part of Arnold's testimony. (*Compare id.* at 221, 223–24, *with id.* at 208–28.)

- 20 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

The court, moreover, reasonably found that the RICO testimony did not prejudice Penn because, "[g]iven the parties' stipulation that there was 'probable cause' to bring the lawsuit, [Penn] had powerful fodder for cross-examination and argument to blunt the so-called 'misimpression' that this suit was wrongfully filed." (R. 315, JMOL Order at 15.) And regardless of whether Penn adequately addressed the parties' probable-cause stipulation on cross-examination, the district court instructed the jury on its import to Prosper's abuse of process counterclaim.

In light of these facts, we rest fairly assured that the court's error did not substantially influence the jury's verdict. *See Kotteakos v. United States*, 328 U.S. 750, 765 (1946). And because Penn fails to show any error or prejudice on its other two evidentiary challenges, we need not consider the question of cumulative error. *See Beck*, 377 F.3d at 644 (requiring "multiple trial errors"); *cf. Ross v. Am. Red Cross*, 567 F. App'x 296, 313 (6th Cir. 2014) ("The district court did not err and, therefore, Ross was not denied a fair trial.").

IV.

Finally, Penn argues that the district court erred when it refused to exclude Juror 108 for cause despite that juror's relation by marriage to one of Prosper's attorneys. We review the court's denial of Penn's challenge to Juror 108 for abuse of discretion. *Marks v. Shell Oil Co.*, 895 F.2d 1128, 1129 (6th Cir. 1990).

During *voir dire*, Juror 108 stated that he spent holidays with one of the Arnold Firm attorneys because the wives of both men were cousins. Juror 108 freely stated, however, that he could remain impartial. Penn challenged the juror for cause, but the district court denied the challenge based on the juror's assurance of impartiality and the distant nature of his relationship with Prosper's attorney. Penn then exercised one of its peremptory challenges to remove the juror.

- 21 -

Case No. 14-3107
*Penn, LLC, et al. v. Prosper Bus. Dev. Corp., et al.*

Penn argues that the district court should have excused Juror 108 based on the doctrine of implied bias because his familial relationship with Prosper's attorney created the "manifest appearance of impropriety." This court harbors serious doubts as to the continuing validity of the implied bias doctrine. *See United States v. Russell*, 595 F.3d 633, 641–42 (6th Cir. 2010); *Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005). But we need not explore the issue further because Penn fails to demonstrate that it suffered any prejudice from the district court's ruling.

Penn argues, summarily, that the refusal to excuse Juror 108 disadvantaged it in selecting the jury, and that this disadvantage "cascaded through the balance of trial and deliberation." (Penn's Br. at 55.) But unless a litigant "allege[s] that a biased juror sat on the jury or that he needed more peremptory challenges, he has not been deprived of his procedural or constitutional rights." *United States v. Lawrence*, 735 F.3d 385, 444 (6th Cir. 2013) (citations omitted). Penn's general allegation fails to demonstrate the necessary prejudice. "In such a case, we need not review the merits of [a] claim that the district court should have dismissed the juror[] for cause." *Id.* at 445.

V.

For the foregoing reasons, we REVERSE the district court's judgment on Prosper's abuse of process counterclaim; AFFIRM the court's judgment on Penn's conversion and unjust enrichment claims; and AFFIRM the court's denial of a new trial and entry of judgment in favor of Prosper on Penn's breach of fiduciary duty claim. We REMAND this case for further proceedings consistent with our opinion.

- 22 -